**MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP**
Matthew C. Kane (SBN 171829)
    Email: mkane@mcguirewoods.com
Sabrina A. Beldner (SBN 221918)
    Email: sbeldner@mcguirewoods.com
Amy. E. Beverlin (SBN 284745)
    Email: abeverlin@mcguirewoods.com
Ashley R. Li (SBN 317305)
    Email: ali@mcguirewoods.com
1800 Century Park East, 7th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200
Facsimile:  310.315.8210

Attorneys for Defendants
WATKINS AND SHEPARD TRUCKING, INC.
and SCHNEIDER NATIONAL CARRIERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ROMERO, on his own behalf and on behalf of all other persons similarly situated,<br><br>           Plaintiff,<br><br>     vs.<br><br>WATKINS AND SHEPARD TRUCKING, INC., a Montana corporation, SCHNEIDER NATIONAL CARRIERS, INC., a Nevada corporation, and DOES 1 through 100, inclusive,<br><br>           Defendants. | CASE NO. 5:19-cv-02158-PSG (KKx)<br><br>**DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION OF PLAINTIFF'S CLAIMS AND STAY PROCEEDINGS PENDING RULING ON MOTION AND COMPLETION OF ARBITRATION:**<br><br>**(1)   NOTICE OF MOTION**<br><br>**(2)   MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>     ***Filed Under Separate Covers*:**<br><br>**(3)   DECLARATION OF THERESA PRESTINE-DOMMER**<br><br>**(4)   DECLARATION OF ANGIE SHEEDLO**<br><br>**(5)   [PROPOSED] ORDER**<br><br>**Date:     May 4, 2020**<br>**Time:     1:30 p.m.**<br>**Crtrm:   6A**<br>**Judge:   Hon. Philip S. Gutierrez** |

127558634.4

**DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..................................................................iv

NOTICE OF MOTION....................................................................vii

MEMORANDUM OF POINTS AND AUTHORITIES...........................1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

II.    STATEMENT OF FACTS.............................................................1

    A.    PLAINTIFF'S EMPLOYMENT WITH W&S .................................1

    B.    PLAINTIFF *TWICE* ACKNOWLEDGED HE IS BOUND BY THE SMAP .........2

        1.    The Associate Acknowledgements Process ...............................2

        2.    Plaintiff's 2018 Associate Acknowledgements..........................4

        3.    Plaintiff's 2019 Associate Acknowledgements..........................5

    C.    PLAINTIFF AGREED TO ARBITRATE HIS CLAIMS ON AN INDIVIDUAL BASIS ONLY .....................................................6

    D.    PLAINTIFF FILED THIS ACTION IN BREACH OF HIS AGREEMENT TO ARBITRATE UNDER THE SMAP ..............................7

III.    PUBLIC POLICY STRONGLY FAVORS ARBITRATION........................8

IV.    THE FAA APPLIES TO THE SMAP AND TO THIS MOTION ...............10

V.    UNDER THE FAA, PLAINTIFF'S CLAIMS MUST BE COMPELLED TO INDIVIDUAL ARBITRATION.....................................11

    A.    THE PARTIES ARE BOUND BY THE TERMS OF THE SMAP, WHICH IS AN ENFORCEABLE ARBITRATION AGREEMENT .................11

        1    Only Two Gateway Issues Of Arbitrability Can Be Decided ...11

        2.    Plaintiff Agreed To Be Bound By The SMAP..........................11

        3.    The SMAP Covers Plaintiff's Claims .....................................13

    B.    PLAINTIFF WAIVED HIS RIGHT TO PURSUE CLASS ACTION CLAIMS.....14

**DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.      THE COURT SHOULD DISMISS THE CLASS CLAIMS AND STAY THE
CASE PENDING ITS RULING ON THIS MOTION AND/OR
COMPLETION OF ARBITRATION.............................................................. 16

VI.      CONCLUSION ............................................................................................. 17

**DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ..................................................................................8, 10

*Armenta v. Go-Staff, Inc.*,
    2017 WL 1711293 (S.D. Cal. May 3, 2017) .......................................................12

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .....................................................................10, 14, 15, 16

*Borelli v. Black Diamond Aggregates, Inc.*,
    2017 WL 1063564 (E.D. Cal. Mar. 21, 2017)....................................................12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000).................................................................9, 14

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ...............................................................................9

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ..............................................................................10

*Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*,
    642 F.3d 849 (9th Cir. 2011) ....................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ...........................................................................10, 14

*EEOC v. Waffle House*,
    534 U.S. 279 (2002) ............................................................................11

*Epic Sys. Corp. v. Lewis*,
    138 S.Ct. 1612 (2018) .....................................................................9, 14, 15, 16

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000) .............................................................................8, 10

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ..............................................................................11

**DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

*Lamps Plus, Inc. v. Varela*,
    139 S.Ct. 1407 (2019) ...............................................................................9, 14, 16

*Montes v. San Joaquin Cmty. Hosp.*,
    2014 WL 334912 (E.D. Cal. Jan. 29, 2014)......................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..............................................................................................11

*Nghiem v. NEC Elec., Inc.*,
    25 F.3d 1437 (9th Cir. 1994) ............................................................................12

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) ............................................................................................9

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ............................................................................11

*Stolt-Nielsen v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ..........................................................................................14

**State Cases**

*Armendariz v. Found. Psychare Servs., Inc.*,
    24 Cal.4th 83 (2000).............................................................................................8

*Ashburn v. AIG Fin. Advisors, Inc.*,
    234 Cal.App.4th 79 (2015)................................................................................14

*Banner Entm't, Inc. v. Super. Ct.*,
    62 Cal.App.4th 348 (1998)................................................................................12

*Bono v. David*,
    147 Cal.App.4th 1055 (2007)..............................................................................9

*Carbajal v. CWPSC, Inc.*,
    245 Cal.App.4th 227 (2016)..............................................................................14

*Coast Plaza Doctors Hosp. v. Blue Cross of California*,
    83 Cal.App.4th 677 (2000)................................................................................10

*Cortez v. Doty Bros. Equip. Co.*,
    15 Cal.App.5th 1 (2017), *as modified* (Sept. 6, 2017), *review denied*
    (Nov. 29, 2017)..................................................................................................15

*Craig v. Brown & Root, Inc.*,
    84 Cal.App.4th 416 (2000) ................................................................. 12

*MKJA, Inc. v. 123 Fit Franchising, LLC*,
    191 Cal.App.4th 643 (2011) ............................................................... 10

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal.4th 223 (2012) .......................................................................... 9

*Serafin v. Balco Props. Ltd., LLC*,
    235 Cal.App.4th 165 (2015) ............................................................... 12

*Spellman v. Sec. Annuities & Ins. Servs., Inc.*,
    8 Cal.App.4th 452 (1992) .................................................................... 8

**Federal Statutes**

9 U.S.C. § 1 ...................................................................................... vii

9 U.S.C. § 2 ........................................................................................ 9

9 U.S.C. § 3 ................................................................................. 10, 16

9 U.S.C. § 4 ................................................................................... 9, 14

29 U.S.C. § 2101 ................................................................................ 8

**State Statutes**

Cal. Civ. Proc. Code § 1280 ............................................................. vii

Cal. Civ. Proc. Code § 1281.4 ............................................... vii, 10, 16

Cal. Lab. Code § 1401 ......................................................................... 8

## NOTICE OF MOTION

**TO PLAINTIFF ALEJANDRO ROMERO AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on May 4, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6A of the above-captioned Court, located at 350 West 1st Street, Los Angeles, California 90012, Defendants WATKINS AND SHEPARD TRUCKING, INC. ("W&S") and SCHNEIDER NATIONAL CARRIERS, INC. ("Schneider") (collectively, "Defendants") will and hereby move the Court, pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq*., and the California Arbitration Act (the "CAA"), Cal. Civ. Proc. Code § 1280, *et seq.*, to the extent the CAA is applicable and not otherwise preempted by the FAA, for an order:

(1)    Compelling Plaintiff RYAN BISHOP to individually arbitrate his claims against Defendants in accordance with the terms of his *two* enforceable arbitration agreements with Defendants, copies of which are appended to this Motion as **Exhibits 1** and **2** (the "Arbitration Agreement");

(2)    Dismissing Plaintiff's putative class action claims in accordance with the class action waiver contained in the Arbitration Agreement; ***and***

(2)    Staying this action until Defendants' Motion is decided by the Court, and then until an arbitration is had in accordance with the Court's order to arbitrate, as required under both the FAA *and* the CAA (including, without limitation, Cal. Civ. Proc. Code § 1281.4).

This Motion is made on the grounds that Plaintiff is a party to an enforceable agreement to arbitrate whereby he agreed to submit all employment-related claims, including claims that arise out of or relate to Plaintiff's employment with Defendants or any of the terms, conditions or benefits of such employment – like Plaintiff's claims in this action – to binding ***individual*** arbitration, and that any attempt to pursue his claims against Defendants in court, or on a class or representative action

basis in either court or an arbitral forum, violates his enforceable written arbitration agreement with Defendants.

This Motion is made following the required conference of counsel pursuant to Local Rule 7-3, which Defendants first initiated via transmittal of an e-mail on February 18, 2020, setting forth the contemplated bases for this Motion.  The parties also discussed Defendants' contemplated bases for this Motion during the parties' Rule 26(f) Conference.  Plaintiff failed to substantively respond to Defendants' February 18, 2020 e-mail; however, in the parties' Joint Rule 26(f) Report and at the Scheduling Conference in this action, Plaintiff stated his intention to oppose Defendants' Motion.  The parties were unable to resolve their disagreement regarding arbitration, thereby necessitating the filing of this Motion.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declarations of Theresa Prestine-Dommer and Angie Sheedlo and all exhibits thereto, the Court's files and records in this action, and such other and further evidence and arguments as may be presented at or before the hearing on the Motion.

DATED:  March 2, 2020            **MCGUIREWOODS LLP**


By: _____/s/ Matthew C. Kane_____

Matthew C. Kane
Sabrina A. Beldner
Amy E. Beverlin
Ashley R. Li

Attorneys for Defendants
WATKINS AND SHEPARD TRUCKING, INC. and SCHNEIDER NATIONAL CARRIERS, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

During his employment with Defendant Watkins and Shepard Trucking, Inc. ("W&S"), a wholly-owned subsidiary of Defendant Schneider National Carriers, Inc. ("Schneider") (collectively, "Defendants"), Plaintiff voluntarily entered into a valid and enforceable written agreement with Defendants, as memorialized in the Schneider Mediation & Arbitration Policy (the "SMAP"), to arbitrate any claims relating to or arising out of his employment, and to do so *only* on an *individual* basis. And yet, Plaintiff has now filed this putative class action asserting claims that arise *directly out of his employment with W&S* and thus fall squarely within the scope of the SMAP.

The SMAP explicitly states that "all employment-related claims … arising out of or related to [Plaintiff's] actual or alleged employment with … [Defendants] … [and] the termination of such employment or work" shall be resolved *only* by "final and binding *individual* arbitration." *See, e.g.*, Ex. 1, pp. 2-3, 4-5, 8 (emph. added). Plaintiff cannot disregard his valid and enforceable agreement to arbitrate his claims against Defendants. Rather, as we discuss below, binding Supreme Court precedent and the Federal Arbitration Act ("FAA") mandate that the parties' arbitration agreement be enforced **as written**—including the SMAP's requirement that Plaintiff *individually* arbitrate his claims against Defendants—and that this action be stayed until this Motion is decided by the Court and then until arbitration is had in accordance with the Court's order.

## II.   STATEMENT OF FACTS

### A.   PLAINTIFF'S EMPLOYMENT WITH W&S

Plaintiff was hired by W&S on or around September 25, 1997.  Declaration Angie Sheedlo ("Sheedlo Decl."), ¶ 6.  W&S is a subsidiary of SNC and, like SNC, provides logistics and transportation services to customers across the United States as a common and contract motor carrier.  *Id.*, ¶¶ 2-3.  Schneider National, Inc. ("SNI")

is the ultimate parent company of both SNC and W&S.  *Id.*  Plaintiff's employment with W&S terminated on August 23, 2019.  *Id.*, ¶ 6.

## B.   PLAINTIFF *TWICE* ACKNOWLEDGED HE IS BOUND BY THE SMAP

### 1.   The Associate Acknowledgements Process

Defendants utilize an online learning system to conduct online employee training, distribute company policies, and obtain and retain associate acknowledgments that are reviewed, completed and/or acknowledged by Defendants' employees.  *See* Declaration of Theresa Prestine-Dommer ("Dommer Decl."), ¶¶ 3-4. In 2018 and 2019, Defendants' employees accessed required employee online training modules, policies, and acknowledgments through this web-based online learning system.  *Id.*, ¶ 4.  In order to access Defendants' online learning system, an employee *must* enter his or her unique Employee Identification or User Identification Number, and his or her unique password.  *Id.*  Once logged in, the employee has access to all policies, procedures, and learning modules applicable to him or her.  *Id.*

Plaintiff's unique Employee Identification Number for Defendants' online learning system was 383438.  *Id.*, ¶ 5.  Defendants' online learning system records reflect that Plaintiff completed the Schneider Associate Acknowledgments on two separate occasions – first, on April 26, 2018 (the "2018 Associate Acknowledgments"), and then a second time on April 19, 2019 (the "2019 Associate Acknowledgments").  *Id.*  On each occasion, he completed his Associate Acknowledgments by logging into Defendants' online learning system using his unique login credentials, selecting the "SNI US Learning Self-Service" tab, clicking on the "Learner Home" page, and then selecting the "Associate Acknowledgments" document so that he could review and respond to the Schneider acknowledgments applicable to his employment.  *Id.*

In both April 2018 and April 2019, each employee who selected the Associate Acknowledgements document through Defendants' online learning system would see a preliminary message instructing employees as to how to complete the Associate

Acknowledgments review and response process, which provided in pertinent part as follows:

> Please read through the statements below and select "I Agree" or "I Do Not Agree" for each question.  If you do not agree or do not understand the statement, please reach out to your leader or Human Resource Business Partner for further assistance.
>
> By answering the questions below, and completing this form, you acknowledge that the selections you make are true and accurate representations of your intent and that you agree to be bound by such expressions of intent.  ***The answering of these questions by you shall constitute your electronic signature which shall be enforceable as if you had signed this document through the use of a handwritten signature***.

*Id.*, ¶ 6 (emph. added).  After reviewing this preliminary message, the employee must affirmatively click a "Continue" button in order to proceed to the next step, which is to review and respond to sets of acknowledgments set forth in the Associate Acknowledgments.  *Id.*

The 2018 and 2019 Associate Acknowledgments each contained four different sets of acknowledgments that Plaintiff was required to read and then affirmatively select either "I Agree" or "I Do Not Agree" as to each acknowledgment.  *Id.*, ¶ 7.  In Defendants' online learning system, an employee can complete and submit his or her Associate Acknowledgments with any combination of "I Agree" and/or "I Do Not Agree" responses.  *Id.*, ¶ 8.  Each time Plaintiff selected his agreement option, he would have to click a "Next" button in order to proceed to the next set of acknowledgments in the process.  *Id.*, ¶ 7.  After completing the fourth and final set of acknowledgments, Plaintiff was prompted to click a button to submit his responses.  *Id.*  At that point, he was presented with another screen notifying him that he could *again* review his responses to each of the acknowledgment items before finally submitting them.  *Id.*  In order to finally submit his responses to each of his completed Associate Acknowledgments, Plaintiff was required to select a button confirming that he was choosing to submit his responses and complete the Associate Acknowledgments process.  *Id.*  Only then would Defendants' online learning system

record that the Associate Acknowledgements process was "completed." *Id.*

### 2.    Plaintiff's 2018 Associate Acknowledgements

A set of acknowledgments in Plaintiff's 2018 Associate Acknowledgements informed him of the existence and applicability of the SMAP. *Id.*, ¶ 9. This SMAP-specific set of acknowledgments informed Plaintiff that his employment would be subject to the terms of the then-applicable SMAP and included an embedded hyperlink for him to access, review, read, and print (if desired) the then-current version of the SMAP. *Id.*, ¶ 9 & Exh. A. By selecting "I agree" in response to that set of acknowledgements, Plaintiff acknowledged that he had been able to read and review the SMAP, either in hard copy or through a provided hyperlink. *Id.*, ¶ 9.

Among other things, the SMAP-specific set of acknowledgments also advised Plaintiff that in agreeing to those acknowledgements he was waiving his right to bring claims in court and on behalf of other individuals in a Representative Action (as that term is defined in the SMAP, *see infra*) and that he was agreeing to bring "any employment-related disputes [that] now exist or arise in the future" only through mandatory final and binding individual arbitration. *Id.*, ¶ 9. This set of acknowledgments also expressly informed Plaintiff that the SMAP was not a condition of his employment; he had 30 calendar days within which to elect to opt-out of the SMAP; and presented Plaintiff with hyperlinked access to a copy of the then-current version of the SMAP to review the process for opting out of the SMAP if he chose to do so. *Id.*

Defendants' online learning system records reflect that Plaintiff responded "I Agree" to each of the four sets of acknowledgments in his 2018 Associate Acknowledgments that he completed on April 26, 2018—including the set of acknowledgments detailing the applicability of the SMAP and its opt-out process. *Id.*, ¶ 10.

### 3.   Plaintiff's 2019 Associate Acknowledgements

The 2019 Associate Acknowledgements completed by Plaintiff through Defendants' online learning system likewise contained a set of acknowledgments about the existence of the SMAP and its applicability to his employment.  *Id.*, ¶ 11. Once again, these SMAP-specific acknowledgments informed Plaintiff that his employment would be subject to the terms of the SMAP and included an embedded hyperlink for Plaintiff to access, review, read, and print (if desired) an updated version of the current version of the SMAP that was introduced on March 25, 2019. *Id.*, ¶ 11 & Exh. B.  By selecting "I agree" in response to the SMAP-specific set of acknowledgements, Plaintiff acknowledged that he had been able to read and review the SMAP.  *Id.*, ¶¶ 11-12.

Among other things, the SMAP-specific set of acknowledgments again advised Plaintiff that in agreeing to this set of acknowledgements he was waiving his right to bring claims in court and on behalf of other individuals in a Representative Action (as that term is defined in the SMAP, *see infra*) and that he was agreeing to bring "any employment-related disputes [that] now exist or arise in the future" only through mandatory final and binding individual arbitration.   *Id.*, ¶ 12.   This set of acknowledgements also once again expressly advised Plaintiff that the SMAP was not a condition of his employment and that he had 30 calendar days within which to elect to opt-out of the SMAP, and presented Plaintiff with hyperlinked access to the then-current version of the SMAP to review the process for opting out of the SMAP if he chose to do so.  *Id.*

Defendants' online learning system records reflect that Plaintiff responded "I Agree" to each of the four sets of acknowledgments in his 2019 Associate Acknowledgments that he completed on April 19, 2019—including the SMAP-specific set of acknowledgments detailing the applicability of the SMAP to Plaintiff's employment and its opt-out process.  *Id.*, ¶ 13.

### C. PLAINTIFF AGREED TO ARBITRATE HIS CLAIMS ON AN INDIVIDUAL BASIS ONLY

The SMAP, as acknowledged and agreed to by Plaintiff in 2018 and 2019, expressly provides, *inter alia*, that "any covered disputes … can only be resolved by … mandatory final and binding ***individual*** arbitration … unless [the employee] properly elect[s] to not be bound by [the] policy and except as otherwise set forth in [the] policy." *See id.*, ¶ 10, Exh. A (p. 2) (emph. added); *see id.*, ¶ 11, Exh. B (p. 2) (same). The SMAP further provides that "its mandatory final and binding individual arbitration of covered disputes replaces the right … to bring or participate in any class or collection action or any other type of representative action or PAGA action." *See id.*, ¶ 10, Exh. A (p. 2) (emph. added); *see id.*, ¶ 11, Exh. B (p. 2) (same). Instead, "***a covered dispute is resolved only on an individual basis***." *See id.*, ¶ 10, Exh. A (p. 2) (emph. added); *see id.*, ¶ 11, Exh. B (p. 4) (providing that the parties agree to resolve disputes "exclusively by final and binding individual arbitration").

Under the SMAP, "Covered Disputes" include, among other claims, "*any and all employment-related claims*, causes of action or other disputes that have already accrued, now exist or arise in the future between an Employee and Company," including "those arising out of or related to an Employee's actual or alleged employment with or work for Company ... *[and] the termination of such employment or work*." *Id.*, ¶ 10, Exh. A (p. 2) (emph. added); *id.*, ¶ 11, Exh. B (p. 2) (same). The SMAP defines "Employee" to mean and include "any individual who ... is actually or allegedly employed by Company, or whose actual or alleged employment with Company terminates after becoming bound by this SMAP." *Id.*, ¶ 10, Exh. A (p. 2) (emph. added); *id.*, ¶ 11, Exh. B (p. 2) (same definition for "Covered Individual").[1] "Company" is defined to include "Schneider National, Inc. and its parent, subsidiary,

---

[1] The 2019 SMAP uses the term "Covered Individual" rather than "Employee," but the terms have the same definition.

sibling and other affiliated operating divisions and entities." *Id.*, ¶ 10, Exh. A (p. 2); *id.*, ¶ 11, Exh. B (p. 2).

Pursuant to the SMAP, Plaintiff and Defendants affirmatively agreed to waive their right to bring a covered dispute on a class or collective action basis (hereinafter, the "Class Action Waiver"):

> A Representative Action includes any type of (a) class action, (b) class arbitration, (c) collective action, [and] (d) collective arbitration …. ***A Representative Action is not permitted under this SMAP*** in connection with any Covered Disputes, and there is no agreement, right or authority under this SMAP for any Covered Disputes to be heard, arbitrated or decided as any type of Representative Action. An Employee [or Covered Individual] and Company with any Covered Disputes, now existing or arising in the future, ***waive any and all rights to bring or participate in any type of Representative Action*** to resolve, decide or adjudicate any Covered Disputes and are prohibited from doing so.

*Id.*, ¶ 10, Exh. A (pp. 5-6); *id.*, ¶ 11, Exh. B (pp. 4-5). As used in the SMAP, the term "Representative Action" means and includes any type of class action, class arbitration, collective action, or collective arbitration. *Id.*, ¶ 10, Exh. A (pp. 5-6); *id.*, ¶ 11, Exh. B (pp. 4-5).

The SMAP applies to all employees "who [are] actually or allegedly employed by Company, or whose actual or alleged employment with Company terminates after becoming bound by this SMAP." *Id.*, ¶ 10, Exh. A (p. 1); *id.*, ¶ 11, Exh. B (p. 1). However, the SMAP it is *not* a condition of employment with Defendants. *See* Sheedlo Decl., ¶ 7. Instead, employees can opt-out of the SMAP no later than the 30th day after the date they first receive a copy or are notified thereof, *with no adverse effect on their employment*. *See* Dommer Decl., ¶ 10, Exh. A (pp. 8-9); *id.*, ¶ 11, Exh. B (pp. 8-9). Employees can opt out by hand delivering, faxing, emailing, or mailing a written request to Schneider's General Counsel. *See id.* ***Plaintiff never opted out of the SMAP***. *See* Sheedlo Decl., ¶ 9.

### D. PLAINTIFF FILED THIS ACTION IN BREACH OF HIS AGREEMENT TO ARBITRATE UNDER THE SMAP

On September 12, 2019, instead of submitting his claims to arbitration,

Plaintiff filed this putative class action.  *See* Dkt. #1-1.  He asserts two putative class action claims for: (1) violation of the Cal. Lab. Code § 1401 (also known as the California WARN Act); and (2) violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.  See id.*  Plaintiff purports to bring this action on behalf of himself and (a) a putative class "of similarly situated persons in California … who were terminated without cause beginning on or about August 2019"; and (b) a putative class "of all other similarly situated former employees of Defendants who worked for Defendants outside of California and who were terminated without cause on or about August 2019, or as the reasonably foreseeable consequence of the mass layoffs of plant closings ordered by Defendants on that date."  *Id.*, ¶¶ 6, 15.  As such, Plaintiff has failed to comply with his contractual obligation under the SMAP to submit his asserted employment-related claims to binding individual arbitration.

## III.   PUBLIC POLICY STRONGLY FAVORS ARBITRATION

Both the FAA and California law embrace a strong public policy in favor of arbitration:

> [The FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, ***notwithstanding any state substantive or procedural policies to the contrary****….* [I]n enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and ***withdrew the power of the states to require a judicial forum*** for the resolution of claims which the contracting parties agreed to resolve by arbitration.

*Spellman v. Sec. Annuities & Ins. Servs., Inc.*, 8 Cal.App.4th 452, 458-59 (1992) (emph. added); *see Armendariz v. Found. Psychare Servs., Inc.*, 24 Cal.4th 83, 97 (2000) ("California law, like federal law, favors enforcement of valid arbitration agreements.").

In enacting the FAA, Congress sought to overcome courts' reluctance to enforce arbitration agreements.  *See Allied-Bruce Terminix*, 513 U.S. at 270.  The FAA not only placed arbitration agreements on equal footing with other contracts, but also established **a liberal federal policy *in favor of* arbitration**.  *See Green Tree*

*Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000).[2]  This "liberal federal policy favoring arbitration agreements" resulted in "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the [FAA]." *Perry*, 482 U.S. at 489.  As such, the Supreme Court has warned against judicial rulings designed to erode FAA precedent "by indirection."  *Circuit City*, 532 U.S. at 122; *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1622 (2018) ("[T]he [FAA] does not save defenses that target arbitration either by name or by more subtle methods …."); *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1418 (2019) (FAA preempts "general rules" that "create[] a scheme inconsistent with the FAA").

The FAA thus requires that courts enforce valid arbitration agreements "in the manner provided for in [the parties'] agreement."  9 U.S.C. §§ 2, 4.  The FAA "leaves no place for the exercise of discretion …, but instead mandates that … courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)); *see also Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 854 (9th Cir. 2011) (stating that the FAA "leaves no room for discretion").  Accordingly, Courts <u>must</u> resolve any doubts concerning arbitrability *in favor of arbitration* and should only invalidate an arbitration agreement under general contract principles providing for the "revocation of any contract."  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).[3]  As the party resisting arbitration, Plaintiff "bears the burden of proving that the claims at issue are

---

[2] This policy in favor of arbitration applies equally to the *employment* context. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001).

[3] *See also Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 236 (2012) ("In determining the rights of parties to enforce an arbitration agreement within the FAA's scope, courts apply state contract law while giving due regard to the federal policy favoring arbitration."); *see Bono v. David*, 147 Cal.App.4th 1055, 1062 (2007) ("Our Supreme Court has emphasized, indeed several times, that arbitration of disputes is favored and that, when there is doubt … that doubt should be resolved in favor of [arbitration].").

unsuitable for arbitration." *Green Tree Fin.*, 531 U.S. at 91; *Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal.App.4th 677, 687-88 (2000) (same).

Finally, where a party identifies any issues subject to arbitration under a valid arbitration agreement, Section 3 "mandates that … courts *shall*" stay the action as to those issues until they are arbitrated pursuant to the arbitration agreement. *Dean Witter Reynolds*, 470 U.S. at 218 (citing 9 U.S.C. § 3) (emph. in orig.); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("*Concepcion*") ("[Section] 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'").[4]

## IV.   THE FAA APPLIES TO THE SMAP AND TO THIS MOTION

The FAA governs any arbitration agreement "evidencing a transaction involving commerce," which means that the "transaction in fact 'involved' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995) (concluding that a relationship involved interstate commerce where, *inter alia*, defendant was a national corporation that was engaged in business in multiple states). Here, the FAA applies because (1) in the ordinary course of its business, Defendants operate in and rely on customers across numerous industries all over the United States, Sheedlo Decl., ¶ 3, and (2) the parties expressly agree in the SMAP that it, and any arbitration proceeding pursuant to it, is unconditionally governed by the FAA. *See* Dommer Decl., ¶ 10, Exh. A (pp. 10-11); *id.*, ¶ 11, Exh. B (p. 8).   As such, the FAA governs the SMAP and this Motion.   *See, e.g.*, *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (only "general practice need bear on interstate commerce" for FAA to apply); *Montes v. San Joaquin Cmty. Hosp.*, 2014 WL 334912, *5 (E.D. Cal. Jan. 29, 2014) (concluding that an employment contract between plaintiff and a

---

[4] *See also* Cal. Civ. Proc. Code § 1281.4 (same); *MKJA, Inc. v. 123 Fit Franchising, LLC*, 191 Cal.App.4th 643, 658 (2011) (same).

10

1   hospital was governed by the FAA because the hospital's activities were involved

2   interstate commerce).

## V.   UNDER THE FAA, PLAINTIFF'S CLAIMS MUST BE COMPELLED TO INDIVIDUAL ARBITRATION

### A.   THE PARTIES ARE BOUND BY THE TERMS OF THE SMAP, WHICH IS AN ENFORCEABLE ARBITRATION AGREEMENT

#### 1.   Only Two Gateway Issues Of Arbitrability Can Be Decided

Courts may decide only two limited "gateway" issues when a party seeks to compel arbitration pursuant to the FAA: (1) "whether the parties are bound by a given arbitration clause"; and (2) whether that clause "applies to a particular type of controversy." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).  As such, in determining whether a controversy is arbitrable, the inquiry hinges on an analysis of the contractual language, guided by the principle that arbitration agreements are *favored* and to be broadly construed with doubts resolved ***in favor of coverage***.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high.").   "Absent some ambiguity in the agreement … it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House*, 534 U.S. 279, 280 (2002).

#### 2.   Plaintiff Agreed To Be Bound By The SMAP

Plaintiff cannot reasonably dispute that he assented to the SMAP and agreed to be bound thereby, as demonstrated by his responding "I Agree" to the SMAP-specific acknowledgements item in his 2018 Associate Acknowledgements *and* in his 2019 Associate Acknowledgements, his continued employment with Defendants after receiving and being notified about the applicability of the SMAP, *and* his failure to exercise his option to opt out of being bound by the SMAP.  Dommer Decl., ¶¶ 10, 13; Sheedlo Decl., ¶¶ 6, 9.  As described at length above, Plaintiff first affirmatively acknowledged being bound by the SMAP in April 2018 by responding "I Agree" to the SMAP-specific acknowledgements in his 2018 Associate Acknowledgments. *See*

Dommer Decl., ¶ 10.  He *again* affirmatively acknowledged being bound by an updated version of the SMAP in April 2019 in his 2019 Associate Acknowledgments. *Id.*, ¶ 13.  In so doing, he agreed to be bound by the SMAP *unless* he provided written notice of his exercising his right to opt out within 30 calendar days of receiving the same—but he did not avail himself of that opt-out procedure.  Sheedlo Decl., ¶ 9.  As such, he is bound by the terms set forth in the SMAP.

Any argument by Plaintiff that he is not bound by the SMAP merely because his *hand-written* signature does not appear on either the 2017 or 2019 version of the SMAP itself, or on his associated 2018 and 2019 Associate Acknowledgments, would be a non-starter as it is by now well-established that an arbitration agreement need not be signed in order to be upheld as a binding arbitration agreement.  *See, e.g.*, *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA 'requires a writing, it does not require that the writing be signed by the parties.'"); *Armenta v. Go-Staff, Inc.*, 2017 WL 1711293, at *3 (S.D. Cal. May 3, 2017) (same).[5] Prior to completing *each* of his Associate Acknowledgments, Plaintiff was informed that "[t]he answering of these questions by [him] shall constitute [his] electronic signature which shall be enforceable as if [he] had signed this document through the use of a handwritten signature."  Dommer Decl., ¶ 6.  Moreover, he affirmatively selected "I Agree" responses to each of the four sets of acknowledgments items in *each* of the Associate Acknowledgements he completed in 2018 and in 2019, thereby

---

[5] *See also, e.g.*, *Borelli v. Black Diamond Aggregates, Inc.*, 2017 WL 1063564, at *6 (E.D. Cal. Mar. 21, 2017) ("Although an arbitration agreement must generally be memorialized in writing, … the writing … need not be signed by both parties in order to be upheld as binding."); *Craig v. Brown & Root, Inc.*, 84 Cal.App.4th 416, 420-23 (2000) (in absence of a signed writing acknowledging receipt of the memorandum and brochure containing the arbitration provision, employee's continued employment constituted implied acceptance of the agreement); *Banner Entm't, Inc. v. Super. Ct.*, 62 Cal.App.4th 348, 361 (1998) ("[I]t is not the presence or absence of a signature [on an agreement] which is dispositive; it is the presence or absence of evidence of an agreement to arbitrate which matters."); *Serafin v. Balco Props. Ltd., LLC*, 235 Cal.App.4th 165, 176 (2015) (same).

effecting his electronic signature with respect to *each* set of acknowledgments therein—including the SMAP-specific acknowledgments.[6]  *Id.*, ¶¶ 10, 13.

### 3.     The SMAP Covers Plaintiff's Claims

Plaintiff's claims fall squarely within the terms of the SMAP.  Pursuant to those terms, Plaintiff expressly agreed that "final and binding" individual arbitration would be the exclusive means of adjudicating "any and all employment-related claims, causes of action, or other disputes" that "aris[e] out of or relate[ ] to" Plaintiff's "actual or alleged employment with or work for Company … ***the termination of such employment or work***, [and] any of the terms, conditions or benefits of such employment or work ...."  Dommer Decl., ¶ 10, Exh. A (p. 2) (emph. added); *id.*, ¶ 11, Exh. B (p. 2) (same).   The SMAP also expressly applies to SNI *and* its parent, subsidiary, sibling and other affiliated operating divisions and entities.  *Id.*, ¶ 10, Exh. A (p. 2); *id.*, ¶ 11, Exh. B (p. 2).  W&S and SNC are subsidiaries of SNI.  Sheedlo Decl., ¶¶ 2-3.

Here, Plaintiff alleges two putative class action claims that arise *directly* out of the termination of his alleged employment with Defendants.  *See* Dkt. #1-1.  Specifically, his Complaint alleges that he and other employees were terminated as a result of "mass layoffs" and without proper notice as required under the California and federal WARN Acts.  *See id.*, ¶¶ 10-11, 20-21.   Indeed, Plaintiff's putative classes are defined to include "persons in California … who were terminated without cause" *and* "former employees of Defendants who worked for [them] outside of California and who were terminated without cause."  *See id.*, ¶¶ 6, 15.   In other words, the termination of Plaintiff's alleged or actual employment with Defendants is

---

[6] As noted above, in Defendants' online learning system, an employee can complete and submit his or her Associate Acknowledgments with any combination of "I Agree" and/or "I Do Not Agree" responses.  Dommer Decl., ¶ 8.  Accordingly, Plaintiff was not required to select any particular response; instead, his selection of *any* response constitutes his electronic signature on the 2018 and 2019 Associate Acknowledgments.

1  the *entire* basis for his claims.  *See* Dommer Decl., ¶ 10, Exh. A (p. 2).  As such, the

2  SMAP expressly and unambiguously applies to Plaintiff's claims against Defendants

3  and requires that he submit them to individual arbitration thereunder.

4                                           * * *

5      Because both gateway inquiries are answered in the affirmative – namely, that

6  Plaintiff is bound by the SMAP and it applies to the controversy *sub judice* – "the

7  [FAA] ***requires*** the court to enforce the [SMAP] in accordance with its terms."

8  *Chiron Corp.*, 207 F.3d at 1130 (emph. added); *Concepcion*, 563 U.S. at 344 (The

9  "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are

10 enforced according to their terms.'"); *Carbajal v. CWPSC, Inc.*, 245 Cal.App.4th

11 227, 237-38 (2016) (same).  Therefore, the Court should grant Defendants' Motion

12 and order Plaintiff to submit his claims to binding individual arbitration.  *See, e.g.*,

13 *Ashburn v. AIG Fin. Advisors, Inc.*, 234 Cal.App.4th 79, 96 (2015) ("[A]rbitration

14 must be compelled where the petition shows a written agreement to arbitrate, a

15 controversy between the parties that is subject to that agreement, and the other party's

16 refusal to arbitrate.").

17   **B.    PLAINTIFF WAIVED HIS RIGHT TO PURSUE CLASS ACTION CLAIMS**

18      Plaintiff's putative class action claims should be dismissed and he must be

19 compelled to ***individual*** arbitration of his claims because "[a] party may not be

20 compelled under the FAA to submit to class arbitration unless there is a contractual

21 basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen v. AnimalFeeds*

22 *Int'l Corp.*, 559 U.S. 662, 684 (2010) (emph. in orig.); *see Lamps Plus*, 139 S.Ct. at

23 1418-19 (requiring "affirmative 'contractual basis for concluding that the part[ies]

24 agreed to [class arbitration]'").  Indeed, the Supreme Court has repeatedly emphasized

25 that arbitration agreements must be rigorously enforced ***as written***, "even if the result

26 is 'piece-meal' litigation."  *Byrd*, 470 U.S. at 221; *see Epic*, 138 S.Ct. at 1621 (FAA

27 requires courts to "enforce arbitration agreements according to their terms") (quoting

28 *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)); *see also* 9 U.S.C.

§ 4 (requiring arbitration "in accordance with the terms of the agreement").

In *Concepcion*, the high court warned that "the FAA prohibits states from conditioning the enforceability of … arbitration agreements on the availability of classwide arbitration procedures." 563 U.S. at 336, 350-52 (holding that California's judicial rule on unconscionability of class action waivers preempted by FAA).[7] Last year, building on that precedent, it further held that class action waivers in employment-related arbitration agreements are ***valid and enforceable* under the FAA**. *Epic*, 138 S.Ct. at 1621-23. As here, the parties in *Epic* "contracted for arbitration" and "proceeded to specify the rules that would govern their arbitrations, indicating their intention to use individualized rather than class or collective action procedures," and the court found that the FAA "protect[ed]" their arbitration agreement "***pretty absolutely***." *Id*. at 1621 (emph. added). Thus, there can be no dispute that class action waivers in arbitration agreements are *enforceable*, and employees subject to such waivers must pursue their claims, if at all, in *individual arbitration*.

Here, the SMAP contains a class action waiver pursuant to which Plaintiff and Defendants agreed that no dispute between them would be brought, heard, *or arbitrated* as any type of class action. Dommer Decl., ¶ 10, Exh. A (pp. 5-6); *id.*, ¶ 11, Exh. B (pp. 4-5). Instead, the parties agreed that a covered dispute would be resolved ***only*** through "mandatory final and binding ***individual*** arbitration." *Id.*, ¶ 10, Exh. A (p. 2) (emph. added); *id.*, ¶ 11, Exh. B (p. 2). Both parties expressly and indisputably waived their right to participate in or bring any type of class action. *Id.*, ¶ 10, Exh. A (pp. 5-6); *id.*, ¶ 11, Exh. B (pp. 4-5). Therefore, the Court should dismiss Plaintiff's putative class action claims and order that he must pursue his

---

[7] *See, e.g., Cortez v. Doty Bros. Equip. Co.*, 15 Cal.App.5th 1, 15 (2017), *as modified* (Sept. 6, 2017), *review denied* (Nov. 29, 2017) ("absent language in the arbitration provision itself or extrinsic evidence establishing the parties' agreement to arbitrate classwide claims, only individual claims may be arbitrated").

claims, if at all, only through binding *individual* arbitration. *See Epic*, 138 S.Ct. at 1623 (classifying the FAA as "a congressional command requiring [the court] to enforce, not override, the terms of the arbitration agreements before [it]"); *Lamps Plus*, 139 S.Ct. at 1415 ("The FAA requires courts to 'enforce arbitration agreements according to their terms.'").

### C.   THE COURT SHOULD DISMISS THE CLASS CLAIMS AND STAY THE CASE PENDING ITS RULING ON THIS MOTION AND/OR COMPLETION OF ARBITRATION

Both California law and the FAA require courts to stay actions involving matters subject to arbitration agreements. *See* Cal. Civ. Proc. Code § 1281.4 (requiring that courts stay action until motion to compel is decided and, if arbitration is ordered, until arbitration is completed); 9 U.S.C. § 3 (same). Specifically, the FAA provides, in relevant part:

> [U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ….

9 U.S.C. § 3; *see Concepcion*, 563 U.S. at 344 (Section 3 "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'"). Here, because Plaintiff is obligated to arbitrate his claims and has indisputably waived any right to pursue his claims on a class action basis, the Court should dismiss Plaintiff's putative class action claims with prejudice, order Plaintiff to submit his individual claims to arbitration in accordance with the terms of the SMAP, and stay this action until an arbitration is had in accordance with the Court's order to arbitrate.

///

///

## VI.   CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court

1 grant this Motion in its entirety.

2

3 DATED:  March 2, 2020                          McGuireWoods LLP

4

5                                                      By: _____/s/ Matthew C. Kane_____

6                                                              Matthew C. Kane
                                                               Sabrina A. Beldner
7                                                              Amy E. Beverlin
                                                               Ashley R. Li
8
                                                               Attorneys for Defendants
9                                                              WATKINS AND SHEPARD TRUCKING,
                                                               INC. and SCHNEIDER NATIONAL
10                                                             CARRIERS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28