**MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP**
Matthew C. Kane (SBN 171829)
    Email: mkane@mcguirewoods.com
Sabrina A. Beldner (SBN 221918)
    Email: sbeldner@mcguirewoods.com
Amy. E. Beverlin (SBN 284745)
    Email: abeverlin@mcguirewoods.com
Ashley R. Li (SBN 317305)
    Email: ali@mcguirewoods.com
1800 Century Park East, 7th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200
Facsimile:  310.315.8210

Attorneys for Defendants
WATKINS AND SHEPARD TRUCKING, INC.
and SCHNEIDER NATIONAL CARRIERS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ROMERO, on his own behalf and on behalf of all other persons similarly situated,<br><br>       Plaintiff,<br><br>      vs.<br><br>WATKINS AND SHEPARD TRUCKING, INC., a Montana corporation, SCHNEIDER NATIONAL CARRIERS, INC., a Nevada corporation, and DOES 1 through 100, inclusive,<br><br>      Defendants. | CASE NO. 5:19-cv-02158 PSG (KKx)<br><br>**DECLARATION OF THERESA PRESTINE-DOMMER IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION OF PLAINTIFF'S CLAIMS AND STAY PROCEEDINGS PENDING RULING ON MOTION AND COMPLETION OF ARBITRATION**<br><br>**Date:**    **May 4, 2020**<br>**Time:**    **1:30 p.m.**<br>**Crtrm:**  **6A**<br>**Judge:**   **Hon. Philip S. Gutierrez** |

## DECLARATION OF THERESA PRESTINE-DOMMER

I, THERESA PRESTINE-DOMMER, declare as follows:

1.      I am over 18 years of age.  The following information is true and of my own knowledge.  If called as a witness, I could and would competently testify thereto.

2.      I am the Learning and Development Team Lead – L&D Technology for Defendant Schneider National Carriers, Inc. ("SNC") and its subsidiary and affiliated entities, including Defendant Watkins and Shepard Trucking, Inc. ("W&S") (SNC and W&S are referred to herein collectively as "Defendants").  I have held this role for approximately seven years, and in this role, I have been and presently am responsible for, familiar with and have access to the online learning system that Defendants use to conduct online employee training and for the distribution and administration of company policies and related associate acknowledgments.

3.      In my capacity as Learning and Development Team Lead – L&D Technology, and in the normal course and scope of my duties in that role, I have been and presently am responsible for, among other things, implementing the processes and procedures used by Defendants for utilizing their online learning system to conduct online employee training, distribute company policies, and obtain and retain associate acknowledgments that are reviewed, completed and/or acknowledged by Defendants' employees.  In addition, in my above-described position, I have personal knowledge of how Defendants' online learning system is accessed by employees, how the training, policies, and acknowledgments are reviewed and completed by employees, as well as the content of those training modules, policies, and acknowledgments, including without limitation the Schneider Associate Acknowledgments that employees sign acknowledging their receipt, review, and/or agreement to certain Schneider policies

**DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

and procedures.  I also have access to and have reviewed the Schneider online learning system records for Plaintiff Alejandro Romero ("Plaintiff") in this action.

4.      In 2018 and 2019, Defendants' employees accessed required employee online training modules, policies, and acknowledgments through a web-based online learning system Defendants used for conducting online employee training, distributing company policies, and obtaining and retaining associate acknowledgments.  In order to access Defendants' online learning system, an employee must use his or her unique Employee Identification or User Identification Number and a unique password that he or she has created.  By creating their own unique password, each employee ends up with their own unique user account, with their Employee Identification or User Identification Number and a unique password as their log-in credentials.  After logging into the system using their log-in credentials, an employee is able to access, review, and, if applicable, acknowledge various policies, procedures, and other documents applicable to his or her employment.

5.      Plaintiff's unique Employee Identification Number for Defendants' online learning system was 383438. Defendants' online learning system records reflect that Plaintiff completed the Schneider Associate Acknowledgments on two separate occasions – first, on April 26, 2018 (the "2018 Associate Acknowledgments"), and then a second time on April 19, 2019 (the "2019 Associate Acknowledgments"). Through his Schneider Associate Acknowledgements, Plaintiff acknowledged that he had received, reviewed, and agreed to various policies and procedures, including, but not limited to, Schneider's Code of Conduct and Acceptable Use Policies.  The Associate Acknowledgments were accessed by Plaintiff by logging into Defendants' online learning system using his unique login credentials, selecting the "SNI US Learning Self-Service" tab, clicking on the "Learner Home" page, and then selecting

the Associate Acknowledgments document so that he could review and respond to the Schneider acknowledgments applicable to his employment.

6.     As of both April 26, 2018 and April 19, 2019, each employee who selected the Associate Acknowledgements document through Defendants' online learning system would see a preliminary message instructing him or her how to complete the Associate Acknowledgments review and response process, which provided in pertinent part as follows:

> Please read through the statements below and select "I Agree" or "I Do Not Agree" for each question. If you do not agree or do not understand the statement, please reach out to your leader or Human Resource Business Partner for further assistance.
>
> By answering the questions below, and completing this form, you acknowledge that the selections you make are true and accurate representations of your intent and that you agree to be bound by such expressions of intent. The answering of these questions by you shall constitute your electronic signature which shall be enforceable as if you had signed this document through the use of a handwritten signature.

After reviewing this preliminary message, an employee must affirmatively click a "Continue" button in order to proceed to the next step, which is to review and respond to the acknowledgment items set forth in the Associate Acknowledgments.

7.     The 2018 Associate Acknowledgments and the 2019 Associate Acknowledgments that were reviewed and completed by Plaintiff in Defendants' online learning system each contained four different sets of acknowledgments that an employee was required to read, and then affirmatively select either "I Agree" or "I Do Not Agree" as to each acknowledgment. Once an employee selected one of those two options, he or she would have to click a "Next" button in order to proceed to the next set of acknowledgments in the process. Once the employee reached and completed his or her selection for the fourth and final set of acknowledgments, he or she would be prompted to click a button to submit his or her responses to the Associate Acknowledgments. At that point, the employee would be presented with another

**DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

screen notifying him or her that he or she could review his or her responses to each of the acknowledgment items before finally submitting them.  In order to submit his or her responses, the employee would be required to select a button confirming that he or she was choosing to submit them and complete the Associate Acknowledgments process.  After this confirmatory submission process was completed, the Associate Acknowledgments for the employee then reflect a status of "completed" in Defendants' online learning system.

8.    In Defendants' online learning system, an employee can complete and submit his or her Associate Acknowledgments with any combination of "I Agree" and/or "I Do Not Agree" responses.

9.    The 2018 Associate Acknowledgments that Plaintiff completed through Defendants' online learning system contained a set of acknowledgments concerning the existence of the Schneider Mediation & Arbitration Policy (the "SMAP") and its applicability to Plaintiff's employment.  This set of acknowledgments informed Plaintiff that his employment would be subject to the terms of the SMAP and included an embedded hyperlink for him to access, review, read, and print (if desired) the then-current version of the SMAP.  In responding to that set of acknowledgements, Plaintiff was required to acknowledge that he had been able to read and review a copy of the SMAP, either in hard copy or through the provided hyperlink.  Additionally, that set of acknowledgments, among other things, advised Plaintiff that he was waiving his right to bring claims in court and on behalf of other individuals in a Representative Action (as that term is defined in the SMAP) and that he was agreeing to bring "any employment-related disputes [that] now exist or arise in the future" only through mandatory final and binding individual arbitration.  This set of acknowledgments expressly advised Plaintiff that the SMAP was not a condition of his employment; he would have 30 calendar days within which to elect to opt-out of the SMAP; and

127482999.3                                                                    4

presented Plaintiff with hyperlinked access to a copy of the then-current version of the SMAP to review the process for opting out of the SMAP if he chose to do so.

10.    Defendants' online learning system records reflect that Plaintiff responded "I Agree" to each of the four sets of acknowledgments in his 2018 Associate Acknowledgments that he completed on April 26, 2018, including the set of acknowledgments setting forth all of the foregoing acknowledgments about the applicability of the SMAP and its opt-out process.  Attached hereto as **Exhibit A** is a true and correct copy of the SMAP that was in effect on April 26, 2018 and accessible to Plaintiff via the live hyperlink within his Associate Acknowledgments at the time he completed and submitted his 2018 Associate Acknowledgments.  The following is a true and correct copy of Plaintiff's above-described SMAP acknowledgments as recorded in Defendants' online learning system:

(IMAGE ON NEXT PAGE)

**DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

1

2

I acknowledge, understand and agree that I have been able to read and review a copy of the

3

https://ebs1.intra.schneider.com/OA_HTML/OA.jsp?addBreadCrumb=Y&OAFunc=OTA...    1/22/2020

Learning Management: Preview Learner Attempt: Romero, Alejandro                          Page 2 of 3

4

5

6

current version of the Schneider Mediation & Arbitration Policy ("SMAP") through a Hyperlink

7

(password: GoOrange#1) visible and accessible to me in the Schneider system I am using to make these Associate Acknowledgements at this time (and I understand that a copy of the most current version of the SMAP is also available to me on the internal Schneider website, Transit or Compass, under the Company Policies and Guidelines section), and that if any employment-related disputes now exist or arise in the future between me and Schneider, we are and will be bound by the terms of the SMAP, under which we each waive our rights to have any "Covered Disputes" (as defined in the SMAP) be heard or decided through any type of judge or jury trials, administrative hearings, or through any type of "Representative Action" or "PAGA Action" (as defined in the SMAP), and agree that any Covered Disputes can only be resolved through voluntary mediation, mandatory individual final and binding arbitration, or a Small Claims Court action, except as expressly set forth in the SMAP. I acknowledge and understand that I remain bound by any version of the SMAP to the extent I previously had notice of and access to a copy of that version of the SMAP, did not opt out within 30 days of my initial receipt or notice thereof, and have not become bound by a more current version of the SMAP. I understand that, upon my initial receipt or notice of the current version of the SMAP, if I am a new associate who has never had previous notice of and access to a copy of and become bound by that version of the SMAP, I can elect to not be bound by that version of the SMAP by following the procedures in the "Employee Election To Not Be Bound By SMAP" section of the SMAP within 30 days of my initial receipt or notice of that version of the SMAP, and if I do not do so or did not do so when first provided notice of and access to that version of the SMAP, and have not become bound by a later version of the SMAP, then Schneider and I will be required to arbitrate any Covered Disputes in accordance with the most recent version of the SMAP to which I have become bound. I also acknowledge, understand and agree that, in the event I did not or do not provide a timely and proper Election Notice to not be bound by any version of the SMAP to which I have become bound, that will be deemed to be my exercise of my right under the National Labor Relations Act to not engage in concerted activity, including without limitation as to any Representative Action or PAGA Action.

8

9

10

11

12

13

14

15

16

17    ◉ I Agree (*)

18    ○ I Do Not Agree

19

20          11.    The 2019 Associate Acknowledgments that Plaintiff completed on April

21    19, 2019 likewise contained a set of acknowledgments about the existence of the

22    SMAP and its applicability to Plaintiff's employment, and presented him with an

23    embedded hyperlink to access, review, read and print (if desired) an updated version

24    of the SMAP that was introduced on March 25, 2019.  A true and correct copy of the

25    2019 version of the SMAP is attached hereto as **Exhibit B**.

26

27          12.    The 2019 Associate Acknowledgments again informed Plaintiff that his

28    employment would be subject to the terms of the updated version of the SMAP and

again required Plaintiff to acknowledge that he had the opportunity to read and review the SMAP (if he selected "I agree" in response to the SMAP-specific set of acknowledgements).  The 2019 Associate Acknowledgments also again advised Plaintiff that he was waiving his right to bring claims in court and on behalf of other individuals in a Representative Action (as that term is defined in the SMAP) and that he was agreeing to bring "any employment-related disputes [that] now exist or arise in the future" only through mandatory individual final and binding arbitration.  The SMAP-specific set of acknowledgments expressly advised Plaintiff that the SMAP is not a condition of employment and that he would have 30 calendar days to elect to opt-out of the SMAP, and presented Plaintiff with hyperlinked access to the then-current version of the SMAP to review the process for opting out of the SMAP if he chose to do so.

13.     Defendants' online learning system records reflect that he responded "I Agree" to each of the four sets of acknowledgments in his 2019 Associate Acknowledgments, including the set of acknowledgments setting forth all of the foregoing terms regarding the applicability of the SMAP and the opt-out process.  The following is a true and correct copy of Plaintiff's above-described SMAP acknowledgments as recorded in Defendants' online learning system:

(IMAGE ON NEXT PAGE)

DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS

1

I acknowledge, understand and agree that I have been able to read and review a copy of the

2

3    https://ebs1.intra.schneider.com/OA_HTML/OA.jsp?addBreadCrumb=Y&OAFunc=OTA...    1/22/2020

4    Learning Management: Preview Learner Attempt: Romero, Alejandro                   Page 2 of 3

5

6    current version of the Schneider Mediation & Arbitration Policy ("SMAP") either in hard copy or
     through a hyperlink

7    Hyperlink

8    visible and accessible to me in the Schneider system I am using to make these Associate
     Acknowledgements at this time (and I understand that a copy of the most current version of the

9    SMAP is also available to me on the internal Schneider website, Transit or Compass, under the
     Company Policies and Guidelines section), and that if any employment-related disputes now exist or
     arise in the future between me and Schneider, we are and will be bound by the terms of the SMAP,

10   under which we each waive our rights to have any "Covered Disputes" (as defined in the SMAP) be
     heard or decided through any type of judge or jury trials, administrative hearings, or through any

11   type of "Representative Action" or "PAGA Action" (as defined and specified in the SMAP), and agree
     that any Covered Disputes can only be resolved through voluntary mediation, mandatory individual
     final and binding arbitration, or a Small Claims Court action, except as expressly set forth in the

12   SMAP.

13   I acknowledge and understand that I remain bound by any earlier version of the SMAP to the extent
     I previously had notice of and access to a copy of that earlier version, did not make a timely and
     proper election to not be bound by the earlier version of the SMAP as specified in any such version,

14   and have not become bound by a more current version of the SMAP. I understand that, upon my
     initial receipt or notice of the current version of the SMAP, including if I am a new associate who has

15   never had previous notice of and access to a copy of and become bound by that version of the
     SMAP, I can elect to not be bound by that version of the SMAP entirely or by its "Chosen State Law"
     provision (specifying that it is governed by the laws of the State of Nevada if it is not subject to and

16   governed by the Federal Arbitration Act) by following the procedures in the "Election To Not Be
     Bound By SMAP Or Chosen State Law" section of the SMAP within 30 days of my initial receipt or

17   notice of that version of the SMAP, and if I do not do so or did not do so when first provided notice
     of and access to that version of the SMAP, and have not become bound by a later version of the
     SMAP, then Schneider and I will be required to arbitrate any Covered Disputes in accordance with

18   the most recent version of the SMAP to which I have become bound. If I primarily reside and work
     for Company in California, then I acknowledge and agree that I have in fact been individually

19   represented by legal counsel in negotiating the Chosen State Law provisions of the SMAP, if I
     desired to engage in such negotiating, and if no such negotiating occurred, it was because I did not
     desire to negotiate the Chosen State Law provision of the SMAP.

20

21   ◉ I Agree (*)
     ○ I Do Not Agree

22

23       I declare under penalty of perjury under the laws of the United States of

24   America that the foregoing is true and correct.

25       Executed this 28th day of February 2020, at Green Bay, Wisconsin.

26

27                          THERESA PRESTINE-DOMMER

28

# MEDIATION & ARBITRATION POLICY (UNITED STATES ONLY)

## SCHNEIDER'S COMMITMENT

For 80 years, Schneider has stood for a level of excellence that makes us a great, enduring company that is built to last forever. Schneider associates are key differentiators in our competitive advantage and our most important resource. Treating each other with the utmost respect and integrity is The Schneider Way. It is important that associates understand our policies and guidelines to know what is expected.

We acknowledge that, despite best efforts, there will be times when issues will occur. Our long-standing Fair and Equitable Process demonstrates the organization's dedication to the fair, prompt and equitable resolution of associate concerns. Schneider provides many channels for issue resolution.

- Because we value working directly with associates to resolve workplace issues and concerns, we expect that you will first seek to resolve issues through your leader, another leader or an appropriate functional resource (Example: HR or other appropriate department). Human Resource Business Partners work with every area of the organization and are available if you have questions or concerns about items impacting your work at Schneider.

- The Fair and Equitable Treatment Process provides you another way to appeal certain decisions made by your leader.

- If you see unethical or illegal behaviors, you *must* report it. Although our open-door approach encourages you to discuss your concerns regarding our Core Value and principles with your leader, the Schneider Ethics Hotline is also available to you. An independent organization is responsible for recording all claims that come in to the Ethics Hotline.

In the unusual circumstances where, despite our best efforts, a resolution cannot be reached through these internal processes, we believe associate disputes can best be resolved through mediation or arbitration. These processes are much more efficient and cost effective for everyone involved rather than formal court or administrative proceedings.

Thank you for your commitment to The Schneider Way, and for working together to ensure we continue to be a great, enduring organization.

Chris Lofgren

**PLEASE READ THIS POLICY CAREFULLY. IT PROVIDES THAT ANY COVERED DISPUTES (AS DEFINED BELOW) CAN ONLY BE RESOLVED BY VOLUNTARY MEDIATION, MANDATORY FINAL AND BINDING INDIVIDUAL ARBITRATION, OR IN A SMALL CLAIMS COURT PROCEEDING. UNLESS YOU PROPERLY ELECT TO NOT BE BOUND BY THIS POLICY AND EXCEPT AS OTHERWISE SET FORTH IN THIS POLICY, ITS MANDATORY FINAL AND BINDING INDIVIDUAL ARBITRATION OF COVERED DISPUTES REPLACES THE RIGHT TO GO TO COURT OR TO AN ADMINISTRATIVE AGENCY, INCLUDING THE RIGHT TO A JUDGE OR JURY TRIAL, TO AN ADMINISTRATIVE HEARING AND TO BRING OR PARTICIPATE IN A CLASS OR COLLECTIVE ACTION OR ANY OTHER TYPE OF REPRESENTATIVE ACTION OR PAGA ACTION (BOTH AS DEFINED BELOW). UNDER THIS POLICY, A COVERED DISPUTE IS RESOLVED ONLY ON AN INDIVIDUAL BASIS THROUGH VOLUNTARY MEDIATION, A SMALL CLAIMS COURT ACTION OR MANDATORY FINAL AND BINDING ARBITRATION BY AN ARBITRATOR INSTEAD OF BY A JUDGE, JURY OR ADMINISTRATIVE AGENCY, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS POLICY.**

## PURPOSE & SCOPE OF POLICY:

This Schneider Mediation & Arbitration Policy ("SMAP") is aimed at resolving covered employment-related disputes quickly and fairly, to the benefit of everyone involved. It is not meant to supplant the purpose, role and effect of managers, supervisors, leaders, administrators and any applicable internal grievance, complaint or dispute resolution procedures available for resolving workplace issues including, for example, complaints of unlawful harassment, discrimination or retaliation. Resolution of employment-related disputes should continue to be sought through such internal channels to the extent they are applicable to the disputes. Otherwise, formal resolution of all employment-related disputes covered by this SMAP must be sought and accomplished in accordance with its terms. Nothing in this SMAP is intended to prohibit an Employee (as defined below) from speaking with others about the terms and conditions of the Employee's and/or other Employees' employment with Company (as defined below).

## PARTIES COVERED BY POLICY:

This SMAP applies to Company and all Employees. As used in this SMAP: (a) "Company" means and refers, individually and collectively, to Schneider National, Inc. and its parent, subsidiary, sibling and other affiliated operating divisions and entities, and its or their respective agents, employees, officers, directors, and owners; and (b) "Employee" and its plural form "Employees" means and refers to any individual who is actually or allegedly employed by Company, or whose actual or alleged employment with Company terminates after becoming bound by this SMAP, and who wishes to initiate or participate in formal dispute resolution proceedings to resolve his or her Covered Disputes (as defined below).

## COVERED DISPUTES:

This SMAP applies to any and all employment-related claims, causes of action or other disputes, other than Excluded Disputes (as defined below), that have already accrued, now exist or arise in the future between an Employee and Company based on any legal, equitable or other ground or theory (including whether any such ground or theory constitutes an unwaivable statutory right) and would constitute cognizable claims or causes of action in a federal, state, or local court or agency under applicable federal, state, or local laws (referred to in this SMAP as "Covered Disputes"). Unless falling within the definition of Excluded Disputes below, Covered Disputes include those arising out of or related to an Employee's actual or alleged employment with or work for Company, applying for or seeking such

employment or work, the termination of such employment or work, any of the terms, conditions or benefits of such employment or work, issues of arbitrability (such as the formation, interpretation, applicability or enforceability of this SMAP, except to the extent it is an Excluded Dispute), the procedures to be followed in the arbitration proceedings other than any type of Representative Action or PAGA Action (both as defined below) procedures, allegations of delay and waiver, and whether prerequisites such as time limits, notice, laches, estoppel and other conditions precedent to an obligation to arbitrate have been met. Subject to the Representative Action Waiver and PAGA Action Waiver provisions of this SMAP (as set forth below), and unless falling within the definition of Excluded Disputes (as set forth below), Covered Disputes also include those that (1) arose or accrued before the date of becoming bound by this SMAP, including if the subject of or asserted in a previously-threatened or filed and/or currently-pending Representative Action or PAGA Action (both as defined below) in which no certification or permission of any type to proceed in that manner has been granted by the court as of the date of becoming bound by this SMAP, (2) are asserted or threatened in any subsequently-filed Representative Action or PAGA Action (both as defined below) in which an Employee or Company is allegedly representing (or seeking to represent) or being represented as a member of a putative or certified class or collective, a group of aggrieved employees or the general public, or (3) arise or accrue before, upon or after an Employee's actual or alleged employment with or work for Company terminates.

## EXCLUDED DISPUTES:

The following are "Excluded Disputes" not subject to this SMAP: (1) claims for workers' compensation benefits under state law; (2) claims for unemployment or disability insurance or other health or welfare benefits under government-administered programs; (3) claims within the jurisdiction of the National Labor Relations Board; (4) claims arising or regulated under federal law for which there is an unwaivable specific statutory or regulatory enactment making such claims not arbitrable; (5) claims for temporary equitable relief in aid of arbitration under this SMAP, as permitted under applicable law, which may be brought either before the appointed arbitrator or in a court of competent jurisdiction; (6) any disputes regarding the applicability, interpretation, enforceability and/or severability of the Representative Action Waiver and PAGA Action Waiver provisions of this SMAP (as set forth below), including whether such provisions are governed by the Federal Arbitration Act, which must be decided only by a court of competent jurisdiction; (7) any disputes as to whether Company and any Employee agreed to allow any type of Representative Action or PAGA Action (both as defined below) to be arbitrated under this SMAP, which must be decided only by a court of competent jurisdiction; (8) claims based on any written agreement between Company and any Employee containing a forum selection clause; and (9) any disputes as to whether a claim or dispute falls within this definition of Excluded Disputes, which must be decided only by a court of competent jurisdiction.

## VOLUNTARY MEDIATION:

An Employee and Company are not prohibited from pursuing an informal resolution of their Covered Disputes. Thus, before commencing any final and binding arbitration or Small Claims Court proceedings under this SMAP, they may agree to voluntarily mediate any of their Covered Disputes. An Employee wishing to pursue voluntary mediation of Covered Disputes with Company must submit a written request for mediation to Company's General Counsel. If the Employee and Company voluntarily and mutually agree to mediate their Covered Disputes with a mutually agreed upon mediator, Company will pay the mediator's fee for up to eight hours (if the mediator charges by the hour) or one day (if the mediator charges by the day) of mediation services. Nothing in this SMAP obligates an Employee or Company to agree to mediate any Covered Disputes or settle any Covered Disputes through mediation, which is strictly voluntary. If any Covered Disputes are not resolved through

voluntary mediation (either because the parties did not reach an agreement to mediate or because no resolution was reached during a mediation they participated in) or through other informal dispute resolution efforts, they will only be submitted for formal dispute resolution through final and binding individual arbitration pursuant to this SMAP.

## SMALL CLAIMS COURT ACTIONS:

Any Covered Disputes that are within the jurisdiction of a Small Claims Court may, at the option of the party asserting such Covered Disputes, be resolved in a Small Claims Court proceeding having jurisdiction over the matter instead of an individual arbitration proceeding pursuant to this SMAP. The Covered Disputes must remain in such Small Claims Court or appellate courts with jurisdiction over the matter, and proceed only on an individual basis and not as any type of Representative Action or PAGA Action (both as defined below).

## WAIVER OF RIGHT TO JUDGE OR JURY TRIAL & ADMINISTRATIVE HEARINGS:

There are no judge or jury trials or administrative hearings of Covered Disputes permitted under this SMAP, other than in a Small Claims Court action as set forth above. An Employee and Company with any Covered Disputes, existing or accrued now or in the future, waive any and all rights to a judge or jury trial and/or administrative hearing of their Covered Disputes and agree to their resolution exclusively by final and binding individual arbitration in accordance with the terms of this SMAP, whether initiated by an Employee or by Company. No formal dispute resolution proceedings concerning any Covered Disputes will take place in any local, state or federal court or agency.

## COMMENCEMENT OF ARBITRATION:

A demand for arbitration of any Covered Disputes must be made in writing, comply with the requirements for pleadings under the Federal Rules of Civil Procedure ("FRCP") and be served on the other party in the manner provided for service of a summons under the FRCP within the applicable statute of limitations periods (including on a proper registered agent for service of process), which will abate the further running of the limitations periods applicable to the Covered Disputes being asserted. If such service cannot be effectuated within the applicable limitations periods, then protective service may be made through delivery before the expiration of such periods via the United States Postal Service (USPS) or private courier (such as FedEx, UPS, or DHL) using delivery services that produce a written record establishing the dates of sending and receipt (a "Mail Record"), which must be maintained by the party making such protective service and will abate the further running of the applicable limitations periods.

## ARBITRATOR APPOINTMENT:

Each individual Employee and Company must mutually agree on the selection and appointment of a separate neutral arbitrator who is experienced in the laws at issue to resolve their respective individual Covered Disputes at issue. If no such agreement can be reached, each individual Employee and Company must mutually agree on a dispute resolution services provider ("DRS Provider") to administer the arbitration, whose procedures for appointing an arbitrator will be followed. The appointed arbitrator must be located, and the Covered Disputes between the individual Employee and Company must be heard and decided by the arbitrator, within the geographic district for the United States District Court in which the individual Employee who is a party to the Covered Disputes being arbitrated currently works for Company or last worked for Company (in the case of an Employee whose employment has terminated). The appointed arbitrator must interpret, apply and enforce this SMAP only as written. If mutual agreement on the selection and appointment of an arbitrator or a DRS Provider as set forth herein is not reached, then appointment of an arbitrator and DRS Provider

consistent with the terms and requirements of this SMAP may be sought in a court of competent jurisdiction pursuant to applicable law.

## ARBITRATION PROCEDURES:

Absent the agreement of the Employee and Company after a demand for arbitration under this SMAP is made, neither the American Arbitration Association ("AAA") nor JAMS will be permitted to serve as a DRS Provider to administer any aspect of any arbitration under this SMAP. The Federal Rules of Civil Procedure (the "FRCP") and the Federal Rules of Evidence (which are accessible via links at http://www.uscourts.gov/RulesAndPolicies/rules/current-rules.aspx), except any such rules or procedures which would allow for or permit any type of jury trial or Representative Action or PAGA Action (both as defined below and unless otherwise expressly made applicable under the provisions of this SMAP), are incorporated into this SMAP and will apply to and must be followed and enforced by the appointed arbitrator in any arbitration proceedings held pursuant to this SMAP. During any such arbitration proceedings, the parties will have the right to conduct normal civil discovery and to bring motions, other than as to any Representative Action or PAGA Action claims except as expressly provided in the PAGA Action Waiver provisions below, as provided by the FRCP rules and procedures to the extent incorporated into this SMAP. To the extent the rules or procedures of any DRS Provider administering an arbitration pursuant to this SMAP are different than or inconsistent with those required to be applied or followed under this SMAP, then the terms of this SMAP will supersede them, control and be followed as written.

## REPRESENTATIVE ACTION WAIVER:

As used in this SMAP, a "Representative Action" is any action or proceeding brought or sought to be brought against an Employee or Company by any person or entity (whether or not bound by this SMAP) in a representative capacity on behalf of or for the benefit of (in whole or in part) an Employee, Company and/or any governmental entity, other than as a PAGA Action (as defined below). A Representative Action includes any type of (a) class action, (b) class arbitration, (c) collective action, (d) collective arbitration, (e) private attorney general action (other than a PAGA Action as defined below), (f) joined, consolidated or coordinated actions or arbitrations, and (g) claims or disputes brought in a representative capacity on behalf of the general public, of any governmental entity (other than a PAGA Action as defined below), of other Employees or Company, or of other persons or entities alleged to be similarly situated. A Representative Action is not permitted under this SMAP in connection with any Covered Disputes, and there is no agreement, right or authority under this SMAP for any Covered Disputes to be heard, arbitrated or decided as any type of Representative Action. An Employee and Company with any Covered Disputes, now existing or arising in the future, waive any and all rights to bring or participate in any type of Representative Action to resolve, decide or adjudicate any Covered Disputes and are prohibited from doing so. The appointed arbitrator will have no power, authority or jurisdiction to (a) hear or decide any Covered Disputes as any type of Representative Action; (b) award any type of remedy or relief for any Covered Disputes in connection with any type of Representative Action; (c) join or consolidate in the arbitration any Covered Disputes brought by or against any other Employees or Company; (d) award injunctive relief other than in favor of the individual Employee or Company seeking such relief and only to the extent permitted by applicable law and necessary to provide relief warranted by that individual Employee's or Company's Covered Disputes; or (e) interpret, apply, enforce or modify this SMAP in any manner that would empower or authorize the arbitrator to do any of the foregoing. The foregoing provisions are not intended to be severable and shall not be severed if they are held or ruled to be unenforceable in any material respect. If such a holding or ruling is made, any party the Representative Action is brought against will not be required to arbitrate any Covered Disputes being pursued against that party as any type of Representative Action.  Any

Employee who does not properly elect to not be bound by this SMAP in the manner set forth below acknowledges, understands and agrees that Covered Disputes under this SMAP include any claims now being or hereafter brought putatively on Employee's behalf as a proposed Representative Action to the extent that certification or permission to proceed as a Representative Action has not been granted as of the time the Employee becomes bound by the terms of this SMAP, and that the Employee may obtain information about any such actions now pending by requesting it from the Employee's Human Resource Business Partner.

## PAGA ACTION WAIVER

As used in this SMAP, a "PAGA Action" is any action or proceeding brought or sought to be brought against Company on behalf of the State of California for alleged violations of the California Labor Code suffered by aggrieved employees in addition to the Employee bringing the action or proceeding pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), which is codified in California Labor Code Section 2698 et seq. Under PAGA, aggrieved employees, acting as private attorneys general of the State of California, are allowed to recover civil penalties for violations of the California Labor Code suffered by aggrieved employees. Thus, under PAGA, an aggrieved employee may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for violations of the California Labor Code. Of the civil penalties recovered, 75 percent goes to the California Labor and Workforce Development Agency (the "LWDA"), and the remaining 25 percent goes to the aggrieved employees. Prior to bringing a PAGA Action, an aggrieved employee must give notice to the LWDA and the employer that describes the facts and theories supporting the claimed violations of the California Labor Code. The aggrieved employee is permitted to commence a PAGA Action only after giving such notice and the LWDA either decides not to investigate or issue a citation, or fails to give notice of its decision within specified periods. A PAGA Action functions as a substitute for an action brought by the State of California itself, and a judgment in such an action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the State of California. Except as expressly set forth below, an Employee is not permitted to bring a PAGA Action under this SMAP in connection with any Covered Disputes, and there is no agreement, right or authority under this SMAP for any Covered Disputes to be heard, arbitrated or decided as any type of PAGA Action.

An Employee with any Covered Disputes, now existing or arising in the future, waives any and all rights to bring or participate in any type of PAGA Action to resolve, decide or adjudicate any Covered Disputes and is prohibited from doing so.  Any Employee who does not properly elect to not be bound by this SMAP in the manner set forth below acknowledges, understands and agrees that the Employee has or may have claims that can or could be asserted now or in the future under PAGA, that the Employee has had a sufficient opportunity to learn and understand the nature and extent of any such PAGA claims, and that the Employee is knowingly and voluntarily waiving any and all rights to bring or participate in any type of PAGA Action to resolve, decide or adjudicate any such Covered Disputes, including but not limited to claimed violations of California laws related to the payment of compensation or wages of any type (including bonuses and commissions), accrual or use or payment of vacation or sick pay or other paid time off, providing or authorizing and permitting meal or rest periods, reimbursement of employment-related expenses, inaccurate wage statements and timely payment of wages.  Any Employee who does not properly elect to not be bound by this SMAP in the manner set forth below also acknowledges, understands and agrees that Covered Disputes under this SMAP include any claims now being or hereafter brought putatively on Employee's behalf as a proposed PAGA Action to the extent that permission to proceed as a PAGA Action has not been granted as of the time the Employee becomes bound by the terms of this SMAP, and that the Employee may obtain information about any such actions now pending by requesting it from the Employee's Human

Resource Business Partner. Except as expressly set forth below, the appointed arbitrator will have no power, authority or jurisdiction to (a) hear or decide any Covered Disputes as any type of PAGA Action; (b) award any type of remedy or relief for any Covered Disputes in connection with any type of PAGA Action; (c) join or consolidate in the arbitration any Covered Disputes brought by or on behalf of any other Employees or the State of California pursuant to PAGA; or (d) interpret, apply, enforce or modify this SMAP in any manner that would empower or authorize the arbitrator to do any of the foregoing. Notwithstanding and without limiting the applicability of the foregoing provisions of this PAGA Action Waiver in the first instance in any way: (a) an Employee retains the right to individually arbitrate a Covered Dispute under PAGA pursuant to this SMAP but only with respect to recovering penalties for any violations of the California Labor Code suffered solely by the Employee personally and not by any other aggrieved employees; (b) should any asserted PAGA Action claims be held by a court of competent jurisdiction to not be subject to this PAGA Action Waiver (including due to being held not enforceable), then such asserted PAGA Action claims shall not be arbitrated and shall instead be stayed by the court while any individual and/or Representative Action claims held to be subject to the Representative Action Waiver provisions of this SMAP are arbitrated and only on an individual basis, with the asserted PAGA Action claims only litigated in court thereafter as a PAGA Action seeking to recover penalties for violations of the California Labor Code suffered by aggrieved employees if the requirements for certifying the PAGA Action claims as a class action pursuant to applicable law are held to be satisfied by the court; and (c) should any PAGA Action claims be held by a court of competent jurisdiction to be required under applicable law to be arbitrated under this SMAP other than only as to alleged violations of the California Labor Code suffered by the Employee bringing the PAGA Action, then, at the Company's election, any Covered Disputes being pursued as a PAGA Action will either (i) be litigated in the court as a PAGA Action seeking to recover penalties for violations of the California Labor Code suffered by aggrieved employees only if the requirements for certifying the PAGA Action claims as a class action pursuant to applicable law are held to be satisfied by the court, or (ii) be arbitrated with the appointed arbitrator, who will only allow a PAGA Action seeking to recover penalties for violations of the California Labor Code suffered by aggrieved employees to be arbitrated if the requirements for certifying the PAGA Action claims as a class action under the class action provisions of the FRCP and applicable decisional law are satisfied.

## ARBITRATOR'S AWARD:

Within 30 days following the close of the arbitration merits hearing, Employee and Company will have the right to submit to the arbitrator, and must serve on each other, a post-hearing brief not to exceed 50 pages in length. The parties, with the arbitrator's approval, may agree to extend this time deadline and increase this page limitation, and the arbitrator will have the authority to grant requests for such extensions and increases by either Employee or Company for good cause shown. Subject to and without waiver or limitation of the Representative Action Waiver and PAGA Action Waiver provisions of this SMAP, the arbitrator will be empowered to award Employee or Company any individual remedy at law or in equity that the party otherwise would have been entitled to had the matter been individually litigated in a court or before a governmental agency with jurisdiction over the Covered Disputes being arbitrated. The authority to award any remedy, however, is subject to whatever limitations on such remedies exist under applicable law. The appointed arbitrator will have no authority or jurisdiction to issue any award that is contrary to or inconsistent with the terms and provisions of this SMAP and the applicable laws at issue. Within 30 days after a dispositive motion is fully-briefed and heard, and within 30 days after a merits hearing is closed and all post-hearing briefing has been submitted, the arbitrator must issue an award in writing on the dispositive motion and/or on the merits which must be accompanied by or include a written, reasoned statement of decision with findings of fact and conclusions of law supporting the award. A judgment of any court having jurisdiction may be entered on the arbitrator's award upon it being confirmed by such court. However, the arbitrator will not have

any power or authority to commit errors of law or legal reasoning and, to the extent permitted under applicable law, any award by the arbitrator shall be vacated or corrected for any such error on petition or appeal to a court of competent jurisdiction.

## CONFIDENTIALITY:

Unless otherwise not permitted under applicable law, the parties to the Covered Disputes being arbitrated and the arbitrator shall maintain the existence, content and outcome of any arbitration proceedings held pursuant to this SMAP in the strictest confidence and shall not disclose the same without the prior written consent of all the parties.

## ARBITRATION FORUM COSTS:

Employee and Company will each pay the costs and fees for their respective attorneys' prosecution or defense of the Covered Disputes being arbitrated, subject to any remedies to which Employee and Company may later be entitled under applicable law. To the extent required by binding United States Supreme Court precedent, Company will pay up to all of the arbitration forum costs (including arbitrator fees), as apportioned by the arbitrator in accordance with such legal authority. Any dispute over the payment or apportionment of the arbitration forum costs (including arbitrator fees) is a Covered Dispute which must be resolved only by the appointed arbitrator. Unless binding United States Supreme Court precedent requires one party or the other to bear all or a greater share of the arbitration forum costs (including arbitrator fees), such costs shall be apportioned equally between Employee and Company.

## SOLE & EXCLUSIVE REMEDIES:

Mandatory final and binding individual arbitration or a Small Claims Court action in accordance with the terms of this SMAP are the sole and exclusive remedies for the formal resolution of any and all Covered Disputes, except as otherwise expressly provided in this SMAP.

## EXHAUSTION OF OTHER REMEDIES:

This SMAP does not prevent or excuse an Employee or Company from satisfying any applicable statutory and/or regulatory conditions precedent or jurisdictional prerequisites to pursuing any Covered Disputes by, for example, giving proper notices to, filing administrative charges with or obtaining right to sue notices or letters from federal, state or local governmental agencies. After complying with and exhausting all such remedies, conditions or prerequisites, final and binding individual arbitration in accordance with this SMAP is the sole and exclusive remedy or formal method of resolving the Covered Disputes.

## FILING ADMINISTRATIVE CHARGES OR COMPLAINTS:

All Employees retain the right under the National Labor Relations Act ("NLRA") to file unfair labor practice charges with the National Labor Relations Board ("NLRB"). An Employee also retains the right to file charges or complaints with the United States Equal Employment Opportunity Commission ("EEOC"), the United States Department of Labor and other federal administrative agencies under applicable laws within their administrative jurisdiction. However, nothing in this SMAP is intended or should be construed as any type of express or implied waiver or limitation of Company's right to enforce the provisions of this SMAP to the maximum extent permitted by controlling law.

## ASSOCIATE ELECTION TO NOT BE BOUND BY SMAP:

Not later than the 30th calendar day after the date an Employee has received notice or a copy of this SMAP (the "Election Deadline"), the Employee can elect to not be bound by this SMAP by giving

Company written notice of such election (an "Election Notice"). Company has no preference as to whether an Employee makes such an election, and an Employee should feel free to elect to not be bound by this SMAP without fear of retaliation or reprisal by Company, which is strictly prohibited. To elect to not be bound by this SMAP, an Employee's Election Notice to Company must be in writing and:

(a) state the Employee's name, mailing address, phone number, e-mail address (if any) and Employee number or other unique identifier used by Company (if any);

(b) state that the Employee is electing to not be bound by this SMAP;

(c) be signed and dated by the Employee; and

(d) be sent or delivered by the Associate to Company on or by the Election Deadline to General Counsel (Legal), Schneider National, Inc., US.GRB.01.03.01, 3101 S. Packerland Drive, Green Bay, WI 54306, Fax: 920-592-3063, E-mail: fleiglec@schneider.com, via either (i) hand delivery, with the Associate being given an Acknowledgment of Receipt of the Election Notice; (ii) fax transmission which generates an accurate written confirmation of the fax transmission; (iii) e-mail with the word "ELECTION NOTICE" in the subject line of the e-mail message; or (iv) the United States Postal Service (USPS) or private courier (such as FedEx, UPS, or DHL) using delivery services that produce a written record establishing the dates the notice was sent to and received by Company (a "Mail Record").

Before deciding whether to elect to not be bound by this SMAP, Employee is being provided with an opportunity to consult with an attorney and/or other advisors of Employee's choosing. If an Employee elects to not be bound by this SMAP, he or she must maintain a copy of the Election Notice sent to Company and, as may be applicable, a copy of (i) the Acknowledgment of Receipt received from Company, (ii) the fax transmission confirmation; (iii) the Employee's e-mail message, including any attachment(s) thereto, or (iv) the Mail Record. In the event of any dispute as to whether an Employee made such an election, the Employee will have the burden of proving he or she did so by producing a copy of the Election Notice and the Acknowledgment of Receipt, fax confirmation, e-mail message (and any attachment) or Mail Record. If an Employee fails to comply with these requirements for electing to not be bound by this SMAP or for proving such an election was made, the Employee will be deemed to have irrevocably agreed to be bound by all of its provisions and to be exercising the Employee's right under the National Labor Relations Act to not engage in concerted activity, including without limitation as to any Representative Action or PAGA Action.

## PROHIBITION AGAINST RETALIATION:

Company does not tolerate, and strictly prohibits, any form of retaliation against an Employee for filing administrative charges and complaints, pursuing or opposing resolution of any Covered Disputes under this SMAP or electing to not be bound by this SMAP as set forth herein. Any such filing, pursuit, opposition or election by an Employee will not prevent, limit or delay Company from taking non-retaliatory, lawful disciplinary or other employment-related action against an Employee, up to and including termination, in circumstances where Company considers such action appropriate.

## PRIOR ARBITRATION AGREEMENTS:

Except with respect to any Covered Disputes currently being arbitrated on an individual basis under or pursuant to the current version of this SMAP in effect before an Employee becomes bound by the terms of this version of the SMAP, this SMAP supersedes and replaces all prior policies or agreements providing for arbitration of any Covered Disputes between Employees and Company (a "Prior

Arbitration Agreement"). However, if an Employee properly elects to not be bound by this SMAP as set forth above, or this SMAP is otherwise not binding on an Employee in whole or in part, then the Prior Arbitration Agreement binding the Employee and Company will not be superseded and replaced to that extent, and will remain in force and effect to that extent as between the Employee and Company.

## AT-WILL EMPLOYMENT:

An Employee's employment with Company is and continues to be at-will. Nothing in this SMAP changes an Employee's at-will employment status, which can only be changed by a written agreement expressly stating it changes that status and signed by both the Employee and Company's CEO. The terms of this SMAP will survive the termination of an Employee's employment relationship with Company and remain binding and in effect.

## INTEGRATION & MODIFICATION:

This SMAP is the full and complete policy and agreement between an Employee and Company relating to the formal resolution of Covered Disputes. It may not be modified or terminated except in writing, or as otherwise expressly permitted or required by this SMAP or controlling law, including by Company after 30 days' advance written or electronic notice to Employees. Any modification or termination of this SMAP will be prospective only and will not apply to the individual arbitration of any accrued or pending Covered Disputes that have been initiated pursuant to the current version of this SMAP prior to the expiration of the 30-day period.

## SEVERABILITY:

If any provision of this SMAP other than the Representative Action Waiver provisions is deemed invalid or unenforceable, it will be severed and the remainder of this SMAP will not be affected.

## WAIVER:

The failure of Company at any time to require any Associate's performance of any provision of this SMAP shall not affect its right thereafter to enforce the same; nor shall the waiver by Company of any breach of any provision of this SMAP be construed to be a waiver of any succeeding breach of any such provision, or as a waiver of the provision itself, or as the waiver of the breach of any other provision of this SMAP.

## NO SIGNATURE REQUIRED FOR ACCEPTANCE:

Unless an Associate elects to not be bound by this SMAP as set forth herein, the continuation of employment with Company by an Associate following actual or constructive notice or knowledge of this SMAP is deemed the Associate's acceptance of and agreement to be bound by all of its terms and provisions. The issuance of this SMAP is deemed Company's acceptance of and agreement to be bound by all of its terms. No signature by an Associate or Company is required for this SMAP to apply to Covered Disputes.

## GOVERNING LAW:

This SMAP, any arbitration proceedings held pursuant to this SMAP, and any court or other proceedings concerning arbitration under this SMAP are expressly subject to and governed by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "FAA"), including the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. section 201 et seq. (the "Convention"), if the Convention is applicable, and Employees and Company waive the application or enforcement of any provision of the FAA which would otherwise exclude this SMAP from its coverage. Only to the extent that state law is applicable under the FAA and/or the Convention, then the laws of

the state in which the Employee was employed by Company at the time he or she became bound by this SMAP will be the applicable state law, without regard to or application of any conflict of laws principles. In the event a court of competent jurisdiction holds or decides that the Representative Action Waiver provisions of this SMAP, as applied to any Covered Disputes being asserted, are not subject to and governed by the FAA, then this SMAP shall be of no force or effect as to any such Covered Disputes being pursued as any type of Representative Action. In the event a court of competent jurisdiction holds or decides that the PAGA Action Waiver provisions of this SMAP, as applied to an action or proceeding in which Covered Disputes are being asserted only as a PAGA Action, are not subject to and governed by the FAA, then this SMAP shall be of no force or effect as to any such action or proceeding.

## FOR MORE INFORMATION

If there are any questions or concerns, please contact the Schneider Legal Department.

*Owner: Compliance/HRLT*
*Created: 5.19.2015*
*Last Revised: 12.22.2016*
*Policy valid date and time printed only – refer to Cross Roads for current version*
*For internal associate use only.  Do not share or distribute externally.*

# MEDIATION & ARBITRATION POLICY (UNITED STATES)

## SCHNEIDER'S COMMITMENT

For 80 years, Schneider has stood for a level of excellence that makes us a great, enduring company that is built to last forever. Schneider associates are key differentiators in our competitive advantage and our most important resource. Treating each other with the utmost respect and integrity is The Schneider Way. It is important that associates understand our policies and guidelines to know what is expected.

We acknowledge that, despite best efforts, there will be times when issues will occur. Our long-standing Fair and Equitable Process demonstrates the organization's dedication to the fair, prompt and equitable resolution of associate concerns. Schneider provides many channels for issue resolution.

- Because we value working directly with associates to resolve workplace issues and concerns, we expect that you will first seek to resolve issues through your leader, another leader or an appropriate functional resource (Example: HR or other appropriate department). Human Resource Business Partners work with every area of the organization and are available if you have questions or concerns about items impacting your work at Schneider.

- The Fair and Equitable Treatment Process provides you another way to appeal certain decisions made by your leader.

- If you see unethical or illegal behaviors, you **must** report it. Although our open-door approach encourages you to discuss your concerns regarding our Core Value and principles with your leader, the Schneider Ethics Hotline is also available to you. An independent organization is responsible for recording all claims that come in to the Ethics Hotline.

In the unusual circumstances where, despite our best efforts, a resolution cannot be reached through these internal processes, we believe associate disputes can best be resolved through mediation or arbitration. These processes are much more efficient and cost effective for everyone involved rather than formal court or administrative proceedings.

Thank you for your commitment to The Schneider Way, and for working together to ensure we continue to be a great, enduring organization.

Chris Lofgren

**PLEASE READ THIS POLICY CAREFULLY. IT PROVIDES THAT, UNLESS YOU PROPERLY ELECT TO NOT BE BOUND BY THIS POLICY AND EXCEPT AS OTHERWISE SET FORTH BELOW, ANY COVERED DISPUTES CAN ONLY BE RESOLVED BY VOLUNTARY MEDIATION, MANDATORY FINAL AND BINDING INDIVIDUAL ARBITRATION, OR IN A SMALL CLAIMS COURT PROCEEDING, WHICH REPLACE THE RIGHT TO OTHERWISE GO TO COURT OR AN ADMINISTRATIVE AGENCY, INCLUDING THE RIGHT TO A JUDGE OR JURY TRIAL, TO AN ADMINISTRATIVE HEARING, AND TO BRING OR PARTICIPATE IN ANY OTHER TYPE OF REPRESENTATIVE ACTION OR PAGA ACTION (AS DEFINED BELOW).**

## PURPOSE & SCOPE OF POLICY:

This Schneider Mediation & Arbitration Policy ("SMAP") is aimed at resolving covered employment-related disputes quickly and fairly, to the benefit of everyone involved. It is not meant to supplant the purpose, role and effect of managers, supervisors, leaders, administrators, and any otherwise applicable internal grievance, complaint, or dispute resolution procedures available for resolving workplace issues including, for example, complaints of unlawful harassment, discrimination, or retaliation. Resolution of employment-related disputes should continue to be sought through such internal channels to the extent they are applicable to the disputes. Otherwise, formal resolution of all employment-related disputes covered by this SMAP must only be in accordance with its terms, below.

## PARTIES COVERED BY POLICY:

This SMAP applies to Company and all Covered Individuals. As used in this SMAP: (a) "Company" means and refers, individually and collectively, to Schneider National, Inc. and its parent, subsidiary, sibling and other affiliated operating divisions and entities, and its or their respective agents, employees, officers, directors, and owners; and (b) "Covered Individual" and its plural form "Covered Individuals" means and refers to any individual who has applied for employment with Company, who is actually or allegedly employed by Company, or whose actual or alleged employment with Company terminates after becoming bound by this SMAP, and who wishes to initiate or participate in formal dispute resolution proceedings to resolve any Covered Disputes (as defined below).

## COVERED DISPUTES:

This SMAP applies only to "Covered Disputes," which are defined to mean any and all employment-related claims, causes of action, or other disputes that have already accrued, now exist, or arise in the future between a Covered Individual and Company based on any legal, equitable, or other ground or theory (including whether any such ground or theory constitutes an unwaivable statutory right) and would constitute cognizable claims or causes of action in a federal, state, or local court or agency under applicable federal, state, or local laws. Unless falling within the definition of Excluded Disputes, below, Covered Disputes include those arising out of or related to (i) a Covered Individual's actual or alleged employment with or work for Company, applying for or seeking or being denied such employment or work, the termination of such employment or work, and/or any of the terms, conditions, or benefits of such employment or work, (ii) issues of arbitrability (such as the formation, interpretation, applicability or enforceability of this SMAP, except to the extent they are Excluded Disputes), (iii) the procedures to be followed in the arbitration proceedings other than any type of Representative Action or PAGA Action (both as defined below) procedures, (iv) allegations of delay and waiver, and (v) whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met. Subject to the Representative Action Waiver and PAGA Action Waiver provisions of this SMAP (collectively referred to in this SMAP as the "Waiver Provisions"), Covered Disputes also include those that (a) arose or accrued before the date of becoming bound by this SMAP, including if the subject of or asserted in a previously-threatened or filed and/or currently-

pending Representative Action or PAGA Action (both as defined below) in which no certification or permission of any type to proceed in that manner has been granted by the court as of the date of becoming bound by this SMAP, (b) are asserted or threatened in any subsequently-filed Representative Action or PAGA Action in which a Covered Individual or Company is allegedly representing (or seeking to represent) or being represented as a member of a putative or certified class or collective, a group of aggrieved employees, or the general public, (c) arise or accrue before, upon, or after a Covered Individual's actual or alleged employment with or work for Company terminates or his/her application for such employment or work is denied, and/or (d) concern or relate to whether the Covered Individual has suffered and/or is suffering any violations of any legal obligations, including declaratory relief to resolve that issue.

## EXCLUDED DISPUTES:

This SMAP does not apply to "Excluded Disputes," which are defined to mean: (1) claims for workers' compensation benefits under state law; (2) claims for unemployment or disability insurance or other health or welfare benefits under government-administered programs; (3) claims within the jurisdiction of the National Labor Relations Board; (4) claims arising or regulated under federal law for which there is an unwaivable specific statutory or regulatory enactment making such claims not arbitrable; (5) claims for temporary equitable relief in aid of arbitration under this SMAP, as permitted under applicable law, which may be brought either before the appointed arbitrator or in a court of competent jurisdiction; (6) any disputes regarding the applicability, interpretation, enforceability, and/or severability of the Waiver Provisions of this SMAP (as set forth below), including whether such provisions are governed by the Federal Arbitration Act, which must be decided by a court of competent jurisdiction; (7) any disputes as to whether Company and any Covered Individual agreed to allow any type of Representative Action or PAGA Action (both as defined below) to be arbitrated under this SMAP, which must be decided by a court of competent jurisdiction; and (8) any disputes as to whether a claim or dispute falls within this definition of Excluded Disputes, which must be decided by a court of competent jurisdiction.

## VOLUNTARY MEDIATION:

The Covered Individual and Company may, at any time, pursue an informal resolution of their Covered Disputes. Thus, either before commencing or during any final and binding arbitration or Small Claims Court proceedings under this SMAP, they may agree to voluntarily mediate any of their Covered Disputes. A Covered Individual wishing to pursue voluntary mediation of Covered Disputes with Company must submit a written request for mediation to Company's General Counsel. If the Covered Individual and Company voluntarily and mutually agree to mediate their Covered Disputes with a mutually agreed upon mediator, Company will pay the mediator's fee for up to eight hours (if the mediator charges by the hour) or one day (if the mediator charges by the day) of mediation services. Nothing in this SMAP obligates the Covered Individual or Company to agree to mediate any Covered Disputes or settle any Covered Disputes through mediation, which is strictly voluntary.

## SMALL CLAIMS COURT ACTIONS:

Any Covered Disputes that are within the jurisdiction of a Small Claims Court may, at the option of the party asserting such Covered Disputes, be resolved in a Small Claims Court proceeding instead of an individual arbitration proceeding pursuant to this SMAP.

## WAIVER OF RIGHT TO JUDGE OR JURY TRIAL & ADMINISTRATIVE HEARINGS:

There are no judge or jury trials or administrative hearings of Covered Disputes permitted under this SMAP, other than in a Small Claims Court action as set forth above. A Covered Individual and Company

with any Covered Disputes, whether existing or accrued now or in the future, waive any and all rights to a judge or jury trial and/or administrative hearing of their Covered Disputes and agree to their resolution exclusively by final and binding individual arbitration in accordance with the terms of this SMAP, whether initiated by a Covered Individual or by Company. No formal dispute resolution proceedings concerning any Covered Disputes will take place in any local, state, or federal court or agency.

## COMMENCEMENT OF ARBITRATION:

A demand for arbitration of any Covered Disputes must be made in writing, comply with the requirements for pleadings under the Federal Rules of Civil Procedure ("FRCP"), and be served on the other party in the manner provided for service of a summons under the FRCP within the applicable statute of limitations periods (including on a proper registered agent for service of process), which will abate the further running of the limitations periods applicable to the Covered Disputes being asserted.

## ARBITRATOR APPOINTMENT:

Each Covered Individual and Company must mutually agree on the selection and appointment of a separate neutral arbitrator who is experienced in the laws at issue to resolve their respective individual Covered Disputes at issue. If no such agreement can be reached, each Covered Individual and Company must mutually agree on a dispute resolution services provider ("DRS Provider") to administer the arbitration, whose procedures for appointing an arbitrator will be followed. The appointed arbitrator must be located, and the Covered Disputes between the Covered Individual and Company must be heard and decided by the arbitrator, within the geographic district for the United States District Court in which the Covered Individual who is a party to the Covered Disputes being arbitrated most recently applied to work for Company, currently works for Company, or last worked for Company. The appointed arbitrator must interpret, apply, and enforce this SMAP only as written.  If mutual agreement on the selection and appointment of an arbitrator or a DRS Provider as set forth herein is not reached, appointment of an arbitrator and/or DRS Provider meeting the terms and requirements of this SMAP may be sought in a court of competent jurisdiction pursuant to applicable law. Any arbitrator who is appointed by a DRS Provider or by a court of competent jurisdiction must be a retired federal court judge meeting the qualifications set forth above, unless each Covered Individual and Company who are parties to the Covered Disputes mutually agree otherwise.

## ARBITRATION PROCEDURES:

Absent the agreement of each Covered Individual and Company after a demand for arbitration under this SMAP is made, neither the American Arbitration Association ("AAA") nor JAMS ("Judicial Arbitration and Mediation Services, Inc.) will be permitted to serve as a DRS Provider to administer any aspect of any arbitration under this SMAP. The Federal Rules of Civil Procedure (the "FRCP") and the Federal Rules of Evidence (which are accessible via links at http://www.uscourts.gov/RulesAndPolicies/rules/current-rules.aspx), are incorporated into this SMAP and will apply to and must be followed and enforced by the appointed arbitrator in any arbitration proceedings held pursuant to this SMAP. During any such arbitration proceedings, the parties will have the right to conduct normal civil discovery and to bring motions, as provided by the FRCP rules and procedures to the extent incorporated into this SMAP. To the extent the rules or procedures of any DRS Provider administering an arbitration pursuant to this SMAP are different than or inconsistent with those required to be applied or followed under this SMAP, then the terms of this SMAP will supersede them, control, and be followed as written.

## REPRESENTATIVE ACTION WAIVER:

Under this SMAP, neither any Covered Individual nor Company can bring or participate in a "Representative Action," which is defined to mean any action or proceeding brought or sought to be brought by any person or entity (whether or not bound by this SMAP) in a representative capacity on behalf of or for the benefit of (in whole or in part) a Covered Individual, Company, and/or any governmental entity, other than as a PAGA Action (as defined below). Such a Representative Action includes any type of (a) class action or arbitration, (b) collective action or arbitration (including without limitation pursuant to the Fair Labor Standards Act ["FLSA"]), (c) private attorney general action or arbitration, (d) joined, consolidated, or coordinated actions or arbitrations, and/or (e) claims or disputes brought in a representative capacity on behalf of the general public, of any governmental entity, of other Covered Individuals or Company, or of other persons or entities alleged to be similarly situated. A Representative Action is not permitted under this SMAP in connection with any Covered Disputes, and there is no agreement, right, or authority under this SMAP for any Covered Disputes to be heard, arbitrated, or decided as any type of Representative Action. A Covered Individual and Company with any Covered Disputes, now existing or arising in the future, waive any and all rights to bring or participate in any type of Representative Action to resolve, decide, or adjudicate any Covered Disputes and are prohibited from doing so. The appointed arbitrator will have no power, authority, or jurisdiction to (a) hear or decide any Covered Disputes as any type of Representative Action; (b) award any type of remedy or relief for any Covered Disputes in connection with any type of Representative Action; (c) join or consolidate in the arbitration any Covered Disputes brought by or against any other Covered Individuals or Company; (d) award injunctive relief other than in favor of the Covered Individual or Company seeking such relief and only to the extent permitted by applicable law and necessary to provide relief warranted by that Covered Individual's or Company's Covered Disputes; or (e) interpret, apply, enforce, or modify this SMAP in any manner that would empower or authorize the arbitrator to do any of the foregoing. The foregoing provisions are not intended to be severable and shall not be severed if they are held or ruled to be unenforceable in any material respect. In the event a court of competent jurisdiction holds or decides that these Representative Action Waiver provisions are not enforceable, as applied to any Covered Disputes being asserted, then any Representative Action claims will only be resolved by court action and not by arbitration under this SMAP. Any Covered Individual who does not properly elect to not be bound by this SMAP in the manner set forth below acknowledges, understands, and agrees that Covered Disputes under this SMAP include any claims now being or hereafter brought putatively on the Covered Individual's behalf as a proposed Representative Action to the extent that certification or permission to proceed as a Representative Action has not been granted as of the time the Covered Individual becomes bound by the terms of this SMAP, and that the Covered Individual may obtain information about any such actions now pending by requesting it in writing from Company's Human Resources Department.

## PAGA ACTION WAIVER

As used in this SMAP, "PAGA" means and refers to the California Labor Code Private Attorneys General Act of 2004, which is codified in California Labor Code Section 2698 et seq., and a "PAGA Action" is any action or proceeding brought or sought to be brought against Company on behalf of the State of California and/or aggrieved employees (as defined under PAGA) for alleged violations of the California Labor Code suffered by aggrieved employees *in addition to the Covered Individual bringing the action*.[1]

---

[1] Under PAGA, aggrieved employees, acting as private attorneys general of the State of California, are allowed to recover civil penalties for violations of the California Labor Code suffered by aggrieved employees. Thus, under PAGA, an aggrieved employee may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for violations of the California Labor Code. Of the civil penalties recovered, 75 percent goes to the California Labor and Workforce Development Agency (the "LWDA"), and the remaining 25 percent goes to the aggrieved employees. Prior to bringing a PAGA Action, an aggrieved employee must give

Except as expressly set forth below, a Covered Individual is not permitted to bring a PAGA Action under this SMAP in connection with any Covered Disputes, and there is no agreement, right, or authority under this SMAP for any Covered Disputes to be heard, arbitrated, or decided as any type of PAGA Action. Accordingly, a Covered Individual with any Covered Disputes, either now existing or arising in the future, waives any and all rights to bring or participate in any type of PAGA Action to resolve, decide, or adjudicate any Covered Disputes and is prohibited from doing so. To that end, any Covered Individual who does not properly elect to not be bound by this SMAP in the manner set forth below acknowledges, understands, and agrees that the Covered Individual and putative aggrieved employees have or may have claims that can or could be asserted now or in the future as a PAGA Action, that the Covered Individual has had a sufficient opportunity to learn and understand the nature and extent of any such PAGA Action claims, and that the Covered Individual is knowingly and voluntarily waiving any and all rights to bring or participate in any type of PAGA Action to resolve, decide, or adjudicate any such Covered Disputes, including but not limited to claimed violations of California laws related to the payment of compensation or wages of any type (including regular wages, overtime, bonuses, and commissions), accrual or use or payment of vacation or sick pay or other paid time off, providing or authorizing and permitting meal or rest periods, reimbursement of employment-related expenses, inaccurate wage statements, timely payment of wages during actual or alleged employment and/or at the termination thereof, and/or classification as an independent contractor. Any Covered Individual who does not properly elect to not be bound by this SMAP in the manner set forth below also acknowledges, understands, and agrees that any claims now being or hereafter brought as a PAGA Action by any other putative aggrieved employee also are Covered Disputes under this SMAP solely to the extent regarding putative violations of California laws allegedly suffered or experienced by the Covered Individual that may only be pursued by the Covered Individual through individual binding arbitration pursuant to the terms of this SMAP, and that the Covered Individual may obtain information about any such actions now pending by requesting it from the Company's Human Resources Department. The appointed arbitrator will have no power, authority, or jurisdiction to (a) hear or decide any Covered Disputes as any type of PAGA Action; (b) award any type of remedy or relief for any Covered Disputes as any type of PAGA Action; (c) join or consolidate in the arbitration any Covered Disputes brought by or on behalf of any other Covered Individuals or the State of California pursuant to PAGA; or (d) interpret, apply, enforce, or modify this SMAP in any manner that would empower or authorize the arbitrator to do any of the foregoing.

Notwithstanding and without limiting the applicability of the foregoing PAGA Action Waiver provisions in any way: (a) the Covered Individual retains the right to individually arbitrate a Covered Dispute under PAGA pursuant to this SMAP, but only with respect to recovering penalties for any violations of the California Labor Code suffered solely by the Covered Individual personally and not by any other aggrieved employees; (b) the appointed arbitrator will have the power, authority, and jurisdiction to hear and decide whether the Covered Individual has suffered any alleged violations of the California Labor Code, either in an individual arbitration proceeding commenced by the Covered Individual or in an arbitration proceeding commenced by Company against the Covered Individual, including for declaratory relief as to such issues; and (c) should PAGA Action claims brought by the Covered Individual be held by a court of competent jurisdiction to not be subject to this PAGA Action Waiver

---

notice to the LWDA and the employer that describes the facts and theories supporting the claimed violations of the California Labor Code. The aggrieved employee is permitted to commence a PAGA Action only after giving such notice and the LWDA either decides not to investigate or to issue a citation, or fails to give notice of its decision within specified periods. A PAGA Action functions as a substitute for an action brought by the State of California itself, and a judgment in such an action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the State of California.

(including due to being held not enforceable), then such PAGA Action claims will be stayed by the court, including without limitation pursuant to California Code of Civil Procedure Section 1281.4 and/or other applicable law. While the PAGA Action claims are stayed, the issue of whether the Covered Individual is an aggrieved employee under PAGA, along with the Covered Individual's individual and/or Representative Action claims held to be subject to the Representative Action Waiver provisions of this SMAP, will be arbitrated solely on an individual basis, with the PAGA Action claims seeking to recover penalties for violations of the California Labor Code suffered by aggrieved employees thereafter litigated in court only if (i) the appointed arbitrator decides that the Covered Individual is an aggrieved employee with the required standing under PAGA and (ii) the requirements for certifying the PAGA Action claims as a class action pursuant to applicable law are held to be satisfied by the court.

## ARBITRATOR'S AWARD:

Within 30 days following the close of the arbitration merits hearing, the Covered Individual and Company will have the right to submit to the arbitrator, and must serve on each other, a post-hearing brief not to exceed 50 pages in length. The parties, with the arbitrator's approval, may agree to extend this time deadline and increase this page limitation, and the arbitrator will have the authority to grant requests for such extensions and increases by either the Covered Individual or Company for good cause shown. Subject to and without waiver or limitation of the Waiver Provisions of this SMAP, the arbitrator will be empowered to award the Covered Individual or Company any individual remedy at law or in equity that the party otherwise would have been entitled to had the matter been individually litigated in a court or before a governmental agency with jurisdiction over the Covered Disputes being arbitrated. The authority to award any remedy, however, is subject to whatever limitations on such remedies exist under applicable law. The appointed arbitrator will have no authority or jurisdiction to issue any award that is contrary to or inconsistent with the terms and provisions of this SMAP and the applicable laws at issue.  Within 30 days after a dispositive motion is fully-briefed and heard, and within 30 days after a merits hearing is closed and all post-hearing briefing has been submitted, the arbitrator must issue an award in writing on the dispositive motion and/or on the merits which must be accompanied by or include a written, reasoned statement of decision with findings of fact and conclusions of law supporting the award. A judgment of any court having jurisdiction may be entered on the arbitrator's award upon it being confirmed by such court.  However, the arbitrator will not have any power or authority to commit errors of law or legal reasoning and, to the extent permitted under applicable law, any award by the arbitrator shall be vacated or corrected for any such error on petition or appeal to a court of competent jurisdiction.

## CONFIDENTIALITY:

Unless otherwise not permitted under applicable law, the parties to the Covered Disputes being arbitrated and the arbitrator shall maintain the existence, content, and outcome of any arbitration proceedings held pursuant to this SMAP in the strictest confidence and shall not disclose the same without the prior written consent of all the parties.

## ARBITRATION FORUM COSTS:

The Covered Individual and Company will each pay the costs and fees for their respective attorneys' prosecution or defense of the Covered Disputes being arbitrated, subject to any remedies to which the Covered Individual and Company may later be entitled under applicable law. To the extent required by binding United States Supreme Court precedent, Company will pay up to all of the arbitration forum costs (including arbitrator fees), as apportioned by the arbitrator in accordance with such legal authority. Any dispute over the payment or apportionment of the arbitration forum costs (including arbitrator fees) is a Covered Dispute which must be resolved only by the appointed arbitrator. Unless

binding United States Supreme Court precedent requires one party or the other to bear all or a greater share of the arbitration forum costs (including arbitrator fees), such costs shall be apportioned equally between the Covered Individual and Company.

## SOLE & EXCLUSIVE REMEDIES:

Voluntary mediation, mandatory final and binding individual arbitration, or a Small Claims Court action in accordance with the terms of this SMAP are the sole and exclusive remedies for the formal resolution of any and all Covered Disputes, except as otherwise expressly provided in this SMAP.

## EXHAUSTION OF OTHER REMEDIES:

This SMAP does not prevent or excuse the Covered Individual or Company from satisfying any applicable statutory and/or regulatory conditions precedent or jurisdictional prerequisites to pursuing any Covered Disputes by, for example, giving proper notices to, filing administrative charges with, or obtaining right to sue notices or letters from federal, state or local governmental agencies.  After complying with and exhausting all such remedies, conditions, or prerequisites, final and binding individual arbitration in accordance with this SMAP is the sole and exclusive remedy or formal method of resolving the Covered Disputes.

## FILING ADMINISTRATIVE CHARGES OR COMPLAINTS:

All Covered Individuals retain the right under the National Labor Relations Act ("NLRA") to file unfair labor practice charges with the National Labor Relations Board ("NLRB"), and to file charges or complaints with the United States Equal Employment Opportunity Commission ("EEOC"), the United States Department of Labor, and other federal administrative agencies under applicable laws within their administrative jurisdiction. However, nothing in this SMAP is intended or should be construed as any type of express or implied waiver or limitation of Company's right to enforce the provisions of this SMAP to the maximum extent permitted by controlling law.

## GOVERNING LAW:

This SMAP, any arbitration proceedings held pursuant to this SMAP, and any court or other proceedings concerning arbitration under this SMAP are expressly subject to and governed by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "FAA"), including the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. section 201 et seq. (the "Convention"), if the Convention is applicable, and Covered Individuals and Company waive the application or enforcement of any provision of the FAA which would otherwise exclude this SMAP from its coverage. To the extent that state law is applicable under the FAA and/or the Convention, and/or in the event a court of competent jurisdiction holds or decides that this SMAP and/or its Waiver Provisions are not subject to and governed by the FAA, then the laws of the State of Nevada, under which Schneider National, Inc. is organized and exists, will be the applicable state law, without regard to or application of any conflict of laws principles (the "Chosen State Law").

## ELECTION TO NOT BE BOUND BY SMAP OR CHOSEN STATE LAW:

Not later than the 30th calendar day after the date the Covered Individual has received notice or a copy of this SMAP (the "Election Deadline"), the Covered Individual can elect to not be bound by this SMAP or its Chosen State Law provision by giving Company written notice of such election (an "Election Notice"). Company has no preference as to whether the Covered Individual makes either or both such elections, and a Covered Individual should feel free to do so without fear of retaliation or reprisal by Company, which is strictly prohibited. The Covered Individual's Election Notice to Company must be in writing and:

(a) state the Covered Individual's name, mailing address, phone number, e-mail address (if any) and Covered Individual number or other unique identifier used by Company (if any);

(b) state that the Covered Individual is electing to not be bound by this SMAP or its Chosen State Law provision;

(c) be signed and dated by the Covered Individual; and

(d) be sent or delivered by the Covered Individual to Company on or by the Election Deadline to General Counsel (Legal), Schneider National, Inc., US.GRB.01.03.01, 3101 S. Packerland Drive, Green Bay, WI 54306, Fax: 920-592-3063, E-mail: LegalDepartment@Schneider.com, via either (i) hand delivery, with the Covered Individual being given an Acknowledgment of Receipt of the Election Notice; (ii) fax transmission which generates an accurate written confirmation of the fax transmission; (iii) e-mail with the word "ELECTION NOTICE" in the subject line of the e-mail message; or (iv) the United States Postal Service (USPS) or private courier (such as FedEx, UPS, or DHL) using delivery services that produce a written record establishing the dates the notice was sent to and received by Company (a "Mail Record").

Before deciding whether to make an Election Notice, the Covered Individual is being provided with an opportunity to consult with an attorney and/or other advisors of the Covered Individual's choosing. If a Covered Individual makes an Election Notice, he or she must maintain a copy of the Election Notice sent to Company and, as may be applicable, a copy of (i) the Acknowledgment of Receipt received from Company, (ii) the fax transmission confirmation; (iii) the Covered Individual's e-mail message, and any attachment(s) thereto, or (iv) the Mail Record. In the event of any dispute as to whether a Covered Individual made such an election, the Covered Individual will have the burden of proving he or she did so by producing a copy of the Election Notice and the Acknowledgment of Receipt, fax confirmation, e-mail message (and any attachment), or Mail Record. If a Covered Individual fails to comply with these requirements for making an Election Notice or for proving such an election was made, the Covered Individual will be deemed to have irrevocably agreed to be bound by all of this SMAP's provisions.

## PROHIBITION AGAINST RETALIATION:

Company does not tolerate, and strictly prohibits, any form of retaliation against a Covered Individual for filing administrative charges and complaints, pursuing or opposing resolution of any Covered Disputes under this SMAP, or making an Election Notice.

## PRIOR ARBITRATION AGREEMENTS:

Except with respect to any Covered Disputes currently being arbitrated on an individual basis under or pursuant to an earlier version of this SMAP in effect before a Covered Individual becomes bound by the terms of this version of the SMAP, this SMAP supersedes and replaces all prior policies or agreements providing for arbitration of any Covered Disputes between any Covered Individual and Company (a "Prior Arbitration Agreement"). However, if a Covered Individual properly elects to not be bound by this SMAP as set forth above, or this SMAP is otherwise not binding on a Covered Individual in whole or in part, then the Prior Arbitration Agreement will not be superseded and replaced to that extent, and will remain in force and effect to that extent as between the Covered Individual and Company.

## AT-WILL EMPLOYMENT:

Nothing in this SMAP guarantees employment to or changes the at-will employment status of any Covered Individual, which can only be changed by a written agreement expressly stating it changes that status and is signed by both the Covered Individual and Company's CEO. The terms of this SMAP will survive the termination of a Covered Individual's application for employment and, if hired, the termination of the Covered Individual's employment relationship with Company, and remain binding and in effect.

## INTEGRATION & MODIFICATION:

This SMAP is the full and complete policy and agreement between the Covered Individual and Company relating to the formal resolution of Covered Disputes. It may not be modified or terminated except in writing, or as otherwise expressly permitted or required by this SMAP or controlling law, including by Company after 30 days' advance written or electronic notice to Covered Individuals. Any modification or termination of this SMAP will be prospective only and will not apply to the individual arbitration of any accrued or pending Covered Disputes that have been initiated pursuant to an earlier version of this SMAP prior to the expiration of the 30-day period.

## SEVERABILITY:

If any provision of this SMAP other than the Waiver Provisions is deemed invalid or unenforceable, it will be severed and the remainder of this SMAP will not be affected.

## WAIVER:

The failure of Company at any time to require any Covered Individual's performance of any provision of this SMAP shall not affect its right thereafter to enforce the same; nor shall the waiver by Company of any breach of any provision of this SMAP be construed to be a waiver of any succeeding breach of any such provision, or as a waiver of the provision itself, or as the waiver of the breach of any other provision of this SMAP.

## NO SIGNATURE REQUIRED FOR ACCEPTANCE / APPLICATION FOR EMPLOYMENT OR CONTINUED EMPLOYMENT WITH COMPANY BY COVERED INDIVIDUALS SHALL BE DEEMED TO BE THEIR ACCEPTANCE OF THE SMAP:

Unless and to the extent the Covered Individual elects to not be bound by this SMAP as set forth above, **the application for or continuation of employment with Company by the Covered Individual following actual or constructive notice or knowledge of this SMAP is deemed the Covered Individual's acceptance of, agreement and specific authorization to be bound by and make effective all of the terms and provisions of this SMAP**. The issuance of this SMAP is deemed Company's acceptance of, agreement and specific authorization to be bound by and make effective all of its terms. No signature by the Covered Individual or Company is required for this SMAP to apply to Covered Disputes, except to the extent required for its enforcement under the Chosen State Law.

## FOR MORE INFORMATION

If there are any questions or concerns, please contact the Schneider Legal Department.

*Owner: Compliance/HRLT*
*Created: 5.19.2015*
*Last Revised:  3.25.2019*
*Policy valid date and time printed only – refer to intranet for current version*