Eric A. Panitz (SBN 243877)
PANITZ LAW GROUP APC
18000 Studebaker Road, Suite 700
Cerritos, CA 90703
(562) 924-7800 Phone
(562) 924-7801 Fax
eric@panitzlaw.com

Attorneys for Plaintiff
ALEJANDRO ROMERO

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ROMERO, on his own behalf and on behalf of all other persons similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>WATKINS AND SHEPARD TRUCKING, INC., a Montana corporation, SCHNEIDER NATIONAL CARRIERS, INC., a Nevada corporation, and DOES 1 through 100, inclusive,<br><br>    Defendants. | CASE NO. 5:19-cv-02158 PSG (KKx)<br><br>**PLAINTIFF ALEJANDRO ROMERO'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION**<br><br>[Filed concurrently with the Declaration of Alejandro Romero, and Plaintiff Alejandro Romero's Written Objections To Evidence In Support Of Defendants' Motion To Compel Arbitration]<br><br>Date:      May 4, 2020<br>Time:      1:30 p.m.<br>Crtrm:     6A<br>Judge:     Hon. Philip S. Gutierrez |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

## **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ................................................................. ii

**TABLE OF AUTHORITIES** ........................................................ ii

**I.   INTRODUCTION AND SUMMARY OF ARGUMENT** ............................. 1

**II.   LEGAL STANDARD** ......................................................... 2

**III.   LEGAL DISCUSSION** ...................................................... 4

A.   Defendants Fail to Authenticate the Electronic Signature as the "Act of Plaintiff." ...................................................................... 4

   1.   The Available Evidence Contradicts Defendants' Claim That Plaintiff Electronically Signed any Agreement. ................................................ 5

   2.   Defendants Cannot Demonstrate Only Plaintiff Could Have Electronically Signed the Agreements Where His Online Learning Account Was Readily Accessible to Managers at Headquarters. ................................................ 6

   3.   Defendants Cannot Establish Plaintiff Actually or Impliedly Consented to Arbitration and Waiver of His Constitutional Right to a Jury Trial. ................... 6

   4.   Plaintiff's Continued Employment and Failure to Opt Out Does Not Manifest Implied Consent to Arbitrate His Claims. ........................................... 7

B.   Because Plaintiff Did Not Consent to Arbitration, He Has Not Waived His Right to Pursue Class Action Claims. ....................................................... 9

C.   Defendants' SMAP Is Unenforceable. ............................................. 9

   1.   The FAA Does Not Apply to Plaintiff's Claims. ............................... 9

   2.   Under Its Plain Language, the 2018 SMAP is Unenforceable if Not Subject to the FAA. .................................................................... 10

   3.   State Law Prohibits the Enforceability of Class Waivers. ....................... 11

   4.   The 2019 SMAP is Procedurally and Substantively Unconscionable. ............ 12

**IV.   DEMAND FOR JURY TRIAL** .............................................. 18

**V.   CONCLUSION** ............................................................. 19

# TABLE OF AUTHORITIES

*Federal Cases*

*Armenta v. Go-Staff, Inc.* (S.D. Cal. May 3, 2017) 2017 U.S. Dist. LEXIS 67784.. 8

*Borelli v. Black Diamond Aggregates, Inc.* (E.D. Cal. Mar. 21, 2017) U.S. Dist. LEXIS 40834 ...................................................................................................8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.* (9th Cir. 2000) 207 F. 3d 1126 .............3

*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105 ..........................................9

*Circuit City Stores, Inc. v. Najd* (9th Cir. 2002) 294 F.3d 1104 ...............................2

*Lima v. Gateway, Inc.* (C.D. Cal 2012) 886 F. Supp 2d 1170................................18

*New Prime, Inc. v. Oliveira* (2019) 139 S. Ct. 532................................................2, 9

*Nghiem v. NEC Elec., Inc.* (9th Cir. 1994) 25 F.3d 1437 ........................................8

*Norcia v. Samsung Telecommunications America, LLC* (9th Cir. 2017) 845 F.3d 1279 ........................................................................................................................2

*Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.* (2010) 559 U.S. 662......................15

*United States ex rel. Oliver v. Parsons Co.* (9th Cir. 1999) 195 F.3d 457 .................2


*California Cases*

*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 ................................................................................................................. passim

*Badie v. Bank of America* (1998) 67 Cal.App.4th 779................................................4

*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237 ..............................................14

*Banner Entm't, Inc. v. Super. Ct.* (*Alchemy Filmworks, Inc.*) (1998) 62 Cal.App.4th 348 ....................................................................................................................2, 8

*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715 ..................................11

*Boller v. Sup.Ct.* (2001) 87 Cal.App.4th 900..........................................................3

*Brinker Restaurant Corp. v. Super. Ct.* (2012) 53 Cal.4th 1004 ............................12

*City of San Jose v. Super. Ct.* (1974) 12 Cal.3d 447 ..............................................12

*CPI Builders, Inc. v. Impco Technologies, Inc.* (2001) 94 Cal.App.4th 1167.............3

*Craig v. Brown & Root, Inc.* (2000)  84 Cal.App.4th 416.........................................8

*Discover Bank v. Superior Ct.* (2005) 36 Cal.4th 148, 160................................12

*Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951 .................................3

*Espejo v. S. California Permanente Med. Grp.* (2016) 246 Cal.App.4th 1047.........5

*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257................................14

*Fireside Bank v. Super. Ct.* (2007) 40 Cal.4th 1069................................................12

*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473 ............................4

*Garrido v. Air Liquide Industrial US. LP* (2015) 241 Cal.App.4th 833 ..... 10-12, 18

*Gentry v. Super. Ct.* (2007) 42 Cal.4th 443 ..................................................... 11, 12

*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383.....17

*Ladas v. California State Automobile Assn.* (1993) 19 Cal.App.4th 761...................3

*Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App. 3d 1501.............................4

*Mission Viejo Emergency Medical Assoc. v. Beta Healthcare Group* (2011) 197
  Cal.App.4th 1146...................................................................................................3

*Mitchell v. American Fair Credit Ass'n, Inc.* (2002) 99 Cal.App.4th 1345...............3

*Muller v. Roy Miller Freight Lines, LLC* (2019) 34 Cal.App.5th 1056 .................10

*Muro v. Cornerstone Staffing Solutions, Inc.* (2018) 20 Cal.App.5th 784.............10

*Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal. App. 5th 274 ...........................9

Oto*, L.L.C.  v. Kho* (2019) 8 Cal.5th 111............................................. 12, 14, 15, 16

*Pac. Corp. Grp. Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294 .....................2

*Ramos. v. Super. Ct.* (2018) 28 Cal.App.5th 1041 ................................................13

*Ruiz v. Moss Bros. Auto Group* (2014) 232 Cal.App.4th 836 ..................................5

*Serafin v. Balco Props. Ltd., LLC* (2015) 235 Cal.App.4th 165 ..............................8

*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109..................................18

*Titan Group, Inc. v. Sonoma Valley Cty. Sanitation Dist.* (1985) 164 Cal.App.3d
  1122 .......................................................................................................................4

*Victoria v. Superior Court* (1985) 40 Cal.3d 734 .....................................................3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

*Federal Statutes*

9 U.S.C. § 1......................................................................................1, 9

9 U.S.C. § 4.......................................................................................18, 19

U.S. Const., Amend. VII.....................................................................4

*California Statutes*

Cal. Const., Art. I, § 16....................................................................4

Civil Code § 1281.............................................................................12

Civil Code § 1580.............................................................................2

Civil Code § 1633.9..........................................................................4

Civil Code. § 1636............................................................................4

Civil Code § 1667.............................................................................17

Civil Code § 1670.5..........................................................................12

Civil Code § 3513.............................................................................17

Code of Civil Procedure § 382.........................................................12

Code of Civil Procedure § 1281.2....................................................3

Labor Code § 925.............................................................................17

*Other Authority*

1 Witkin, Summary 11th Contracts § 118 (2019).............................7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

## I.    <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

The most basic requirement to force a party who has sought redress in the courts into a private, contractual arbitration forum is that the party seeking to compel arbitration prove an agreement to arbitrate exists. Unless and until there is proof of an agreement to arbitrate, there is no policy in favor of arbitration. Unless and until there is proof of an agreement to arbitrate, the constitutional right to trial by jury takes precedence.

Here, Defendants' detailed motion supported by two declarations fails to prove this basic requirement: that Plaintiff agreed to arbitrate. Defendants' motion puts forth evidence of the existence of its arbitration program, but it fails to show Plaintiff ever knew about this arbitration program, and it further fails to offer any evidence on the key necessary factual points: that Plaintiff ever accessed the Associate Acknowledgments, opened it, read any of its contents, or clicked "I Agree" to either of the Associate Acknowledgments.

Defendants instead simply gloss over the fatal evidentiary flaws and gaping holes in its evidence: Plaintiff did not opt-out, or consent to arbitration, because he never logged on to Defendants' online learning system or selected the Associate Acknowledgments document. *Romero Declaration at ¶¶ 6-8.* Further, others at Defendants' office knew Plaintiff's password, which expired often, and could log into his account and execute acknowledgments without his knowledge. *Id.* Defendants failed to put forth evidence required to establish Plaintiff accessed the Associate Acknowledgments, including, but not limited to, the time he allegedly did so and/or the IP Address from which he allegedly accessed and agreed to the Associate Acknowledgments. Against Defendants' absence of evidence, Plaintiff is crystal clear: he did not agree to arbitration, did not know he had to opt out, and did not access the Associate Acknowledgments documents. *Id.*

As the moving party, Defendants have the burden of proving the existence of an agreement to arbitrate and Plaintiff's consent to waive his constitutional right to

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

a jury trial. Because they have failed to do so, the motion must be denied.

The motion must also be denied because the Federal Arbitration Act hereinafter "FAA") does not apply to transportation workers like Plaintiff, who was a truck driver involved in interstate commerce. As such, the FAA cannot be used to force Plaintiff's claims to arbitration and instead California state law controls.

## II.   <u>LEGAL STANDARD</u>

### A.   The Federal Arbitration Act ("FAA") Does Not Apply to Transportation Workers Engaged in Interstate Commerce.

In *New Prime, Inc. v. Oliveira* (2019) 139 S. Ct. 532, the United States Supreme Court affirmed the Federal Arbitration Act ("FAA") does not apply to transportation workers engaged in interstate commerce. *See also* 9 USCA § 1. As a truck driver whose job predominantly involved delivering out-of-state furniture to California retailers, Plaintiff was clearly a transportation worker engaged in interstate commerce. *See Romero Decl.,* ¶ 2.

### B.   Whether the Parties Agreed to Arbitration is Decided Under California Law.

Whether the parties agreed to enter into an arbitration agreement in this case is determined by California contract law. *See Circuit City Stores, Inc. v. Najd* (9th Cir. 2002) 294 F.3d 1104, 1108. Under California law, an arbitration agreement is only valid if both parties consent to the agreement. *United States ex rel. Oliver v. Parsons Co.* (9th Cir. 1999) 195 F.3d 457, 462; *Norcia v. Samsung Telecommunications America, LLC* (9th Cir. 2017) 845 F.3d 1279, 1284 (quoting, *inter alia*, Cal. Civ. Code § 1580). California Civil Code § 1580 states: "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." Mutual consent is generally manifested "through the process of offer and acceptance." *Pac. Corp. Grp. Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 309; *Banner Entm't, Inc. v. Super. Ct. (Alchemy Filmworks, Inc.)* (1998) 62 Cal. App.4th 348, 357-58 *as modified* (Mar. 30, 1998) ("California law is clear that there

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

is no contract until there has been a meeting of the minds on all material points.").

## C. Where a Party Disputes Agreeing to Arbitration, the Moving Party Bears the Burden of Proving an Agreement and Waiver of the Constitutional Right to a Jury Trial—No Presumption of Arbitrability Exists.

Before ordering parties to arbitration, the Court must first determine whether an agreement to arbitrate in fact exists. C.C.P. § 1281.2; *Mission Viejo Emergency Medical Assoc. v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1153. The petitioner bears the burden of first proving the existence of a valid arbitration agreement by a preponderance of the evidence before the opposing party is obligated to prove, by a preponderance of the evidence, any fact necessary to its defense. *Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951, 972.

When the validity of the agreement is in dispute, arbitration agreements are neither favored nor disfavored, but instead placed on an equal footing with other contracts. *Boller v. Sup.Ct.* (2001) 87 Cal.App.4th 900, 906; *Mitchell v. American Fair Credit Ass'n, Inc.* (2002) 99 Cal.App.4th 1345, 1355. [1] "The policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate." *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 739. Courts "apply general contract law to determine whether the parties formed a valid agreement to arbitrate." *CPI Builders, Inc. v. Impco Technologies, Inc.* (2001) 94 Cal.App.4th 1167, 1171. For an agreement to be enforceable, it must be "definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Ladas v. California State Automobile Assn.* (1993) 19 Cal.App.4th 761, 770. The

---

[1] Defendants cite *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F. 3d 1126, 1130 (9th Cir. 2000) for the proposition that Arbitration agreements are presumed to be valid and that the FAA "leaves no place for the exercise of discretion …, but instead mandates that … courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Def. Motion at 9:10-18. However, in *Chiron*, the plaintiff signed its arbitration agreement and it was those affirmatively assented-to agreements that were presumed to be valid, not whether the agreements had been formed in the first place Hence, Defendants' motion conflates the burden of proof on these two distinct issues: formation versus validity.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

fundamental goal of contract interpretation is to give effect to the mutual intent of the parties at the time the contract was entered.  Civil Code § 1636.

The United States and California Constitution's guarantee the right to a trial by jury. U.S. Const., amend. VII; Cal. Const., art. I, § 16. "The right to trial by jury is a basic and fundamental part of our system of jurisprudence" that "should be zealously guarded by the courts" so that if there is any "doubt…the issue should be resolved in favor of preserving a litigant's right to trial by jury." *Titan Group, Inc. v. Sonoma Valley Cty. Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127-1128.

An arbitration agreement amounts to a waiver of this substantial constitutional right – the right to a jury trial. And courts have held this to be a *substantial* right. "[T]he right to select a judicial forum…is a substantial right, not lightly to be deemed waived." *Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1507. The waiver of this substantial, important right cannot be established by mere presumption, assumption, speculation, or inference. Thus, while public policy generally favors voluntary contractual arbitration, given the importance of the constitutional jury right, "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable." *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal. 3d 473, 481. "[A]bsent a clear agreement to submit disputes to arbitration or some other form of ADR, we cannot infer that the right to a jury trial has been waived." *Badie v. Bank of America,* 67 Cal.App.4th 779, 804 (1998); *see also Titan Group, Inc. v. Sonoma Valley Cty. Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127-1128 ("In light of the importance of the jury trial in our system of jurisprudence, any waiver thereof should appear in clear and unmistakable form.'").

## III.   LEGAL DISCUSSION

### A.   Defendants Fail to Authenticate the Electronic Signature as the "Act of Plaintiff."

Civil Code §1633.9, which governs the authentication of electronic signatures, states, in relevant part:

(a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

As the party asserting the electronic signature was the "act of Plaintiff," Defendants must authenticate that signature and explain how the signature was placed on the document. *See Ruiz v. Moss Bros. Auto Group* (2014) 232 Cal.App.4th 836, 842. A declaration from a defendant regarding the validity of an employee's electronic signature on an arbitration agreement must evidence the employee's electronic signature *only* could have come from someone logged into the employer's online system with the employee's unique user name and password. *Espejo v. S. California Permanente Med. Grp.* (2016) 246 Cal.App.4th 1047, 1062.

To meet this evidentiary burden, the Court looks to factors such as: (1) the privacy of an employee's user name, (2) the requirement that the employee reset his password before accessing the system, (3) the existence of a signature line containing the signatory's typed full name, (4) identification of the time the document was electronically signed, and (5) an IP address identifying the location where it was signed. *Id* at 1052, 1062. As discussed below, the declaration of Theresa Presitne-Dommer lacks required detail and is conclusory, and Defendants' attempt to prove the electronic signature was the "act of Plaintiff" fails in nearly every respect. *See Plaintiff's Evidentiary Objections* filed concurrently herewith.

### 1. The Available Evidence Contradicts Defendants' Claim That Plaintiff Electronically Signed any Agreement.

Defendants have not produced any electronic records showing exactly when or from what IP Address the alleged Associate Acknowledgments or SMAP Agreements were allegedly electronically agreed to. Furthermore, by producing

screen captures of somebody in Plaintiff's former online learning account dated 1/22/2020, five months after Plaintiff's termination, Defendants have demonstrated that anybody can access Plaintiff's online learning account without Plaintiff's knowledge, just as Plaintiff has averred. *Romero Declaration ¶ 6-8*. Defendants have thus conclusively failed to authenticate the electronic signature, and their motion to compel arbitration must fail.

> **2.     Defendants Cannot Demonstrate Only Plaintiff Could Have Electronically Signed the Agreements Where His Online Learning Account Was Readily Accessible to Managers at Headquarters.**

Defendants' claim that only Plaintiff could have electronically signed the Agreements presumes he was the only person with access to his online learning system account. As explained above, however, this was not the case. In the interim between Plaintiff's uses of the system, Plaintiff's password would expire, and he would have to call Defendants' headquarters and speak to a manager who verbally issue him a new password over the phone. *Romero Declaration at ¶ 6*. Thus, other employees of Defendant had access to Plaintiff's Employee Identification Number and password and could have easily accessed his online learning account in his stead. Defendants also had the ability to unilaterally designate his existing password as expired and access his account with a new one, all without Plaintiff's knowledge or consent. *Id.* As such, Defendants cannot demonstrate the electronic signature on any of the Agreements were the "act of Plaintiff."

> **3.     Defendants Cannot Establish Plaintiff Actually or Impliedly Consented to Arbitration and Waiver of His Constitutional Right to a Jury Trial.**

Defendants have not established that Plaintiff signed or otherwise expressly agreed to the SMAP. Nor was Plaintiff required to sign (electronically or by hand) the SMAP. Thus, there is no evidence of actual consent here through the typical expression of consent: words or actions (e.g., signature) clearly manifesting one's

assent to the offer's terms.[2]

Lacking an actual expression of assent to the terms of the SMAP, Defendants argue Plaintiff's consent may be implied by his failure opt out. However, implied consent assumes not only that Plaintiff reviewed and agreed to the Associate Acknowledgments, but that he read them and made a conscious decision to agree to the terms of the SMAP. Absent proof that Plaintiff actually personally reviewed the Associate Acknowledgments document, an inference cannot be made that there was an agreement to be bound.

### 4. Plaintiff's Continued Employment and Failure to Opt Out Does Not Manifest Implied Consent to Arbitrate His Claims.

Defendants' central "consent" argument is that Plaintiff supposedly responded that he agreed to the terms of the Associate Acknowledgments document and, based on his continued employment and failure to opt out, necessarily manifested his agreement to be bound by the SMAP. Def. Motion at 11:20-12:6. As discussed above, for Defendants' argument to hold true, they needed, but failed, to show it was actually Plaintiff who read, and agreed to the Associate Acknowledgments and SMAP agreement. Based on the facts and reasoning above, Defendants clearly have not proven Plaintiff knew an offer had been made in the first place.

Moreover, under California law, Plaintiff's continued employment after receiving an agreement he never read does not mean he legally consented to be bound to that agreement. Defendants cite six cases in support of their argument that an arbitration agreement need not be signed in order to be upheld as a binding

---

[2] "Ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." 1 Witkin, Summary 11th Contracts § 118 (2019). A party cannot sign a contract and then complain about its terms by saying "I didn't read it." In this case, Plaintiff did not sign an agreement. Defendants are trying to infer an agreement to waive a constitutional right from an online Associate Acknowledgments document within an online account that other employees had access to, when Plaintiff has expressly denied he ever viewed the Associate Acknowledgments document, and denies he ever agreed to its terms.

arbitration agreement: *Nghiem v. NEC Elec., Inc.* (9th Cir. 1994) 25 F.3d 1437, 1439; *("While the FAA 'requires a writing, it does not require that the writing be signed by the parties.'"); Armenta v. Go-Staff, Inc.,* 2017 U.S. Dist. LEXIS 67784, at *3 (S.D. Cal. May 3, 2017) (same)*; Borelli v. Black Diamond Aggregates, Inc.,* U.S. Dist. LEXIS 40834, at *6 (E.D. Cal. Mar. 21, 2017) *("Although an arbitration agreement must generally be memorialized in writing, ... the writing ... need not be signed by both parties in order to be upheld as binding."); Craig v. Brown & Root, Inc.* (2000)  84 Cal.App.4th 416, 420-23 *(in absence of a signed writing acknowledging receipt of the memorandum and brochure containing the arbitration provision, employee's continued employment constituted implied acceptance of the agreement); Banner Entm't, Inc. v. Super. Ct. (Alchemy Filmworks, Inc.)* (1998) *62* Cal.App.4th 348, 361 *("[I]t is not the presence or absence of a signature [on an agreement] which is dispositive; it is the presence or absence of evidence of an agreement to arbitrate which matters."); Serafin v. Balco Props. Ltd., LLC* (2015) 235 Cal.App.4th 165, 176 *(same).*

These cases are easily distinguishable from the present case. The plaintiffs in five of these cases were made aware of the arbitrations agreements and made conscious decisions not to opt out of them (three of these cases involved plaintiffs manually executing hardcopy arbitration agreements). In the sixth case where there was no prior agreement to arbitrate (*Banner*), the order to compel arbitration was reversed on appeal. The appellate court ruled "California law is clear that there is no contract until there has been a meeting of the minds on all material points." *Banner Entm't, Inc.,* 62 Cal.App.4th at 357-58.

Further, none of Defendants' cited cases related to an opt-out form. The plaintiffs in *Borelli, Armenta and Serafin* each signed arbitration agreements, and the *Nghiem*  plaintiff signed an acknowledgment and receipt for an employee handbook, which itself contained the arbitration policy. In *Craig,* the plaintiff was twice mailed the arbitration policy to her home. The *Craig* Court relied on the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

mailbox rule to resolve that issue. Here, there is no evidence Plaintiff affirmatively accepted Defendants' arbitration agreement, electronically or otherwise, and he denies he was even aware of said agreement. *Romero Declaration, ¶¶ 7-8*. Because he was never made aware of the option to opt out of Defendants' SMAP, he did not have a meaningful right to do so. *Id.*

In short, none of the cases cited by Defendants support the enforceability of an arbitration agreement that was never received, reviewed, or signed by an employee based on that employee's continuation of his employment and failure to opt out.

**B.** **Because Plaintiff Did Not Consent to Arbitration, He Has Not Waived His Right to Pursue Class Action Claims.**

Defendants' claim Plaintiff cannot pursue a class action is premised on his having consented to an arbitration agreement that is subject to the FAA. As neither presumption holds, Plaintiff has not waived his right to pursue a class action.

**C.** **Defendants' SMAP Is Unenforceable.**

**1.** **The FAA Does Not Apply to Plaintiff's Claims.**

Section 1 of the FAA explicitly excludes from its reach contracts of employment or another other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (emphasis added). The phrase, "other class of workers," is defined to mean, "transportation workers." *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105. That is, Congress affirmatively excluded from the coverage of the FAA employment contracts of transportation workers engaged in interstate commerce. 9 U.S.C. § 1. The United States Supreme Court recently confirmed that this exclusion of "transportation workers" applies to truck driving workers engaged in interstate commerce. *New Prime*, 139 S. Ct. at 537. If an employee is a truck driving worker who is engaged in interstate commerce, their contracts for employment are excluded from the reach and authority of the FAA. *Id.*

This exclusion undoubtedly applies to Plaintiff, as evidenced by several

California appellate cases. *See Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal. App.5th 274, 284 (holding that the FAA was inapplicable because "as a delivery truck driver for [Defendant] Nieto was engaged in interstate commerce though his participation in the continuation of the movement of interstate goods to their destinations"); *Muro v. Cornerstone Staffing Solutions, Inc.* (2018) 20 Cal.App.5th 784, 788; *Garrido v. Air Liquide Industrial US. LP* (2015) 241 Cal.App.4th 833, 840 (holding that Garrido was a transportation worker under section 1 of the FAA because he worked as a truck driver transporting Air Liquide gases, frequently across state lines, and as a result the FAA did not apply.); *Muller v. Roy Miller Freight Lines, LLC* (2019) 34 Cal.App.5th 1056, 1057 (delivery driver was engaged in interstate commerce rendering the FAA inapplicable, and "Because the FAA is inapplicable, our analysis is exclusively guided by California law).

Defendants confirmed it engages in interstate commerce. Def.'s Motion at 1:25-2:2. Plaintiff was a truck driver employed by Defendants. As such, the FAA does not apply to Plaintiff's claims.

## 2. Under Its Plain Language, the 2018 SMAP is Unenforceable if Not Subject to the FAA.

The last two sentences on the last page of the 2018 SMAP states:

> In the event a court of competent jurisdiction holds or decides that the Representative Action Waiver provisions of this SMAP, as applied to any Covered disputes being asserted, are not subject to and governed by the FAA, then this SMAP shall be of no force or effect as to any such Covered Disputes being pursued as any type of Representative Action." See Exhibit A to Declaration of Theresa Prestine-Dommer in support of Petition to Compel Arbitration and to Stay Proceedings, ("*Dommer Decl., Exhibit A: SMAP*"), p. 20 of 30.

The 2018 SMAP further states: "Only to the extent that state law is applicable under the FAA and/or the Conventions, then the laws of the state in which the Company at the time he or she became bound by this SMAP will be the applicable state law." *Dommer Decl., Exhibit A:  SMAP*, p. 20 of 30. Because the

SMAP incorporates state law, state law precluding class action waivers from being compelled to arbitration applies. As a result, Plaintiff's claims should not be compelled to arbitration and Defendants' Motion should be denied.

### 3.    State Law Prohibits the Enforceability of Class Waivers.

Because the FAA does not apply, state law is not preempted and applies to the enforceability of the agreement, including the class waiver. Under California law, class action waivers are unenforceable as a matter of public policy where the class action is a significantly more effective means of vindicating the right to wages. *Gentry v. Super. Ct.* (2007) 42 Cal.4th 443, 466; *Garrido v. Air Liquide US, LP* (2015) 241 Cal.App.4th 833, 845 (holding that the Gentry rule remains valid under the California Arbitration Act where the FAA does not apply.).

To determine if a class action waiver would impermissibly interfere with un-waivable rights, the court analyzes four factors: (1) the modest size of the potential individual recovery, (2) the potential for retaliation against members of the class, (3) the fact that absent members of the class may be ill informed about their rights, and (4) other real-world obstacles to the vindication of class members' rights through individual arbitration. *Id.* at 463. If a review of these four factors finds that a class action would more effectively allow an employee to vindicate their rights, then the class action waiver must be invalidated. *Id.* at 466.

A review of the four *Gentry* factors supports the conclusion the class action waiver here is unenforceable. With respect to the size of the individual recovery at issue, potential awards of $11,000 and $37,000 have both been found to satisfy the first *Gentry* factor requiring a modest size of potential recovery. *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 745-746; *Gentry*, 42 Cal.4th at 458. Wage and hour cases will generally satisfy the "modest" recovery factor because they "usually involve[] workers at the lower end of the pay scale." *Gentry*, 42 Cal.4th at 457-458. Assuming Plaintiff prevails on his WARN Act claim, he would be entitled to 60 days' wages, which is less than $12,500.00. *Romero Declaration*

¶ *2.* Thus, the first factor easily applies.

The third factor also weighs in favor of invalidating the class waiver. Because WARN Act cases are unusual and truck drivers are not generally highly educated about their legal rights, it is unlikely punitive class members would be aware of their statutory rights. It is therefore sufficient to infer that other class members did not know or were not informed of their rights. *Gentry*, 42 Cal.4th at 466; *Garrido*, 241 Cal.App.4th at 845.

Finally, it is reasonable to conclude that requiring numerous employees suffering from the same illegal practice to each separately bring an individual suit will drive up the costs of litigation and diminish the prospect that labor laws will be enforced. *Gentry*, 42 Cal.4th at 458-59. This is a key purpose of class actions. *Discover Bank v. Superior Ct.* (2005) 36 Cal.4th 148, 160; Code Civ. Proc., § 382; see *Fireside Bank v. Super. Ct.* (2007) 40 Cal.4th 1069, 1078; *City of San Jose v. Super. Ct.* (1974) 12 Cal.3d 447, 458; *Brinker Restaurant Corp. v. Super. Ct.* (2012) 53 Cal.4th 1004, 1021. Because three of the four *Gentry* factors exist, the class action waiver should not be enforced as required by state law.

Accordingly, Defendants' petition to compel individual arbitration should be denied and the matter permitted to proceed as a putative class action.

## 4.   The 2019 SMAP is Procedurally and Substantively Unconscionable.

It is well established that an arbitration agreement that is both procedurally and substantively unconscionable is void and unenforceable. *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114; Cal. Civ. Code §§ 1281 and 1670.5. Both elements of procedural and substantive unconscionability must be present in order to void an agreement, but they need not be present to the same degree. *Id.* at 115. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is necessary to conclude that the contract is unenforceable and vice versa. *Id.*; *Oto, L.L.C.  v. Kho*

(2019) 8 Cal.5th 111, 125-26. ("*Oto*").

### a. Procedural Unconscionability

Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power. *Id.* The threshold inquiry for procedural unconscionability is "whether the arbitration agreement is adhesive. *Armendariz*, 24 Cal. 4th at 113. A contract of adhesion is a standardized contract, imposed on the party to sign without the opportunity for negotiation. *Id.* A contract of adhesion is essentially a finding of procedural unconscionability. *Ramos. v. Super. Ct.* (2018) 28 Cal.App.5th 1041.

Here, Plaintiff avers that he was never shown the SMAP or the Associate Acknowledgments, and therefore was completely unaware that he was subject to an arbitration agreement. *Romero Decl.* at ¶¶ 7-8.  To hold an employee to arbitrate in such a circumstance is inherently procedurally unconscionable. Moreover, because he was never shown the SMAP or the Associate Acknowledgments, Plaintiff lost any opportunity to opt out.

Even assuming, *arguendo*, that Plaintiff received and reviewed the agreement, it is a contract of adhesion made under coercive circumstances. The 2019 SMAP was provided in a lengthy and dense ten-page agreement. *Dommer Decl., Exhibit B: SMAP*. It was never handed to the employee. Most significantly, the SMAP states that no signature on the SMAP was required for it to be deemed accepted. Dommer Dec., Exhibit B: SMAP, p. 30 of 30 ("NO SIGNATURE REQUIRED FOR ACCEPTANCE"). Acceptance was deemed to have occurred simply after continued employment. *Id.*

Further, any opt-out provisions buried within a single paragraph were rendered meaningless because they do not contain a reasonable opportunity for an employee to opt out. Without being provided an opportunity to review the document, Plaintiff unknowingly became subject to the SMAP simply by continuing to work. The sole way to avoid immediate acceptance would have been

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

to quit his job then and there. This is the epitome of a take or leave it offer. Without reasonable notification he could opt out, Plaintiff did not have any meaningful choice. The existence of the contract of adhesion is sufficient to establish a large degree of procedural unconscionability.

If there is a contract of adhesion, as there is here, the next inquiry is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1245-1246; *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1267-1268; *Oto*, 8 Cal.5th at 126. With respect to oppression, the follow factors are relevant: (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.* (2015) 232 Cal.App.4th 1332, 1348, fn omitted; *Oto*, 8 Cal.5th at 126-27. Surprise occurs when the allegedly unconscionable provision is hidden within a lengthy printed form. *Oto*, 8 Cal.5th at 126.

Circumstances of oppression and surprise both exist here. The SMAP was immediately deemed accepted upon issuance and continued employment. *Dommer Decl., Exhibit B: SMAP*, p. 30 of 30 ["NO SIGNATURE REQUIRED FOR ACCEPTANCE"]. That is, there was no opportunity for the Plaintiff to review prior to acceptance. Additionally, there is a high degree of oppression where an employee is required to accept the agreement immediately to keep a job. *Oto*, 8 Cal. 5th at 127. This is the case here, where Plaintiff had already been working for Defendants for years and was never provided the instant agreement. *Romero Decl.,* ¶¶ 7-8.

The complexity of the agreement similarly confirms the existence of oppression, as well as surprise, in the procedural nature of the agreement. The

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

agreement was buried in ten pages of dense legalese. *Dommer Decl., Exhibit B, SMAP*. Single sentences span several lines, and the policy is not explained in a clear and easy manner. The substance of the SMAP is not written in a fashion that would permit a non-lawyer to fully understand the terms. For example, the SMAP provides as an exclusion to the covered disputes, "claims arising or regulated under federal law for which there is an un-waivable specific statutory or regulatory enactment making such claims not arbitrable." *Dommer Decl., Exhibit B: SMAP*, pp. 22-23 of 30. There is no way an individual without advanced legal training could decipher the meaning of this phrase, let alone determine which claims would fall into this exclusion. Rather, the whole of the agreement is presented in a formulaic manner intended to obtain an acceptance by any means possible. This is contrary to the general principle that arbitration is a matter of consent, not coercion. *Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.* (2010) 559 U.S. 662, 681; *Oto*, 8 Cal. 5th at 129.

**b. Substantive Unconscionability**

An agreement with a high degree of procedural unconscionability need only present a small degree of substantive unconscionability to render it unenforceable. *Oto*, 8 Cal. 5th at 125-126. Substantive unconscionability is found when the contract is overly harsh or one-sided. *Armendariz*, 24 Cal.4th at 114. One degree of substantive unconscionability is when the arbitration is so inaccessible and unaffordable, that it does not offer an effective means for resolving disputes. *Oto*, 8 Cal. 5th at 124. Accessibility can be impacted when the arbitration agreement forces an employee to waive his right to a Berman hearing without a reasonable alternative, when the agreement does not provide the instructions on how to make a demand, does not identify a commercial provider, and when a Plaintiff essentially must hire an attorney to navigate its procedures. *Oto*, 8 Cal. 5th at 128.

All of these things exist in the SMAP. The SMAP confirms that "There are no… administrative hearings of Covered Disputes permitted under this SMAP."

*Dommer Decl., Exhibit B: SMAP*, pp. 23-24 of 30 ["WAIVER OF RIGHT TO JUDGE OR JURY TRIAL & ADMINISTRATIVE HEARINGS"]. The agreement not only fails to identify any commercial providers, it prohibits the use of the two main arbitration providers, JAMS and AAA. *Dommer Decl., Exhibit B: SMAP*, p. 24 of 30 ["ARBITRATION PROCEDURES"].

It would be difficult, if not impossible, for an unrepresented wage claimant to navigate the procedures. In fact, in order to make a demand, the SMAP requires that demand "comply with the requirements of pleadings under the Federal Rules of Civil Procedure." *Dommer Decl., Exhibit B: SMAP*, p. 24 of 30 ["COMMENCEMENT OF ARBITRATION"]. This is not a standard a claimant would inherently know or be able to meet on their own. Law schools dedicate year-long courses to the study of civil procedure. Well-seasoned attorneys often encounter motion practice alleging that the pleadings do not properly meet the Federal Rules of Civil Procedure standards. "An arbitration may not impose such costs or risks on wage claimants that effectively blocks every forum for the redress of disputes, including arbitration itself." *Oto*, 8 Cal.5th at 134. There would be absolutely no way for a claimant to participate in an arbitration without obtaining legal counsel. As a result, Plaintiff is forced to assume a cost he would otherwise not be required to take on, absent the arbitration agreement. Because the arbitration is essentially inaccessible and does not offer a reasonable alternative, there exists sufficient substantive unconscionability to render it unenforceable.

Furthermore, and in contravention of *Armendariz*, the 2019 SMAP attempts to render a California-based employee subject to the possibility that he or she may be required to pay greater costs and fees than would otherwise be due by to the Court. *Armendariz*, 24 Cal.4th at 110-11. The SMAP changes the California statutory fee and cost sharing provisions to one unilaterally selected by the arbitrator, which includes the sentence, "Unless binding United States Supreme Court precedent requires one party or the other to bear all or a greater share of the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

arbitration forum costs (including arbitrator fees), such costs shall be apportioned equally between the Covered Individual and Company." *Dommer Decl., Exhibit B: SMAP*, pp. 27-28 of 30 ["ARBITRATION FORUM COSTS"]. Such a provision is substantively unconscionable because as written, it subjects a discharged employee seeking 60-days' pay under the WARN Act, to pay half of private arbitrator costs which itself could exceed $50,000.00. Moreover, as written, this section vests the arbitrator with the power to ignore prevailing party attorney's fee provisions. Such oppressive terms render this SMAP substantively unconscionable.

Yet, the unconscionability scrutiny does not end there. Additional substantive unconscionable terms which are one-sided are contained within the arbitration agreements that encompass un-waivable statutory rights must be subject to particular scrutiny. *Armendariz*, 24 Cal.4th at 100. It is well established that PAGA waivers are for a public purpose and cannot be waived. *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383. Also, Civil Code section 3513 states, "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." *Armendariz*, 24 Cal.4th at 100. The SMAP contains substantively unconscionable terms because it seeks to force Plaintiff to forfeit PAGA representative actions, an un-waivable right. *Dommer Decl., Exhibit B: SMAP*, pp. 24-25 of 30 ["REPRESENTATIVE ACTION WAIVER"]. Additionally, the SMAP attempts to unconstitutionally extend the reach of the FAA and preempt state law without congressional or state consent. Cal. Civ. Code § 1667. Accordingly, the FAA waiver and the PAGA waiver are substantively unconscionable.

The inclusion of language purporting to waive any exemption to the FAA that may exist though is not even specified, such as the transportation worker exemption that controls this Motion, also shocks the conscience and is both procedurally and substantively unconscionable.  Especially here, where the 2019

SMAP also attempts to hold a California-based employee, such as Plaintiff, subject to Nevada law in the event Defendants' ill-fated attempt to invoke the FAA fails. *Dommer Decl., Exhibit B: SMAP*, p. 28 of 30 [GOVERNING LAW]. California Labor Code § 925 prohibits employers from depriving California based employees, like Plaintiff, from the substantive protections of California law with respect to a controversy arising in California.   Given that this directly violates protections inherent in California law, it is substantively unconscionable. *Garrido v. Air Liquide US, LP* (2015) 241 Cal.App.4th 833, 845. Moreover, a party cannot just waive away oppressive contract terms to save an invalid contract. In determining unconscionability, courts look at whether the contract provision was "unconscionable at the time it was made." *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1134; *Lima v. Gateway, Inc.* (C.D. Cal 2012) 886 F.Supp.2d 1170, 1183.

As established, the SMAP is more than sufficiently procedurally and substantively unconscionable as to render it unenforceable. The manner in which it was presented did not promote fairness, clarity, or a goal of seeking mutual consent. Rather the procedural nature was encased intent to obtain acceptance through surprise and coerciveness. By providing the SMAP in a manner which Plaintiff was deemed to immediately accept, Plaintiff was forced to forfeit any reasonable opportunity to seek redress of his claims, and forfeit certain un-waivable rights. As a result, the SMAP is unenforceable because it is procedurally and substantively unconscionable. Defendant's petition to compel arbitration should be denied.

## IV.  DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial pursuant to 9 U.S.C. § 4, as material facts regarding the making of the agreement for arbitration are disputed and are at issue. Therefore, under 9 U.S.C. § 4, the Court must proceed summarily to trial to determine whether a contract to arbitrate has been formed to the extent there are disputed facts relating thereto.

### V.  CONCLUSION

Based on the foregoing, Defendant's motion to compel arbitration must be denied. Alternatively, if the Court is not inclined to deny the motion, any factual disputes (such as whether Plaintiff accessed the Associate Acknowledgments or the SMAP, read them, or agreed to the terms, consented, etc.) relating to the motion must be resolved by a jury trial, which Plaintiff demands, under 9 U.S.C. section 4.

DATED: April 12, 2020                    **PANITZ LAW GROUP APC**

Eric A. Panitz
Attorneys for Plaintiff
ALEJANDRO ROMERO

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

## CERTIFICATE OF SERVICE

I, Eric A. Panitz, an employee in the County of Los Angeles, certify that on **April 12, 2020**, caused a true and correct copies of the foregoing be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who has registered for receipt of document(s)filed in this matter:

**DECLARATION OF ALEJANDRO ROMERO IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION**

| _Counsel for Defendants:_ | |
|---|---|
| Sabrina A. Beldner<br>Amy. E. Beverlin<br>Ashley R. Li<br>Matthew C. Kane<br>McGuireWoods LLP<br>1800 Century Park East 8th Floor<br>Los Angeles, CA 90067<br>Phone: (310) 315-8200<br>Fax: (310)315-8210<br>sbeldner@mcguirewoods.com<br>abeverlin@mcguirewoods.com<br>ali@mcguirewoods.com<br>mkane@mcguirewoods.com | |

Dated: April 12, 2020

PANITZ LAW GROUP APC

ERIC A. PANITZ
18000 Studebaker Road, Suite 700
Cerritos, California 90703
Attorneys for Plaintiff
ALEJANDRO ROMERO

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION