1 | **MCGUIREWOODS LLP**
Matthew C. Kane (SBN 171829)
2 |     Email: mkane@mcguirewoods.com
Sabrina A. Beldner (SBN 221918)
3 |     Email: sbeldner@mcguirewoods.com
Amy. E. Beverlin (SBN 284745)
4 |     Email: abeverlin@mcguirewoods.com
Ashley R. Li (SBN 317305)
5 |     Email: ali@mcguirewoods.com
1800 Century Park East, 7th Floor
6 | Los Angeles, CA  90067-1501
Telephone:  310.315.8200
7 | Facsimile:  310.315.8210

8 | Attorneys for Defendants WATKINS AND SHEPARD TRUCKING, INC. and SCHNEIDER NATIONAL CARRIERS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ROMERO, on his own behalf and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WATKINS AND SHEPARD TRUCKING, INC., a Montana corporation, SCHNEIDER NATIONAL CARRIERS, INC., a Nevada corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 5:19-cv-02158-PSG (KKx)<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION OF PLAINTIFF'S CLAIMS AND STAY PROCEEDINGS PENDING RULING ON MOTION AND COMPLETION OF ARBITRATION**<br><br>*Filed Under Separate Covers*:<br><br>**REPLY DECLARATIONS OF:**<br>**(1)   VERONICA BELLOT**<br>**(2)   CHANCE SHOOK**<br>**(3)   JOHN DIAMOND**<br>**(4)   MICHAEL VAN HANDEL**<br><br>**(5)   RESPONSE TO PLAINTIFF'S WRITTEN OBJECTIONS TO DEFENDANTS' EVIDENCE**<br><br>**(6)   EVIDENTIARY OBJECTIONS TO DECLARATION OF ALEJANDRO ROMERO**<br><br>Date:      May 4, 2020<br>Time:     1:30 p.m.<br>Crtrm:   6A<br>Judge:    Hon. Philip S. Gutierrez |

129849345.7

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

I. INTRODUCTION ................................................................................................... 1

II. PLAINTIFF AGREED TO BE BOUND BY THE SMAP *TWICE* ................ 1

III. THE FAA APPLIES TO THE SMAP AND TO THIS MOTION .................. 4

IV. PLAINTIFF CANNOT PURSUE HIS CLASS ACTION CLAIMS ............. 6

V. THE 2019 SMAP IS NOT UNCONSCIONABLE ........................................ 9

    A. The 2019 SMAP Is Not Procedurally Unconscionable .............. 10

    B. The 2019 SMAP Is Not Substantively Unconscionable ............. 11

VI. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Estate of Arce by & through Huerta v. Panish Shea & Boyle LLP*,
   2019 WL 6218781 (S.D. Cal. Nov. 20, 2019) ................................................... 10

*Barraza v. Cricket Wireless LLC*,
   2015 WL 6689396 (N.D. Cal. Nov. 3, 2015) ...................................................... 4

*Benedict v. Hewlett-Packard Co.*,
   2016 WL 1213985 (N.D. Cal. Mar. 29, 2016) ..................................................... 5

*Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*,
   944 F.3d 225 (4th Cir. 2019) ............................................................................... 4

*Brown v. Dow Chem. Co.*,
   2019 WL 484211 (N.D. Cal. Feb. 7, 2019) ........................................................ 12

*CarMax Auto Superstores California LLC v. Hernandez*,
   94 F.Supp.3d 1078 (C.D. Cal. 2015) ............................................................. 9, 10

*Castillo v. Cava Mezze Grill, LLC*,
   2018 WL 7501263 (C.D. Cal. Dec. 21, 2018) ..................................................... 3

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002) ..................................................................... 10, 11

*Cohn v. Ritz Transp., Inc.*,
   2014 WL 1577295 (D. Nev. Apr. 17, 2014) ....................................................... 9

*Compucredit Corp. v. Greenwood*,
   565 U.S. 95 (2012) ............................................................................................... 6

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................................. 6

*Elieff v. Groves*,
   2010 WL 11601213 (C.D. Cal. Aug. 11, 2010) ................................................ 10

*Epic Sys. Corp. v. Lewis*,
   138 S.Ct. 1612 (2018) ...................................................................................... 5, 6

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) .......................................................................... 1, 5, 7, 11

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ........................................................................................ 5

*Great Am. Trading Corp. v. I.C.P. Cocoa, Inc.*,
  629 F.2d 1282 (7th Cir. 1980) ...................................................................... 4

*Howard v. Ferrellgas Partners, L.P.*,
  748 F.3d 975 (10th Cir. 2014) ...................................................................... 4

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ........................................................................................ 1

*Jackson v. TIC-The Indus. Co.*,
  2014 WL 1232215 (E.D. Cal. Mar. 24, 2014) .............................................. 3

*Kilgore v. KeyBank, N.A.*,
  673 F.3d 947 (9th Cir. 2012) ...................................................................... 10

*Lamps Plus, Inc. v. Varela*,
  139 S.Ct. 1407 (2019) ................................................................................... 5

*Mallia v. Drybar Holdings, LLC*,
  2010 WL 1250817 (D. Nev. Mar. 16, 2020) ................................................ 3

*Marine Transit Corp. v. Dreyfus*,
  284 U.S. 263 (1932) ...................................................................................... 6

*Mohamed v. Uber Techs., Inc.*,
  109 F.Supp.3d 1185 (N.D. Cal. 2015) ...................................................... 3, 4

*New Prime Inc. v. Oliveira*,
  139 S.Ct. 531 (2019) ................................................................................. 4, 5

*Ortiz v. Hobby Lobby Stores, Inc.*,
  52 F.Supp.3d 1070 (E.D. Cal. 2014) ............................................................ 3

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) ............................................................... 11, 12

*Rivera v. Uniqlo California, LLC*,
  2017 WL 6539016 (C.D. Cal. Sept. 8, 2017) ............................................. 12

129849345.7

iv

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

*Shearson/American Express Inc. v. McMahon*,
  482 U.S. 220 (1987) .................................................................................................... 6

*Smith v. Rent-A-Center, Inc.*,
  2019 WL 3004160 (E.D. Cal. July 10, 2019) ................................................... 1, 2, 4

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) .................................................................................................... 5

*Tagliabue v. J.C. Penney Corp.*,
  2015 WL 8780577 (E.D. Cal. Dec. 15, 2015) ........................................................ 2

*Tanis v. Sw. Airlines, Co.*,
  2019 WL 1111240 (S.D. Cal. Mar. 11, 2019) ........................................................ 10

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. Jun. 25, 2014) ............................................. 2, 9, 10

*Trevino v. Acosta, Inc.*,
  2018 WL 3537885 (N.D. Cal. July 23, 2018) ........................................................ 3

**State Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ........................................................................................ 10, 11

*Brown v. Ralphs Grocery Co.*,
  197 Cal.App.4th 489 (2011) ..................................................................................... 7

*Garrido v. Air Liquide Industrial U.S. LP*,
  241 Cal.App.4th 833 (2015) ..................................................................................... 8

*Gentry v. Superior Court*,
  42 Cal.4th 443 (2007) ................................................................................... 6, 7, 8, 9

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'r*,
  89 Cal.App.4th 1042 (2001) ................................................................................ 3, 4

*Muro v. Cornerstone Staffing Solutions, Inc.*,
  20 Cal.App.5th 784 (2018) .................................................................................. 6, 7

*Otto, LLC v. Kho*,
  8 Cal.5th 111 (2019) ................................................................................................ 11

*Truly Nolen of Am. v. Super. Ct.*,
  208 Cal.App.4th 487 (2012) .................................................................... 6, 7, 8, 9

**Federal Statutes**

9 U.S.C. § 1 ................................................................................................................ 4

**State Statutes**

Cal. Civ. Code § 1633.9 .............................................................................................. 1

Cal. Lab. Code § 925 ................................................................................................ 12

## I. INTRODUCTION

Relying almost entirely on his *ipse dixits* rather than evidence and authorities, Plaintiff's Opposition repudiates his enforceable written arbitration agreement as set forth in the Schneider Mediation & Arbitration Policy (the "SMAP"). As such, he has failed to meet his burden to prove *any* defense to enforcement of the SMAP.

## II. PLAINTIFF AGREED TO BE BOUND BY THE SMAP *TWICE*[1]

Although courts "apply ordinary state-law principles that govern the formation of contracts," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), Plaintiff erroneously assumes that California law supplies those principles. In terms of the 2019 SMAP, it expressly provides that ***Nevada*** law "will be the applicable state law." Dkt. #12-1, ¶ 11, Ex. B. Notably, Plaintiff proffers *no* fact-specific arguments as to the validity of that choice of law provision *or* of his electronic signature under ***Nevada*** law. Therefore, he fails to establish that the 2019 SMAP is unenforceable under the parties' chosen state law. But even assuming that California law applies to *both* the 2018 and 2019 SMAPs, his efforts to invalidate them fail:

First, Plaintiff erroneously asserts that his "electronic signature" on the SMAPs is not authenticated. California law provides that authentication has <u>already occurred</u>:

> An electronic record or electronic signature is attributable to a person if it was the act of the person. *The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable*. (Emph. added).

Cal. Civ. Code § 1633.9. "[T]he use of a checkbox to show acknowledgment and agreement with a specific policy document … has been found sufficient where a unique, secure username and password was used to access the website containing the policy document." *Smith v. Rent-A-Center, Inc.*, 2019 WL 3004160, at *5 (E.D. Cal. July 10, 2019). "Likewise, the act of inputting a username and password, itself, has

---

[1] Plaintiff ***does not dispute*** that his claims fall squarely within the terms of the SMAP. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

1  been found sufficient to constitute an electronic signature." *Id.* (citing cases).[2]

2  Here, Plaintiff had a unique employee number *and* password that he used to log into and access Defendants' employee portal and online learning system. *See* Dkt. #12-1, ¶¶ 4-5; *see also* Bellot Decl., ¶¶ 3, 4. Indeed, he **does not dispute** that he could *only* access the online learning system by using those unique login credentials. *See* Dkt. #12-1, ¶¶ 4-5. Rather, he avers *only* that, when his password periodically expired, he would call "Defendants' headquarters" where "a manager would issue [him] a new password." Dkt. #15-1, ¶ 6. This is pure legerdemain on his part.

When *any* employee needs to reset their password, they either self-reset by answering security challenge questions online (if they set them up previously) or by calling the Schneider Support Center to do so.[3] *See* Diamond Decl., ¶¶ 3, 5. Calls to the Support Center to reset a password are routed to a support agent who verifies the employee's identity and provides a new password *directly to the employee* over the phone. *See id.*, ¶ 6; Shook Decl., ¶¶ 4, 7, 10. Once that new password is provided, the employee is still required to *change* it <u>himself</u> the first time it is used to log into Defendants' employee portal. *See* Shook Decl., ¶¶ 10, 15. Plaintiff used this *exact* procedure to reset his password on April 26, 2018—the date he completed his 2018 Associate Acknowledgments ("AAs")—and again on February 23, 2019, before he completed his 2019 AAs. *See id.*, ¶¶ 12-20; Van Handel Decl., ¶¶ 5-6. He was *never* issued "a new password" by "a manager," and a "manager" never requested a new password for him or had access to his password. *See id.*; Bellot Decl., ¶ 6.

---

[2] *See also Tagliabue v. J.C. Penney Corp.*, 2015 WL 8780577, at *4 (E.D. Cal. Dec. 15, 2015) ("Courts have long upheld agreements where a contract was formed when a plaintiff **clicked on a button to assent to an agreement in which the terms themselves are accessed by a hyperlink**." (emph. added)); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. Jun. 25, 2014) (plaintiffs had adequate notice of the contract terms "because courts have long upheld contracts where 'the consumer is prompted to examine terms of sale that are located somewhere else'").

[3] According to Schneider Support Center call ticket logs and log history, Plaintiff's password reset requests were *only* ever made via telephone calls to the Support Center. *See* Shook Decl., ¶¶ 12-20.

Therefore, **only** **Plaintiff** could access and complete both ***his*** 2018 and 2019 AAs.

Next, under California law, "[w]hen a party signs a document agreeing that he/she has read the arbitration agreement, the burden shifts to them to demonstrate they did not agree to arbitrate." *Jackson v. TIC-The Indus. Co.*, 2014 WL 1232215, at *5 (E.D. Cal. Mar. 24, 2014); *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F.Supp.3d 1070, 1079 (E.D. Cal. 2014) (assertion plaintiff did not recall receiving arbitration agreement was "inconsequential").[4] Plaintiff's assertion that he "did not review" or "ever see" the SMAPs or his AAs does not meet his burden to rebut Defendants' countervailing evidence that **he** is the ***only*** person who could have accessed the online learning system and complete the 2018 and 2019 AAs using his unique Employee Identification Number and password.[5] *See Taft v. Henley Enters., Inc.*, 016 WL 9448485, at *3 (C.D. Cal. Mar. 2, 2016) (Stanton, J.).

Finally, the AAs *unequivocally* stated that they were agreements and specifically referred to the terms of the SMAPs. *See Marin Storage*, 89 Cal.App.4th at 1050. While Plaintiff complains that he was not physically handed a copy of the SMAPs, they were made available to him via hyperlinked content in the AAs, *and* he was informed that a copy of the most current SMAP was also available to him on "the internal Schneider website." Dkt. #12-1, ¶¶ 10, 13; *see Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185, 1197-98 (N.D. Cal. 2015). In sum, not only did the AAs incorporate the SMAP by reference, but they drew Plaintiff's attention to it,

---

[4] *See also Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'r*, 89 Cal.App.4th 1042, 1049 (2001) ("A party cannot avoid the terms of a contract on the grounds that he or she failed to read it before signing.").

[5] *See, e.g.*, *Castillo v. Cava Mezze Grill, LLC*, 2018 WL 7501263, at *3 (C.D. Cal. Dec. 21, 2018) (Fitzgerald, J.) (assertion that plaintiff did not recall viewing arbitration agreement, and would not have signed it if she had, was "not enough to rebut evidence of her electronic signature"); *Trevino v. Acosta, Inc.*, 2018 WL 3537885, at *7 (N.D. Cal. July 23, 2018) (court cannot invalidate signed arbitration agreement merely because plaintiff did not understand the agreement or chose not to read it); *see also, e.g.*, *Mallia v. Drybar Holdings, LLC*, 2010 WL 1250817, at *3 (D. Nev. Mar. 16, 2020) ("[U]nder Nevada law, one who signs an agreement is presumed to know the contents therein, and Mallia offers no evidence that Defendants procured his 'eSign' signature through fraud or another wrongful act.").

informed him of his right to elect not to be bound by it, provided him with *two* ways to view its terms, and informed him that it constituted a binding agreement. *See Marin Storage*, 89 Cal.App.4th at 1050.[6]  He cannot avoid the SMAP by claiming he was not "made aware" of it before continuing his employment.  Opp. at 7:10-9:5.

Therefore, Defendants have satisfied their burden to establish, and there is *no genuine dispute*, that Plaintiff entered into *two* valid arbitration agreements.  *See, e.g., Smith*, 2019 WL 3004160, at *6 (employee declarations detailing onboarding process were sufficient evidence to authenticate electronic signatures on agreements).[7]

## III.   THE FAA APPLIES TO THE SMAP AND TO THIS MOTION

Under *New Prime Inc. v. Oliveira*, 139 S.Ct. 531, 538 (2019), "a court should decide for itself whether [9 U.S.C.] § 1's 'contracts of employment' exclusion applies before ordering arbitration."  That exclusion states that "contracts of employment" of certain transportation workers fall outside the FAA's coverage.  *See* 9 U.S.C. § 1 ("Section 1").  Plaintiff argues that his SMAPs are not governed by the FAA because he worked as a truck driver and made furniture and carpet deliveries *within California* of products that were allegedly shipped from manufacturers outside of California.  Dkt. #15-1, ¶ 2.  However, the SMAPs *are* governed by the FAA and the Section 1 exclusion is *inapplicable* here.  *See New Prime*, 139 S.Ct. at 537-38.

Tellingly, Plaintiff does not discuss each SMAP's "Governing Law" provision,

---

[6] *See also Mohamed*, 109 F.Supp.3d at 1198 (affirming contract formed where plaintiff had opportunity to review relevant terms of hyperlinked agreements, the existence of the relevant term was conspicuous, and the plaintiff was required to click through the screen to continue using the application and also click "Yes, I Agree").

[7] In the event the Court believes Plaintiff has created a genuine dispute of material fact as to the making of an arbitration agreement, Defendants respectfully submit that a trial must be held to resolve those factual questions before ruling on the merits of this Motion.  *See, e.g., Barraza v. Cricket Wireless LLC*, 2015 WL 6689396, at *5, 6 (N.D. Cal. Nov. 3, 2015) (summary trial necessary to resolve whether plaintiffs assented to arbitration agreement); *see also, e.g., Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (district court obligated to conduct trial on motion to compel arbitration because genuine disputes of material fact existed as to whether plaintiff agreed to arbitrate); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) (same); *Great Am. Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1288 (7th Cir. 1980) (same).

by which the parties *expressly* "waive[d] the application or enforcement of any provision of the FAA which would otherwise exclude this SMAP from its coverage." Dkt. #12-1, ¶¶ 10, 11, Exhs. A, B. Thus, to the extent Section 1 otherwise could be interpreted to exclude the SMAPs from being governed by the FAA, the parties *agreed to waive* Section 1's applicability. Consequently, the antecedent *New Prime* inquiry must be answered by finding that the Section 1 exclusion is waived and inapplicable, the FAA applies, and the SMAPs are enforceable thereunder.

To that end, "arbitration is simply a matter of contract," *First Options*, 514 U.S. at 943, and the FAA is "a congressional command requiring [courts] to enforce, *not override*, the terms of the arbitration agreements before [them]." *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1623 (2018) (emph. added); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (courts must "give effect" to the contractual terms and, "when doing so, … must not lose sight of the purpose of the exercise: to give effect to the intent of the parties"). Indeed, the FAA mandates that courts must "enforce arbitration agreements according to their terms." *Epic*, 138 S.Ct. at 1621; *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1415 (2019) (same).

Thus, the Supreme Court has repeatedly held that statutory waivers made in employment-related arbitration agreements are valid and enforceable, most recently doing so as to class action waivers. *See Epic*, 138 S.Ct. at 1621-23. It previously did so as to collective action waivers—notwithstanding that the Age Discrimination in Employment Act ("ADEA") expressly provides for the possibility of collective relief—because such waivers did not prejudice the plaintiffs' *individual* statutory claims. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (ADEA claims could be subjected to individual arbitration); *see also Benedict v. Hewlett-Packard Co.*, 2016 WL 1213985, at *3-5 (N.D. Cal. Mar. 29, 2016) (right to bring collective action under the FLSA can be waived because, *inter alia*, "the FLSA contains no provision explicitly precluding the waiver").

Here as well, the SMAP's Section 1 waiver does *not* deprive Plaintiff of *any*

1  *substantive* rights available under any statute, and the FAA does *not* explicitly *prohibit* waivers of Section 1.  Rather, because the FAA is silent on the matter, "[t]he parties remain[ed] free to specify such matters, so long as … *the guarantee of the legal power to impose liability* … is preserved," and because it is, "the FAA requires the [SMAP] to be enforced according to its terms," <u>without application of Section 1</u>. *Compucredit Corp. v. Greenwood*, 565 U.S. 95, 102, 104 (2012) (emph. in orig.).

In fact, the SMAP's Section 1 waiver is fully *consistent* with the "purpose behind" the FAA of "ensur[ing] judicial enforcement" of arbitration agreements. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219 (1985).[8]  The SMAP's Section 1 waiver *does just that*—it ensures judicial enforcement of the SMAP under the FAA—and Plaintiff proffers *no* authority that such a waiver is not effective.[9]

## IV. PLAINTIFF CANNOT PURSUE HIS CLASS ACTION CLAIMS

Plaintiff *does not dispute* (because he cannot) that, if the FAA governs the SMAP, then its class action waiver is valid and enforceable.  *See Epic*, 138 S.Ct. at 1622; *see also* Mot. at 14:17-16:5 (discussion).  However, even if the FAA did not apply here (and it does), California state law would still not prohibit the enforcement of the 2018 SMAP's class action waiver because Plaintiff has not made the evidentiary showing necessary under *Gentry v. Superior Court*, 42 Cal.4th 443 (2007), to establish any basis for the Court not to enforce that waiver.[10]  *See, e.g.*, *Muro v. Cornerstone Staffing Solutions, Inc.*, 20 Cal.App.5th 784, 792-93 (2018); *Truly Nolen of Am. v. Super. Ct.*, 208 Cal.App.4th 487, 510 (2012).

---

[8] *See also Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 274 n.2 (1932) ("'The purpose of [the FAA] is to make valid and enforceable agreements for arbitration'" (cit. omitted)); 65 Cong. Rec. 1931 (1924) (the FAA "creates no new legislation, *grants no new rights*, except a *remedy* to enforce an agreement" to arbitrate (emph. added)).

[9] "The burden is on the party opposing arbitration ... to show that Congress intended to preclude a waiver …." *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 227 (1987).

[10] Plaintiff's contention that the 2018 SMAP is unenforceable *as a whole* if the FAA does not apply is wholly incorrect.  *See Gentry*, 42 Cal.4th at 570.

Under *Gentry*, courts must assess four factors in deciding whether to enforce a class action waiver outside the FAA: (1) "the modest size of the potential individual recovery"; (2) "the potential for retaliation against members of the class"; (3) "the fact that absent members of the class may be ill informed about their rights"; and (4) "other real world obstacles to the vindication of class members' rights ... through individual arbitration." *Muro*, 20 Cal.App.5th at 792-93. "It is the ***plaintiff's burden*** to show the class action waiver is invalid by making a ***factual showing*** of the four *Gentry* factors." *Id.* (emph. added); *see also Brown v. Ralphs Grocery Co.*, 197 Cal.App.4th 489, 496-97 (2011) (plaintiff must make an ***evidentiary*** showing of the four *Gentry* factors to establish a class action waiver should not be enforced). A court "*may* decline to enforce a class action waiver *if* it concludes, based on these factors, that class arbitration is 'likely to be a *significantly* more effective practical means of vindicating the rights of affected employees than individual litigation or arbitration.'" *Id.* at 793 (emph. added). "[T]he factual analysis as to whether the *Gentry* factors apply in any particular case must be specific, individualized, and precise." *Truly Nolen*, 208 Cal.App.4th at 511. Here, Plaintiff has failed to make the requisite evidentiary showing as to *each* of those factors:

***First***, Plaintiff has not submitted anything resembling "a detailed evaluation of his calculations" in estimating his individual recovery. *Id.* Instead, he claims that his recovery of lost wages would be modest based on nothing more than his "last rate of pay." Opp. at 11:20-28. But Plaintiff does *not* seek *only* lost wages; he seeks "unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for sixty (60) days." Dkt. 1-1 at 6:20-26. He *also* seeks "reasonable attorneys' fees and costs." *Id.* at 7:7-9. Yet, Plaintiff provides no estimate of these sought recoveries—demonstrating that he fails to meet his burden to make an *evidentiary showing* that his maximum individual recovery is "modest." *Cf. Muro*, 20 Cal.App.5th at 793.

***Second***, in *Gentry*, 42 Cal.4th at 459, the court reasoned that a factor in *favor*

of class actions "is that a current employee who individually sues his or her employer is at a greater risk of retaliation." Plaintiff, however, is a *former* employee, *see* Dkt. #15-1, ¶ 5, and he brings this action *only* on behalf of *other terminated employees*, *see* Dkt. #1-1, ¶¶ 3, 4. Plaintiff completely fails to address this *Gentry* factor at all, undoubtedly because it does *not* weigh in favor of a class action here.

**Third**, Plaintiff has submitted *no* evidence that absent putative class members are ill-informed of their rights. In *Garrido v. Air Liquide Industrial U.S. LP*, 241 Cal.App.4th 833, 846 (2015), the plaintiff "declared that he was unaware of his rights under the Labor Code while employed … and that [the defendant] made no effort to inform him or other truck drivers of [their] rights." *From that evidence*, "the trial court could reasonably infer that absent class members may be ill informed of their rights." *Id.* Here, Plaintiff proffers *no* such evidence, and instead merely *argues* that "WARN Act cases are unusual" so "it is unlikely that punitive [*sic*] class members would be aware of their statutory rights"—but that is not a factual showing. *Truly Nolen*, 208 Cal.App.4th at 511 (attorneys' arguments insufficient under *Gentry*).

**Fourth**, Plaintiff proffers *no* evidence that this case involves the type of "class action waiver entered as a condition of employment by low-wage, limited-information employees in vulnerable, at-will employment environments" with which *Gentry* was concerned. *Garrido*, 241 Cal.App.4th at 847. Indeed, it is indisputable that the SMAP was ***not*** a condition of employment. *See Truly Nolen*, 208 Cal.App.4th at 511. More importantly, Plaintiff proffers *no* evidence that individual arbitration of his (or other putative class members') claims would result in inefficiency that would substantially drive up the costs of arbitration and diminish the prospect that the relevant statutes would be enforced *in this case*. *See Gentry*, 42 Cal.4th at 443. Rather, as he has done with each factor, he just assumes it to be so.[11]

---

[11] *See Truly Nolen*, 208 Cal.App.4th 511 ("[T]o the extent there exists authority supporting the application of the *Gentry* factors based solely on generalized statements from attorneys about the benefits of classwide arbitration, we find this

129849345.7                                8
**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

Class action "waivers will *only* be invalidated after *the **proper** factual showing*." *Gentry*, 42 Cal.4th at 570 (emph. added). The generalized statements in Plaintiff's Opposition do *not* constitute a "proper factual showing," and "[t]he total lack of individualized evidence supporting the application of the *Gentry* factors distinguishes this case from [those] in which courts have invalidated class action waivers." *Truly Nolen*, 208 Cal.App.4th at 510 (enforcing class action waiver where plaintiffs "presented *no* evidence with respect to the application of th[e] factors to the circumstances in [that] particular case"). Because Plaintiff has not shown that *Gentry* prohibits enforcement of the 2018 (or 2019) SMAP's class action waiver, it is enforceable *even if* the SMAP is not governed by the FAA (which it is).[12]

## V.     THE 2019 SMAP IS NOT UNCONSCIONABLE

State law governs defenses to arbitration agreements. *See Tompkins*, 2014 WL 2903752, at *8. The 2019 SMAP's choice of law clause mandates application of *Nevada* state law, but Plaintiff fails to addresses its enforceability under Nevada law and instead only argues against it under California law. On this basis alone, he fails to meet his burden and his unconscionability arguments should be rejected.[13]

However, Plaintiff also has failed to meet his burden of proof under California law. *See, e.g.*, *CarMax Auto Superstores California LLC v. Hernandez*, 94 F.Supp.3d 1078, 1103 (C.D. Cal. 2015) (Morrow, J.) (burden on party opposing arbitration). California law requires **both** procedural and substantive unconscionability, "balanced

---

authority unpersuasive.").

[12] While Plaintiff claims that the 2018 SMAP is "unenforceable" under California state law, he makes no such argument with respect to the 2019 SMAP (much less under *Nevada* law, which is the chosen state law applicable thereto). Regardless, even if California law applied, the 2019 SMAP's class action waiver would be *enforceable* on the same grounds. As discussed next, Plaintiff *only* argues that the 2019 SMAP is *unconscionable*. Opp. at 12:19-18:22. He makes *no such argument as to the 2018 SMAP* and any such argument is *waived*. *See id.* at 10:16-18.

[13] Under Nevada law, Plaintiff bears the burden of demonstrating "[b]oth procedural and substantive unconscionability ... in order for a court to exercise its discretion to refuse to enforce a contract or clause as unconscionable." *Cohn v. Ritz Transp., Inc.*, 2014 WL 1577295, at *13 (D. Nev. Apr. 17, 2014).

on a sliding scale." *Tompkins*, 2014 WL 2903752, at *13. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required …, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "No matter how heavily one side of the scale tips, however, *both* procedural and substantive unconscionability *are required* ….." *Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 963 (9th Cir. 2012) (first emph. in orig.; emph. added).

### A.   THE 2019 SMAP IS NOT PROCEDURALLY UNCONSCIONABLE

Plaintiff was not presented with a contract of adhesion because he was given the opportunity to opt-out of the SMAP. *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002). Moreover, the SMAP's opt-out provision – which is set apart from its other provisions – was called to Plaintiff's attention in his 2019 AAs. *See* Dkt. #12-1, ¶ 13. Whether he actually clicked through to the hyperlinked copy of the SMAP or otherwise read the terms of the SMAP available on Defendants' intranet is irrelevant.[14] Defendants were *not* required to *physically hand* the SMAP to Plaintiff, and he provides **no** authority for such a proposition. It is beyond dispute that he had the opportunity to review the hyperlinked SMAP and that the existence of the SMAP was made conspicuous on the screen where he clicked the affirmative answers he chose to complete his 2019 AAs process. Dkt. #12-1, ¶¶ 7, 9, 12.[15]

It is also irrelevant that the SMAP did not require a signature for acceptance. Indeed, California law (like the FAA) does ***not*** require a signature for an arbitration agreement to be enforceable. *See Estate of Arce by & through Huerta v. Panish Shea & Boyle LLP*, 2019 WL 6218781, at *4 (S.D. Cal. Nov. 20, 2019); *Elieff v. Groves*, 2010 WL 11601213, at *3 (C.D. Cal. Aug. 11, 2010) (Fairbank, J.). Also, Plaintiff

---

[14] *See Tanis v. Sw. Airlines, Co.*, 2019 WL 1111240, at *7 (S.D. Cal. Mar. 11, 2019) (language in second of four paragraphs not "hidden" and fact that plaintiff did not click hyperlink to policy did not make its existence hidden or unclear).

[15] *See also CarMax*, 94 F.Supp.3d at 1115 (access to agreement sufficient); *Taft*, 2016 WL 9448485, at *6 (standalone document that constituted independent step in onboarding process not hidden).

could have selected "I Do Not Agree" in his 2019 AAs, and he points to *no language* in the SMAP and proffers *no evidence* even tending to suggest that if he selected that option or otherwise elected to opt out, he would have been terminated.  *Cf. Otto, LLC v. Kho*, 8 Cal.5th 111, 127 (2019) (defendant admitted plaintiff was required to sign the agreement to keep his job).  It was **not** a "take or leave it offer."  Opp. at 14:1.

Because Plaintiff has failed to establish that his SMAP is procedurally unconscionable, his unconscionability defense fails *in toto*.[16]

### B.    THE 2019 SMAP IS NOT SUBSTANTIVELY UNCONSCIONABLE

Even if Plaintiff could show that the SMAP is procedurally unconscionable (and he cannot), it would at best be a minimal showing, requiring that he make "a *high showing* of substantive unconscionability."  *Taft*, 2016 WL 9448485, at *7 (emph. added).  Plaintiff has failed to meet that high burden.

***First***, the "Arbitration Forum Costs" provision is not unconscionable.[17]  To start, the *Armendariz* factors do not apply here because the SMAP was not imposed as a condition of Plaintiff's employment.  *See* 24 Cal.4th at 110-11.  Still, *Armendariz* only prohibits arbitration agreements that *require* the employee to bear expenses he would not be required to bear if he could bring his action in court.  *See id.*  The SMAP only ***requires*** that the parties "each pay the costs and fees for their respective attorneys."  Dkt. #12-1, ¶ 11, Ex. B.  Any dispute over the apportionment or payment of costs is to be resolved by the arbitrator.  *See id.*  Plaintiff's ***speculation*** that he *may* be required to pay *some* costs does not run afoul of *Armendariz*.  Opp. at 16:22-25.

***Second***, the "PAGA Action Waiver" is not unconscionable.  *See, e.g.*, *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1264 (9th Cir. 2017) ("[T]he unenforceability of the waiver of a PAGA representative action does not make this provision

---

[16] *See Ahmed*, 283 F.3d at 1200 (the court need not reach substantive unconscionability where plaintiff failed to establish procedural unconscionability).

[17] Plaintiff fails to identify the "California statutory fee and cost sharing provisions" allegedly altered by this provision.  Opp. at 16:25-17:8.  Indeed, the SMAP expressly allows for prevailing party attorneys' fees.  Dkt. #12-1, ¶ 11, Ex. B.

substantively unconscionable."). Indeed, Plaintiff has not even brought a claim under PAGA. Further, even if that waiver *was* deemed unconscionable, the SMAP accounts for such a situation by providing that any such claim would be stayed pending arbitration of the plaintiff's arbitrable claims. *See, e.g.*, *id.* at 1273 (PAGA waiver "can be limited without affecting the remainder of the agreement").

***Third***, the choice of law provision does **not** "directly violate protections inherent in California law." Opp. at 18:6. Cal. Lab. Code § 925 provides that a choice of law provision is *voidable* (not void) where the employee was required to agree to the provision *as a condition of employment*. *See* Cal. Lab. Code § 925(a)(2). But the SMAP was **not** a condition of Plaintiff's employment; he had the opportunity to opt out of *both* the 2019 SMAP *and* its choice of law provision. *See* Dkt. #12-1, ¶¶ 11, 13, Ex. B (p. 8); *Rivera v. Uniqlo California, LLC*, 2017 WL 6539016, at *7 (C.D. Cal. Sept. 8, 2017) (arbitration agreement not a condition of employment where plaintiff permitted to opt out). Thus, Cal. Lab. Code § 925 is immaterial.[18]

Therefore, Plaintiff has failed to show that the 2019 SMAP is in *any* way substantively unconscionable, and his unconscionability defense to the SMAP fails.

## VI. CONCLUSION

Defendants respectfully request that the Court grant their Motion in its entirety.

DATED: April 20, 2020                    M<small>C</small>G<small>UIRE</small>W<small>OODS</small> LLP

By:   /s/ Matthew C. Kane
      Matthew C. Kane
      Sabrina A. Beldner
      Amy E. Beverlin
      Ashley R. Li

Attorneys for Defendants

---

[18] Regardless, because Plaintiff fails "to show any possibility that, at the time he entered into the [SMAP] or at any time thereafter, the … choice of law clause could deprive him of any substantive right available to him under California law," it is *not substantively unconscionable*. *Brown v. Dow Chem. Co.*, 2019 WL 484211, at *3 (N.D. Cal. Feb. 7, 2019). As for his argument that the SMAP's terms effectively require him to obtain legal counsel (Opp. at 16:6-21), he cites no authority for that proposition, and it is nonsensical—he does not testify that he ever needed such counsel, and, regardless, he retained counsel irrespective of the SMAP.