Eric A. Panitz (SBN 243877)
PANITZ LAW GROUP APC
18000 Studebaker Road, Suite 700
Cerritos, CA 90703
(562) 924-7800 Phone
(562) 924-7801 Fax
eric@panitzlaw.com

Attorneys for Plaintiff
ALEJANDRO ROMERO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ROMERO, on his own behalf and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WATKINS AND SHEPARD TRUCKING, INC., a Montana corporation, SCHNEIDER NATIONAL CARRIERS, INC., a Nevada corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 5:19-cv-02158 PSG (KKx)<br><br>**PLAINTIFF'S SURREPLY IN OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Date:  NA<br>Time:  NA<br>Crtrm: 6A<br>Judge: Hon. Philip S. Gutierrez |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.  THE FAA DOES NOT APPLY ...........................................................2

III. CALIFORNIA LAW SHOULD APPLY AND INVALIDATE THE AGREEMENT UNDER *GENTRY* ......................................................6

    A.   Section 925 of the Labor Code Invalidates Nevada Choice of Law............6

    B.   California Choice of Law Principles Call for California Law....................9

IV.  AGREEMENT IS INVALID UNDER NEVADA LAW............................11

V.   CONCLUSION......................................................................................12

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000)
   24 Cal.4th 83 ------------------------------------------------------------------------- 8

*Arno v. Club Med Inc.* (9th Cir. 1994) 22 F.3d 1464 --------------------------------- 9

*Barker v. Wingo* (1972) 407 U.S. 514 ---------------------------------------------------- 4

*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105 ------------------------------ 5

*Frame v. Merrill Lynch, Pierce, Fenner Smith, Inc.* (1971) 20 Cal.App.3d 668 - 10

*Garrido v. Air Liquide Industrial U.S. LP* (2015) 241 Cal.App.4th 833 ------------ 2

*Gentry v. Superior Court* (2007) 42 Cal.4th 443 --------------------------------------- 7

*Hall v. Superior Court* (1983) 150 Cal.App.3d 411 --------------------------------- 10

*Klaxon Co. v. Stentor Electric Manufacturing Co*. (1941) 313 U.S. 487------------ 9

*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 ---------------------- 10

*New Prime Inc. v. Oliveira* (2019) 139 S. Ct. 532---------------------------------- 2, 3

*Page v. Something Weird Video* (C.D. Cal. 1995) 908 F. Supp. 714 ---------------- 9

*Picardi v. Eighth Jud. Dist. Court,* (Nev. 2011) 251 P.3d 723------------------------ 7

*Tallman ex rel. Situated v. Eighth Judicial Dist. Court of State* (Nev. 2015) 359
   P.3d 113-------------------------------------------------------------------------------- 7

*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906 -------------- 10

S<span style="font-variant:small-caps">TATUTES</span>

9 U.S.C. § 1, *et seq.* ---------------------------------------------------------------- *passim*

Cal. Lab. Code § 925------------------------------------------------------------- 7, 8, 9

Nev. Rev. Stat. § 597.995-------------------------------------------------------- 11

## I. INTRODUCTION

Pursuant to the Court's April 29, 2020 order (Dkt. No. 25) Plaintiff files this Surreply on the following issues: (1) whether the language in the Defendants arbitration agreements purporting to "waive… any provision of the FAA which would otherwise exclude this [arbitration agreement] from its coverage;" (2) if the FAA does not apply, then should the Court apply California or Nevada law in evaluating the agreement; and (3) is the agreement enforceable under such law.

As set forth below, based on applicable caselaw, Defendants' purported "waiver" of the exclusion in section 1 of the Federal Arbitration Act[1] ("FAA") is of no force because the parties do not have the power to re-write federal law and invoke the court's jurisdiction and special powers under act via contract. Furthermore, under California's choice of law principles, the Court should decline enforcement to the Nevada choice of law included in the 2019 agreement and deny enforcement based on the rule of *Gentry*. Finally, even if Nevada is applied, enforcement must be denied because the agreement does not comply with Nevada's statute governing arbitration agreements which requires a party's *affirmative agreement* to the arbitration agreement rather than merely passive acquiescence as indicated in the agreements' opt-out procedures.

Accordingly, Defendants' motion to compel arbitration should be denied.

---

[1] 9 U.S.C. § 1, *et seq.*

## II. THE FAA DOES NOT APPLY

It is well established that simply because an arbitration agreement specifically invokes the FAA does not mean that it will apply in cases where the statute specifically excludes application, such as employment agreements for transportation workers in interstate commerce. "[A] transportation worker's employment agreement does not become subject to the FAA simply because the agreement declares that it is subject to the FAA." *Garrido v. Air Liquide Industrial U.S. LP* (2015) 241 Cal.App.4th 833, 839-40. Although the enforcement provisions of the FAA require courts to enforce arbitration agreement is some circumstances, "this authority doesn't extend to *all* private contracts, no matter how emphatically they may express a preference for arbitration." *New Prime Inc. v. Oliveira* (2019) 139 S. Ct. 532, 537 (emphasis added.)

In *New Prime,* although it did not directly address the issue of whether section 1's exclusion of transportation workers can be "waived," the Supreme Court did address a closely related question: could the parties to an arbitration agreement delegate the decision over the applicability of the exclusions in section 1 to the arbitrator for decision or must that question be determined by the court. In addressing that question, the Court explained that, because "[s]ections 1, 2, and 3 [and 4 of the FAA] are integral parts of a whole," in evaluating whether to enforce an arbitration agreement under the FAA, a court must follow a specific "sequence," in evaluating a motion to compel arbitration.  The court cannot jump directly to the enforcement provisions of sections 3 and 4 of the Act without *first*

PLAINTIFF'S SURREPLY IN OPPOSITION TO MOTION TO COMPEL ARBITRATION
2

determining if the agreement is within the coverage of FAA as defined by section 1. *Id.* at 537-38. This procedure must be strictly followed because "to invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration …, a court must **first** know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2." *Id.* (emphasis added.) In other words, The FAA creates new and special powers to stay litigation and the court cannot invoke such powers unless it is specifically authorized to do so by the Act. "The parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the Act **authorizes** a court to stay litigation and send the parties to an arbitral forum." *Id.* (emphasis added.)

Based on the foregoing, therefore, the application of the FAA is not solely a question of contract, but rather is a question of whether the court has been authorized by statute to stay litigation and order arbitration. Thus, although the Court in *New Prime* did not directly address the issue in this motion, where an agreement attempts to "waive" the exclusion of section 1 of the FAA and move directly to enforcement under sections 3 and 4 of the Act, its reasoning applies with equal force. *New Prime* instructs us that before addressing the question enforcement under the FAA, this court must first determine if such action is authorized by the statute. If the exclusion under section 1 applies, then the court simply lacks authority to order enforcement under the remaining sections.

Based on the foregoing, the "waiver" language in the agreements, which seeks to "waive" the exclusions of section 1 of the FAA cannot have any effect on

the question of whether the agreement is covered by the FAA. As set forth above, the application of section 1 is not a question of contract, but a question of statutory authority. The parties are not empowered to invoke the jurisdiction of the FAA unless the contract falls under its terms. Furthermore, the exclusion does not act as an exception to the to the enforcement sections in the FAA, but rather as a gateway issue which the court must address first as part of the prescribed "sequence." Defendants' argument would also require the court to ignore the sequence set forth in *New Prime*, by first applying the enforcement sections of the statute and only then looking to see if enforcement is excluded by section 1. The argument must therefore be rejected.

Furthermore, there is no basis for arguing that the parties have the ability to "waive" this exclusion because the section 1 defines the *court's* powers and the scope of its authority rather than the rights of the *parties*. A waiver is generally defined as "an intentional relinquishment or abandonment of a known right or privilege." *Barker v. Wingo* (1972) 407 U.S. 514, 525. Section 1 of the FAA does not create a right on the part of Plaintiff to be excluded from its coverage – rather, section 1 "define[s] the field in which Congress was legislating." *New Prime, supra,* at 538. Accordingly, since private parties do not have the power to re-write or redefine the scope of congressional legislation by contract, and do not have the power to expand this court's statutory authority, the language in the agreements purporting to "waive" the FAA's exclusion of transportation employees' employment contracts can have no effect. In sum, the contract's language is simply

PLAINTIFF'S SURREPLY IN OPPOSITION TO MOTION TO COMPEL ARBITRATION
4

a very emphatic declaration that the FAA applies, but one that has no effect on whether the contract actually falls within the scope of the statute.

Finally, to the extent that it may be argued that the issue is uncertain or unsettled, Defendants may argue that the policy evinced in the courts and in statute in favor of arbitration should militate in favor of enforcement in this case. However, there can be no claim that public policy favors enforcement when Congress has specifically made the policy decision to exclude such contracts from the scope of the FAA. In fact, it has been recognized that Congress specifically decided to exclude transportation workers in interstate commerce from the ambit of the FAA due to the many specific regulations and dispute resolution mechanisms that are applicable to such workers as railway employees, seamen, and truck drivers in interstate commerce. *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 121. Because the exclusion of transportation workers represents a specific policy decision of Congress, there are no policy grounds supporting application of the FAA, even if the argument set forth above is not dispositive.

Based on the foregoing, therefore, the FAA does not apply to this agreement and the Court must apply applicable state law.

### III.   CALIFORNIA LAW SHOULD APPLY AND INVALIDATE THE AGREEMENT UNDER *GENTRY*

Once it is determined that the FAA does not govern this agreement, it next must be determined which state law applies. Furthermore, as argued in the Opposition papers, if California law applies then the rule in *Gentry* barring class

action waivers for modest claims like that of Plaintiff herein would also apply and therefore the agreement as a whole could not be enforced. While the first agreement called for the application of law in the state where Plaintiff worked (i.e., California), in the second agreement Defendants changed the language to state that, to the extent applicable under the FAA, or if the FAA does not apply, "the laws of the State of Nevada," would apply. (Dkt. No. 12-9, Exhibit B, p. 28.) As this second agreement superseded the first (see, *id.,* p. 29), Defendants argue that in the event the FAA does not apply, this court should look to Nevada law in interpreting and enforcing the agreement. However, just because Defendants drafted the agreement with a Nevada choice of law provision does not dispose of the issue. As set forth below, there are two independent bases for the application of California law: (1) California Labor Code section 925; and (2) California choice of law principles which must be applied.

### A. Section 925 of the Labor Code Invalidates Nevada Choice of Law

California Labor Code section 925 states that an employer "shall not require [a California employee], as a condition of employment, to agree to a provision that would […] Deprive the employee of the substantive protection of California law with respect to a controversy arising in California." Cal. Lab. Code § 925. In this case, the application of Nevada law to the agreement would prevent Plaintiff (and potential class members) of the ability to vindicate their claims via class action, due to the application of *Gentry v. Superior Court* (2007) 42 Cal.4th 443. *See, Garrido v. Air Liquide Industrial U.S. LLC, supra,* 241 Cal.App.4th 833 (*Gentry*

still good law where FAA does not apply); *cf., Tallman ex rel. Situated v. Eighth Judicial Dist. Court of State* (Nev. 2015) 359 P.3d 113, (indicating that Nevada's rule against class waivers no longer applies.)[2]  As set forth in Plaintiff's Opposition, the *Gentry* rule invalidates class waivers in employment or wage and hour claims where each individual claim is likely to have a modest value and the individual class members' rights would likely not be effectively vindicated without a representative claim. (*See*, Dkt. No. 15, pps. 11-12, demonstrating applicability of *Gentry* to this case.)  The California Supreme Court in *Gentry* explained that this rule was essential to ensure the protection of employees' substantive rights and to prevent arbitration from becoming "a de facto waiver of statutory rights." *Gentry v. Superior Court, supra,* 42 Cal. 4th at 457.  Thus, to the extent that application of Nevada law would allow enforcement of the class action waiver in this case, it would deprive Plaintiff of substantive rights protected by California law and therefore should be invalidated pursuant to Cal. Labor Code section 925. Furthermore, California law protecting employees from extra expenses and other unconscionable provisions as embodied in *Armendariz v. Foundation Health Psychcare Services, Inc.,* (2000) 24 Cal.4th 83, and its progeny provide further protections of which Plaintiff would be deprived if Nevada is applied.

---

[2] *Tallman* addressed the question of class actions where the FAA did apply and determined that its prior precedent barring class action waivers was preempted by the FAA. *See, Picardi v. Eighth Jud. Dist. Court,* (Nev. 2011) 251 P.3d 723 (class waivers violate Nevada public policy.) It does not appear that the specific question of whether Nevada's rule against class waivers remains viable where the FAA does not apply (i.e., the equivalent question addressed in California by *Garrido*) has yet been addressed. Nonetheless, *Tallman* has been repeatedly cited with no indication that its holding will be so limited.

Finally, although Defendants argue that the "SMAP" agreements were not imposed as a condition of employment because they allowed the employee to "opt out" of their application. However, the "opt out" procedures are so onerous and convoluted that it is obvious that Defendants designed them to effectively discourage and prevent employees from actually opting out. (*See,* Dkt. No. 12-1, Exhibit A, pp. 17-18; Exhibit B, pp. 29-30.) For example, in order to opt out of the agreement, an employee must send a signed notice, with specific language, to a company address in Green Bay, Wisconsin, rather than a local address or to human resources. Furthermore, the agreement places the burden on the employee to maintain proof of the opt out and states that the employee will bear the burden of proof of showing that he or she validly opted out. Finally, if the employee fails to take all of the steps outlined in the agreement, he or she "will be deemed to have irrevocably agreed to be bound" by the agreement.[3]  A review of all of the detailed requirements and shifting burdens of proof, clearly shows that the agreement was *de facto* intended to be a condition of employment. Furthermore, the idea that Defendants have "no preference" as to whether the employees opted out, is belied by the fact that they do not even ask for signatures and created a system of "consent" by default.

---

[3] As noted in the Opposition, Plaintiff denies ever receiving these agreements and contends that he never consented to them in any way, and presented evidence supporting his contention, further supporting the conclusion that the arbitration agreements were imposed upon him as a condition of employment.

Based on the foregoing, section 925 of the California Labor Code should be applied to bar the application of Nevada law in this case.

**B. California Choice of Law Principles Call for California Law**

In addition to the above, California choice of law principles will also require that California, rather than Nevada, law be applied to the arbitration agreement. Jurisdiction in this case is predicated, at least in part, on diversity of citizenship.[4] (See, Notice of Removal, Dkt. No. 1, pps. 5-7.) "In federal diversity actions, a federal court must apply the choice of law rules of the forum state." *Page v. Something Weird Video* (C.D. Cal. 1995) 908 F. Supp. 714, 716, *citing, Klaxon Co. v. Stentor Electric Manufacturing Co*. (1941) 313 U.S. 487, 496; *Arno v. Club Med Inc.* (9th Cir. 1994) 22 F.3d 1464, 1467. Therefore, the question will turn on whether California law would compel enforcing out of state choice of law clause.  California law generally recognizes parties' right to enforce contractual choice of law provisions; however, enforcement will be denied where the foreign state's laws fundamentally conflict with the public policy of California. *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 916; *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 465.  Further, "an agreement designating a foreign law will not be given effect if it would violate a strong California public policy…" *Hall v. Superior Court* (1983) 150 Cal.App.3d

---

[4] The Notice of Removal relies on federal question jurisdiction, supplementary jurisdiction and CAFA, which is a form of diversity jurisdiction.

411, 416-17 (internal quotes, ellipses and brackets omitted), *quoting, Frame v. Merrill Lynch, Pierce, Fenner Smith, Inc.* (1971) 20 Cal.App.3d 668, 673.

As noted above, the protections set forth in the *Gentry* and *Armendariz* cases represent important and strong California public policies. Since it is likely that the application of Nevada law would vitiate those protections, California choice of law principles, which must be applied by this court, lead to the conclusion that the court should apply California, rather than Nevada law, to these agreements. Pursuant to California law, the class action waiver of the agreements will be invalid and the motion should therefore be denied.

**IV.   AGREEMENT IS INVALID UNDER NEVADA LAW**

Finally, even if this court accepts Defendants' argument applies Nevada to the agreements, it will be to no avail because the arbitration agreements are invalid under Nevada law as well. With some exceptions not relevant here, Nevada law requires that arbitration agreements include an indication "that the person has **affirmatively agreed** to the provision." Nev. Rev. Stat. § 597.995 (emphasis added.)[5] The agreements at issue here are based on the opposite principle – they are deemed to apply unless the employee affirmatively opts out of the agreement. Under the SMAP agreements, the employees are not expected to make any type

---

[5] Although this provision would be preempted if the FAA applied to the agreement, that is not relevant here because Nevada law can only be relevant if and when this court finds the FAA to be inapplicable.

"affirmative" agreement to the arbitration clause and no signature is requested or required. This type of unilateral contract, based only on a party's passive acquiescence, that the Nevada statute is intended to invalidate. Thus, even if this court were to decide that Nevada law is applicable, the agreement should be invalidated.[6]

## V. CONCLUSION

Based on the foregoing, this court should find that (1) the FAA does not apply to the arbitration agreements; (2) that the agreements are covered by California law; and (3) the agreements are not enforceable either under California or Nevada law.

Dated: May 15, 2020     PANITZ LAW GROUP APC

_____
ERIC A. PANITZ
Attorneys for Plaintiff
ALEJANDRO ROMERO

---

[6] In addition, as noted above, Nevada law also recognized a *Gentry*-like prohibition on class waivers, which its Supreme Court has found to be preempted by the FAA. *Picardi v. Eighth Jud. Dist. Court, supra*. It is somewhat unsettled if this rule remains valid where the FAA does not apply. If Nevada courts do come to a conclusion like that of *Garrido, supra,* then this will provide further basis to invalidate the agreement.

# CERTIFICATE OF SERVICE

I, Eric A. Panitz, an employee in the County of Los Angeles, certify that on **May 15, 2020**, caused a true and correct copies of the foregoing be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who has registered for receipt of document(s)filed in this matter:

**PLAINTIFF'S SURREPLY IN OPPOSITION TO MOTION TO COMPEL ARBITRATION**

| *Counsel for Defendants:* | |
|---|---|
| Sabrina A. Beldner<br>Amy. E. Beverlin<br>Ashley R. Li<br>Matthew C. Kane<br>McGuireWoods LLP<br>1800 Century Park East 8th Floor<br>Los Angeles, CA 90067<br>Phone: (310) 315-8200<br>Fax: (310)315-8210<br>sbeldner@mcguirewoods.com<br>abeverlin@mcguirewoods.com<br>ali@mcguirewoods.com<br>mkane@mcguirewoods.com | |

Dated: May 15, 2020

PANITZ LAW GROUP APC

_____
ERIC A. PANITZ
18000 Studebaker Road, Suite 700
Cerritos, California 90703
Attorneys for Plaintiff
ALEJANDRO ROMERO