**McGuireWoods LLP**
Matthew C. Kane (SBN 171829)
   Email: mkane@mcguirewoods.com
Sabrina A. Beldner (SBN 221918)
   Email: sbeldner@mcguirewoods.com
Amy. E. Beverlin (SBN 284745)
   Email: abeverlin@mcguirewoods.com
Ashley R. Li (SBN 317305)
   Email: ali@mcguirewoods.com
1800 Century Park East, 7th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200
Facsimile:  310.315.8210

Attorneys for Defendants
WATKINS AND SHEPARD TRUCKING, INC.
and SCHNEIDER NATIONAL CARRIERS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ROMERO, on his own behalf and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WATKINS AND SHEPARD TRUCKING, INC., a Montana corporation, SCHNEIDER NATIONAL CARRIERS, INC., a Nevada corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 5:19-cv-02158-PSG (KKx)<br><br>**DEFENDANTS' SUR-SURREPLY IN FURTHER SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION OF PLAINTIFF'S CLAIMS AND STAY PROCEEDINGS PENDING RULING ON MOTION AND COMPLETION OF ARBITRATION**<br><br>[Filed Pursuant to Dkt. #25] |

131223207.7

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

I.  THE FAA GOVERNS THE SMAP AND THIS MOTION ........................... 1

II. IF THE FAA DOES NOT APPLY TO THE 2018 SMAP, CALIFORNIA LAW APPLIES AND IT IS ENFORCEABLE THEREUNDER ................................................................................................ 3

III. IF THE FAA DOES NOT APPLY TO THE 2019 SMAP, NEVADA LAW APPLIES AND IT IS ENFORCEABLE THEREUNDER .................. 3

IV. CONCLUSION ............................................................................................... 6

# TABLE OF AUTHORITIES
Page(s)

**Federal Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
  513 U.S. 265 (1995) ............................................................................................................ 2

*Bailey v. Affinitylifestyles.com, Inc.*,
  2017 WL 5895131 (D. Nev. Nov. 29, 2017) ........................................................................ 6

*Brown v. Dow Chem. Co.*,
  2019 WL 484211 (N.D. Cal. Feb. 7, 2019) ...................................................................... 4, 5

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
  264 F.Supp.2d 926 (N.D. Cal. 2003) ................................................................................... 2

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) ............................................................................................................ 2

*Circuit City Stores Inc. v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002) ............................................................................................. 4

*Larson v. D. Westwood, Inc.*,
  2016 WL 5508825 (D. Nev. Sept. 27, 2016) ....................................................................... 6

*New Prime Inc. v. Oliveira*,
  139 S.Ct. 532 (2019) ....................................................................................................... 1, 2

*Rivera v. Uniqlo Calif., LLC*,
  2017 WL 6539016 (C.D. Cal. Sept. 8, 2017) ....................................................................... 3

*Shearson/American Express Inc. v. McMahon*,
  482 U.S. 220 (1987) ............................................................................................................ 1

*Siy v. CashCall, Inc.*,
  2014 WL 37879 (D. Nev. 2014) .......................................................................................... 6

*Southland v. Keating*,
  465 U.S. 1 (1984) ................................................................................................................ 2

*Ticknor v. Choice Hotels Int'l, Inc.*,
  265 F.3d 931 (9th Cir. 2001) ............................................................................................... 3

*Volt Infor. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
   489 U.S. 468 (1989) ..................................................................................... 2

**State Cases**

*Armendariz v. Found. Health Psychare Servs., Inc.*,
   24 Cal.4th 83 (2000) ..................................................................................... 5

*City of San Jose v. Super. Ct.*,
   12 Cal.3d 447 (1974) .................................................................................... 4

*Garrido v. Air Liquide Indus. U.S. LP*,
   241 Cal.App.4th 833 (2015) ......................................................................... 1

*Gentry v. Super. Ct.*,
   42 Cal.4th 443 (2007) ............................................................................ 3, 4, 5

*Peleg v. Neiman Marcus Grp., Inc.*,
   204 Cal.App.4th 1425 (2012) ....................................................................... 6

*Picardi v. Eighth Jud. Dist. Ct.*,
   127 Nev. 106 (2011) .................................................................................. 4, 5

*Prof'l Collection Consultants v. Lauron*,
   8 Cal.App.5th 958 (2017) .......................................................................... 5, 6

*Tallman v. Eighth Jud. Dist. Ct.*,
   131 Nev. 713 (2015) .................................................................................. 4, 5

*Truly Nolen of Am. v. Super. Ct.*,
   208 Cal.App.4th 487 (2012) ......................................................................... 4

*Wash. Mut. Bank, FA v. Super. Ct.*,
   24 Cal.4th 906 (2001) ................................................................................... 4

**Federal Statutes**

9 U.S.C. § 1 .................................................................................................... 1, 2

9 U.S.C. § 2 ....................................................................................................... 1

9 U.S.C. § 3 ....................................................................................................... 1

9 U.S.C. § 4 ....................................................................................................... 1

**State Statutes**

Cal. Lab. Code § 925 ................................................................................................. 3, 5

Cal. Lab. Code § 925(a)(2) ............................................................................................ 3

Nev. Rev. Stat. § 38.219(1) ........................................................................................... 5

Nev. Rev. Stat. § 597.995(1) ......................................................................................... 6

**Other Authorities**

65 Cong. Rec. 1931 (1924) ............................................................................................ 2

## I. THE FAA GOVERNS THE SMAP AND THIS MOTION

Other than his counsel's *ipse dixits*, Plaintiff proffers **no** authority supporting his argument that the SMAP's Section 1 waiver is not effective.[1]  As he admits, *New Prime Inc. v. Oliveira*, 139 S.Ct. 532 (2019), does **not** address **at all** whether Section 1 can be waived.  Out of whole cloth he thus concocts the theory that the SMAP's Section 1 waiver somehow alters the analytical sequencing enunciated in *New Prime*. Dkt. #26 at 3:21-4:10.  But it does not, as the Section 1 waiver fits squarely within that sequencing since it necessitates that the Court "decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." *New Prime*, 139 S.Ct. at 537-38.  That initial, sequenced inquiry by the Court in the first instance should be answered in the *negative* here because the SMAP *expressly* "waive[s] the application or enforcement of any provision of the FAA which would otherwise exclude this SMAP from its coverage." Dkt. #12-1, ¶¶ 10, 11, Exhs. A, B.  Thus, Section 1's exclusion does not apply, and the Court can proceed to 9 U.S.C. §§ 2-4.[2]

To that point, Plaintiff identifies *nothing* in the FAA or in *New Prime* that precludes parties from agreeing to waive application or enforcement of a statute or any portion thereof—including the FAA's Section 1. While he argues that "private parties do not have the power to re-write or redefine the scope of congressional legislation by contract," Dkt. #26 at 4:18-20, he cites *no* authority in support thereof. *See Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987) ("The

---

[1] Plaintiff's reliance on *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal.App.4th 833 (2015), is misplaced.  In that case, the arbitration agreement at issue stated that it, and any arbitration proceedings, were governed by the FAA—without any limitation. *Id.* at 838.  The state court noted that, "[b]y stating that it is subject to and governed by the FAA, the agreement necessarily incorporates section 1 of the FAA, which includes the exemption for transportation workers." *Id.* at 839-40.  As noted, however, the arbitration agreement did **not** contain any language **waiving** or even addressing the application or enforcement of Section 1.  Thus, Plaintiff's unadorned quotation from *Garrido* is unavailing for his agreement once placed in factual context.

[2] Contrary to his unsupported contention, Section 1 does **not** define "the court's powers." Dkt. #26 at 4:11-13.  Those "statutory powers" are found in **Sections 3 and 4**. *See New Prime*, 139 S.Ct. at 538.  A court simply must determine whether a contract falls within Section 1's exclusion before exercising them. *See id.*

burden is on the party opposing arbitration ... to show that Congress intended to preclude a waiver ….""). He also *ignores* the authorities cited in Defendants' Reply, in which courts found that parties **can** contract around "legislative" (*i.e.*, statutory) requirements in furtherance of an agreement to arbitrate.[3]  *See* Dkt. #19 at 5:17-27.

In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), the Supreme Court reversed the Ninth Circuit's decision interpreting Section 1 to exclude all employment contracts from the FAA's coverage. Like *New Prime*, *Adams* also does **not** address whether Section 1 can be waived; it simply elucidates the scope of what Section 1 excludes. *Id.* at 113-19. Plaintiff's implication that *Adams* attributed to Congress a special purpose behind Section 1 for truck drivers is belied by the Court's opinion. *See* Dkt. #26 at 5:8-13. While *Adams* recognized that, when the FAA was enacted, Congress had enacted federal legislation providing for arbitration between seamen and their employers and grievance procedures existed for railroad employees under federal law, it identifies *no* such "regulations and dispute mechanisms" applicable specifically to truck drivers—despite Plaintiff's assertion to the contrary. *See* 532 U.S. at 120-21.

Notably, Plaintiff concedes that Section 1 does not afford him any rights in any event. Dkt. #26 at 4:11-18. Thus, the SMAP's Section 1 waiver does *not* deprive him of any *substantive* rights, and nothing in the FAA *prohibits* such a waiver. Therefore, Plaintiff has failed to proffer any authority that the Section 1 waiver is unenforceable.

---

[3] Plaintiff uses the phrase "congressional legislation" as opposed to "act" or "statute" in an apparent attempt to elevate the FAA above other statutes. However, the FAA is no different from any other statute, and Plaintiff cites *no* authority for his elevation of the FAA to its own special category of "congressional legislation." *See, e.g.*, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995) (examining "the statute's language, background, and structure"); *Southland v. Keating*, 465 U.S. 1, 11 (1984) (referring to the FAA as a statute); *see also, e.g.*, 65 Cong. Rec. 1931 (1924) (the FAA "*creates no new legislation*, grants no new rights, except a remedy to enforce an agreement" to arbitrate (emph. added)). Indeed, parties are free to write an agreement to arbitrate exempting it from coverage under the FAA *entirely*. *See Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F.Supp.2d 926, 933 (N.D. Cal. 2003); *see also Volt Infor. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (parties may specify by contract the rules under which that arbitration will be conducted, even if the result is that arbitration is stayed where the FAA would otherwise permit it to go forward).

## II. IF THE FAA DOES NOT APPLY TO THE 2018 SMAP, CALIFORNIA LAW APPLIES AND IT IS ENFORCEABLE THEREUNDER

Under the terms of the 2018 SMAP, where state law is applicable, California law is the applicable state law. *See* Dkt. #12-1, ¶ 10, Exh. A. Plaintiff avers that the 2018 SMAP is unenforceable under *Gentry v. Super. Ct.*, 42 Cal.4th 443 (2007). As discussed in Defendants' Reply, because Plaintiff has failed to proffer the evidentiary showing necessary under *Gentry* to establish any basis for the Court *not* to enforce the 2018 SMAP's class action waiver, and none is made in his Surreply, the 2018 SMAP is enforceable *in toto*—including its class action waiver. *See* Dkt. #19 at 6:12-9:10.[4]

## III. IF THE FAA DOES NOT APPLY TO THE 2019 SMAP, NEVADA LAW APPLIES AND IT IS ENFORCEABLE THEREUNDER

State law governs defenses to arbitration agreements. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). The 2019 SMAP's choice of law clause mandates application of **Nevada** state law, "*without regard to or application of any conflict of laws principles*." Dkt. #12-1, ¶ 11, Exh. B (emph. added). Plaintiff argues that Cal. Lab. Code § 925 ("Section 925") voids the SMAP's choice of law clause; California's choice of law principles require application of California law; and, even if Nevada law does apply, the SMAP is invalid. He is wrong on all counts.

***First***, Section 925 only renders a choice of law provision *voidable* if imposed *as a condition of employment*. *See* Lab. Code § 925(a)(2). But the 2019 SMAP was **not** a condition of Plaintiff's employment; he had an opportunity to **opt out** of *either* the 2019 SMAP *or* its choice of law provision. *See, e.g.*, *Rivera v. Uniqlo Calif., LLC*, 2017 WL 6539016, at *7 (C.D. Cal. Sept. 8, 2017) (arbitration agreement was not a

---

[4] Notably, Plaintiff has *never* argued that the 2018 SMAP is unconscionable—but such an argument would fail for the same reasons that such an argument would fail under California law as to the 2019 SMAP. *See* Dkt. #19 at 9:12-12:16. Similarly, until his Surreply, Plaintiff *never* argued that the 2019 SMAP was unenforceable under *Gentry*. *Compare* Dkt. #15 at 10:16-18:22 *with* Dkt. #26 at 1:12-14, 10:8-10. Regardless, for the same reasons he has failed to meet his evidentiary burden under *Gentry* with respect to the 2018 SMAP, he likewise has failed to meet that burden with respect to the 2019 SMAP. *See* Dkt. #19 at 6:12-9:10.

condition of employment where plaintiff permitted to opt out).[5] That he chose *not* to do so did *not* make the SMAP a "*de facto* … condition of employment"—a contention for which he cites *no* authority. *See, e.g.*, *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (rejecting argument plaintiff was not given meaningful opt-out opportunity because "he did not have the degree of sophistication necessary to recognize the meaning of the opt-out provision or to know how to avoid it").

Regardless, Plaintiff fails "to show any possibility that, at the time he entered into the [SMAP] or at any time thereafter, the … choice of law clause could deprive him of any substantive right available to him under California law." *Brown v. Dow Chem. Co.*, 2019 WL 484211, at *3 (N.D. Cal. Feb. 7, 2019). He argues that application of Nevada law would "prevent [him] … of the ability to vindicate [his] claims via class action" because *Gentry* does not apply in Nevada. Dkt. #26 at 6:18-21. But, *Gentry* does not elevate class action procedures to substantive protection status. Indeed, it does not even make class action waivers invalid *per se*; such "waivers will **only** be invalidated after the proper factual showing."[6] *Gentry*, 42 Cal.4th at 570 (emph. added); *Truly Nolen of Am. v. Super. Ct.*, 208 Cal.App.4th 487, 510 (2012); *see also* Dkt. #19 at 6:12-9:10. As such, applying *Gentry* would not in any way guarantee the availability of Plaintiff's desired class action pursuits here.

Plaintiff's argument also finds no support in *Tallman v. Eighth Jud. Dist. Ct.*, 131 Nev. 713 (2015). For context, in *Picardi v. Eighth Jud. Dist. Ct.*, 127 Nev. 106, 112-14 (2011)—a consumer class action involving an arbitration agreement *governed*

---

[5] *See* Dkt. #12-1, ¶ 11, Exh. B (no retaliation or reprisal for opting out).

[6] *Gentry* actually reminds that "employees are free to determine what trade-offs between arbitral efficiency and formal *procedural protections* best safeguard their *statutory rights*." *Gentry*, 42 Cal.4th at 467 & n.9 (emph. added); *see also City of San Jose v. Super. Ct.*, 12 Cal.3d 447, 462 & n.9 (1974) ("Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going."); *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal.4th 906, 910 (2001) ("[A]n otherwise enforceable choice-of-law agreement may not be disregarded merely because it may hinder the prosecution of a … class action ….").

*by the FAA*—the court had found that the agreement's class action waiver could not be enforced under Nevada contract law because it "contravene[d] the state's public policy," and that the FAA did not mandate a different result. In *Tallman*, 131 Nev. at 720, 723, the court abrogated *Picardi*, finding that its invalidation of class action waivers in consumer arbitration agreements *governed by the FAA* in fact conflicted with the FAA, and reiterated that (like California law) "NRS 38.219(1) expresses Nevada's fundamental policy favoring the enforceability of arbitration agreements." So, like *Gentry* and contrary to Plaintiff's assertion, neither *Picardi* nor *Tallman* establish "Nevada's rule against class waivers." Dkt. #26 at n.2.

Finally, under *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal.4th 83, 90-91 (2000), pre-dispute arbitration agreements covering "unwaivable statutory rights" that are ***imposed as a condition of employment*** must have certain "minimum requirements."[7] As shown, the SMAP was <u>not</u> a condition of Plaintiff's employment, so *Armendariz* is inapposite. Regardless, he proffers *no* argument or authority that Nevada state law does not impose the same or similar "minimum requirements" for arbitration agreements. *See, e.g.*, *Brown*, 2019 WL 484211, at *3 (Michigan choice of law applied where no deprivation of substantive protection under or conflict with California law shown). For all of the foregoing reasons, Section 925 *does not apply*.

**Second**, Plaintiff improperly invokes California's choice-of-law principles given that the SMAP's choice-of-law clause applies "*without regard to or application of any conflicts of laws principles.*" Dkt. #12-1, ¶ 11, Exh. B (emph. added); *see, e.g.*, *Prof'l Collection Consultants v. Lauron*, 8 Cal.App.5th 958, 972 (2017) (chosen law was applicable where choice-of-law provision provided for its application "without regard to conflict-of-law principles"). But even under California's principles, Nevada

---

[7] Like *Gentry*, *Armendariz* did not create any new "substantive" rights that Plaintiff would forgo if Nevada state law is applied. Rather, it only sets forth certain "*procedural* protections" to "safeguard" employees' statutory rights. *Armendariz*, 42 Cal.4th at 103 n.8 (emph. added). Tellingly, Plaintiff identifies no substantive statutory rights he would be deprived of by the application of Nevada law.

law would apply because, as discussed, Plaintiff has failed to identify <u>any</u> actual conflict between Nevada law and any fundamental California policy.  *See Lauron*, 8 Cal.App.5th at 973.[8]  Indeed, Plaintiff makes no showing that Nevada holds arbitration agreements to any lesser or different standards than California does.

***Third***, Plaintiff speciously argues that the 2019 SMAP is "invalid" under Nevada law because it does not have "any type of 'affirmative' agreement to the arbitration clause."  *See* Dkt. #26 at 10:20-11:2.  But Plaintiff ignores his AAs, which plainly state they are agreements—specifically referring to the terms of the 2019 SMAP and incorporating the SMAP by reference *and* hyperlink—and he *affirmatively* selected the "I Agree" option below the *specific* authorization in the AAs for the 2019 SMAP.[9]  *See* Dkt. #19 at 1:7-4:8; Dkt. #12-1, ¶ 13.  Plaintiff proffers *no* authority that something more is required to satisfy Nevada's specific authorization rule and, thus, he has failed to meet *his burden* to show that the 2019 SMAP is invalid under that rule.[10]  *See Siy v. CashCall, Inc.*, 2014 WL 37879, at *9 (D. Nev. 2014).

## IV.  CONCLUSION

Defendants respectfully request that the Court grant their Motion in its entirety.

DATED:  May 26, 2020             **MCGUIREWOODS LLP**

By:   /s/ Matthew C. Kane
    Matthew C. Kane | Sabrina A. Beldner
    Amy E. Beverlin | Ashley R. Li
    Attorneys for Defendants

---

[8] Defendant Schneider National Carriers' incorporation under Nevada law "is a sufficient relationship or basis to justify the [Nevada] choice-of-law clause."  *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal.App.4th 1425, 1446-47 (2012).  As such, if conflict of laws principles *did* apply, the next question is whether Nevada's state law is contrary to a "fundamental policy of California."  *Id.* at 1446.  It is not.

[9] *See, e.g., Bailey v. Affinitylifestyles.com, Inc.*, 2017 WL 5895131, at *5 (D. Nev. Nov. 29, 2017) ("[T]he statute does not require a standalone agreement, just an additional, more specific acknowledgment.").

[10] *See* Nev. Rev. Stat. § 597.995(1) (requiring only that "the agreement must include specific authorization for the provision which indicates that the person has affirmatively agreed to the provision"); *see also Larson v. D. Westwood, Inc.*, 2016 WL 5508825, at *2 (D. Nev. Sept. 27, 2016) (three-page arbitration provision forming part of eight-page contract satisfied specific authorization rule because the provision was set apart from the other provisions and required a separate initialing).