**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 19 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALEJANDRO ROMERO, on his own behalf and on behalf of all other persons similarly situated,<br><br>           Plaintiff-Appellant,<br><br> v.<br><br>WATKINS AND SHEPARD TRUCKING, INC., a Montana corporation; SCHNEIDER NATIONAL CARRIERS, INC., a Nevada corporation,<br><br>           Defendants-Appellees. | No.   20-55768<br><br>D.C. No.<br>5:19-cv-02158-PSG-KK<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted July 6, 2021
Pasadena, California

Before:  D.M. FISHER,[**] WATFORD, and BUMATAY, Circuit Judges.

Plaintiff Alejandro Romero appeals from the district court's grant of a

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

motion to compel arbitration filed by his ex-employer, Watkins & Shepard Trucking, and its parent, Schneider National Carriers, Inc. (collectively, "Watkins"). We affirm.  Here, we address all issues raised by this appeal except one—whether the Federal Arbitration Act's ("FAA") § 1 exemption can be waived in a private contract. We answer that question in the negative in an opinion filed concurrently with this memorandum disposition.[1]

In enforcing Watkins' motion to compel arbitration of Romero's claims under the federal and California WARN Acts, Cal. Labor Code § 1401; 29 U.S.C. § 2101 *et seq.*, the district court concluded: (1) the parties formed a contract to arbitrate, (2) the FAA does not apply to it, (3) Nevada law does, and (4) the class action waiver in the contract is enforceable under Nevada law. We agree on all counts.

To begin, the parties formed a contract to arbitrate when Romero digitally agreed to the Schneider Mediation & Arbitration Policy (the "Arbitration Policy"). When faced with a motion to compel arbitration, the "threshold inquiry is whether the parties agreed to arbitrate." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988). Watkins, as the movant, must prove by a

---

[1] We have jurisdiction under 28 U.S.C. §§ 1291, 1332(d)(2), 1367(a), and 1441(c). We review the district court's order to compel arbitration and its supportive legal conclusions *de novo*; we review its factual findings for clear error. *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016).

preponderance of the evidence that a contract to arbitrate was formed. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019).

Under either Nevada or California law, Watkins has met that burden. Both states accept electronic signatures if they are "the act of the person," which "may be shown in any manner, including a showing of the efficacy of any security procedure" that applies to the electronic signature process. Cal. Civ. Code § 1633.9(a); Nev. Rev. Stat. § 719.260(1). When Romero logged onto Watkins' online portal and clicked "I Agree" to the Arbitration Policy, he affirmed that his response was "true and accurate" and would "constitute [his] electronic signature which shall be enforceable" as if signed by hand. Romero's user account was also safeguarded by a unique, confidential username and password. To reset the latter—which he had to do each time he logged in due to infrequent use—he had to call a support center and provide his unique employee ID and his manager's name. He would then receive a randomly generated password, which would not be stored by Watkins and which Romero would be told to change.

Romero challenges the password reset process, arguing he was only encouraged—not required—to reset his generated password, and thus, the call center employee (and Watkins) might have had access to his account. The evidence lays this concern to rest, as Watkins has provided individualized proof showing Romero to be the Arbitration Policy's signer. *Cf. Ruiz v. Moss Bros. Auto Group,*

*Inc.*, 232 Cal. App. 4th 836, 844 (2014) (rejecting a purported electronic signature, in part, due to a failure to provide individualized data on the signer). It identified the day he signed, and its security manager declared that his superiors never asked for his password. The call center employee who last reset his password declared that she talked to Romero, would have told him to change his generated password, did not have access to a password once changed, and never gave a password to a superior. Watkins did not have to do more to meet what has been described as "not a difficult evidentiary burden." *Id.* While IP address data may have offered further proof, it was not necessary. *See Espejo v. Southern California Permanente Medical Group*, 246 Cal. App. 4th 1047, 1053, 1062 (2016) (considering IP address data, but not requiring it). We are satisfied by Watkins' showing explaining "the critical factual" details of the "security precautions regarding transmission and use of [Romero's] unique username and password, as well as the steps [he] would have to take to" agree to the Arbitration Policy, thereby forming a contract to arbitrate. *Id.* at 1062.

Next, as we have decided in our concurrently filed opinion, the Federal Arbitration Act does not govern the Arbitration Policy, because the FAA § 1 exemption applies here and cannot be waived. We must, accordingly, decide the governing state law. Where the FAA does not apply, the Arbitration Policy selects Nevada law. The district court, applying California choice of law rules, correctly

enforced this choice of law provision. California choice of law rules apply a multipart test which favors enforcement of choice of law clauses. *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 465 (1992). First, we ask if there is a substantial relationship between the chosen state and the parties or their transaction. *Id.* This test is met. Schneider is incorporated in Nevada, "a contact sufficient to allow the parties to choose that state's law." *Id.* at 467 (citation omitted). Next, we must "determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Id.* at 466. Romero argues the Arbitration Policy conflicts with a state policy disfavoring class action waivers. *See Gentry v. Superior Court*, 42 Cal.4th 443, 453-54 (2007) (class action waivers violate public policy if they would render a contract exculpatory—preventing redress of an injury). To determine if a waiver is unenforceable, we evaluate: (1) "the modest size of the potential individual recovery," (2) "the potential for retaliation against members of the class," (3) "the fact that absent members of the class may be ill informed about their rights," and (4) "other real world obstacles to the vindication of class members' rights" if the class form is disallowed. *Id.* at 463.

  For the first factor, Romero asserts, in conclusory fashion in his briefing and without supporting evidence, a recovery of $12,500. California law, however, "require[s] a factual showing" of the recovery. *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 497 (2011). Likewise, for the third factor, Romero provides no

proof that absent class members may be ill informed about WARN Act rights. "[G]eneralized statements from attorneys about the benefits of classwide arbitration" and how the factors ought to apply cannot stand in place of an actual evidentiary showing. *Truly Nolen of Am. v. Superior Ct.*, 208 Cal. App. 4th 487, 511 (2012). Turning to the second factor, Romero offers no argument in his opening brief regarding risk of retaliation, and Watkins aptly notes that any such risk is mitigated by the fact that the putative class is made up of ex-employees. Lastly, any real world obstacles to the vindication of rights are not insurmountable. Employees were permitted to opt out of the class action waiver, so it was not "a condition of employment." *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 847 (2015). The Arbitration Policy also took steps to ensure a fair forum, including by permitting the parties "to conduct normal civil discovery and to bring motions, as provided by the FRCP rules." It also offered a low-cost alternative—if an employee agreed to mediate, Watkins would pay for the mediator. In sum, the *Gentry* factors do not show that the Arbitration Policy violates a fundamental California policy, and thus, we enforce the choice of law provision.

Applying Nevada law, the Arbitration Policy is enforceable. Watkins questions whether Romero preserved his argument that it violates Nevada public policy. Even if he did, it fails on the merits. The Nevada Supreme Court has held that "public policy favors allowing *consumer* class action proceedings when the

class members present common legal or factual questions but their individual claims may be too small to be economically litigated on an individual basis." *Picardi v. Eighth Jud. Dist. Ct. of State, ex rel. Cty. of Clark*, 127 Nev. 106, 108 (2011) (emphasis added). The Court framed its holding narrowly on the fact that this was a low dollar consumer claim,[2] stating, "The class action mechanism is important in cases involving small claims consumer cases because '[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.'" *Id.* at 113-14 (citation omitted). Romero identifies no case expanding *Picardi* beyond small consumer class actions, and thus, fails to show the Arbitration Policy's waiver violates Nevada law.

**AFFIRMED.**

---

[2] There, car purchaser plaintiffs asserted fraud and deceptive trade practices claims seeking miniscule relief: $38 for an emissions test, $1,459 for an after-market paint protection product, and an unspecified sum for "negative equity." *Id.* at 109.